UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

FREDERICK I. SHARP, Individually and on      :      Civil Action No.
Behalf of All Others Similarly Situated,      :
                                              :      CLASS ACTION COMPLAINT
                          Plaintiff,          :
                                              :
            vs.                               :
                                              :
WOLF APPLIANCE, INC.,                         :
                                              :
                          Defendant.          :
                                              :      DEMAND FOR JURY TRIAL
———————————————————— x

Plaintiff Frederick I. Sharp ("plaintiff"), by and through his undersigned counsel, individually and on behalf of all others similarly situated, brings this action for damages and equitable relief against defendant Wolf Appliance, Inc. ("defendant" or "Wolf"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations which specifically pertain to plaintiff (which are alleged upon personal knowledge).

## INTRODUCTION

1.      This action is brought against defendant for the harm it caused to consumers in connection with its design, manufacture, advertising, sale and performance of the Wolf Ovens (defined below).

2.      Wolf's L, M and E Series built-in ovens,[1] and "dual fuel" and induction ranges,[2] for example, contain blue porcelain interiors. Wolf's gas ranges contain black porcelain interiors.[3] These ovens are hereinafter collectively referred to as the "Ovens" or the "Wolf Ovens."

3.      Through this action, plaintiff seeks to represent all purchasers of Wolf's wall or built-in ovens and ranges, whether single or double oven models, containing porcelain interiors since March 20, 2012.

---

[1]   Wolf's L Series oven line is its original line of built-in ovens. Wolf describes its M Series ovens as the "high-performance heirs" to the L Series, introducing Dual VertiCross convection for "more consistent cooking." Wolf's E Series ovens contain dual convection cooking and are available in various styles to match consumers' kitchens (contemporary, transitional or professional). Wolf also sells built-in convection steam ovens with annealed stainless steel.

[2]   Wolf's dual fuel ranges purport to offer "the best of both cooking worlds" – gas burners on the range top and dual convection electric ovens below. Wolf's induction ranges combine an induction cooktop with a dual convection oven.

[3]   Wolf's gas ranges come in four different sizes and can be configured with griddle, charbroiler or French top options.

4.      Wolf Ovens are defectively designed in that the porcelain interior of the oven cavity floor will chip, crack or craze through regular use, including, for example, through the use of the self-clean function of the Ovens (the "Defect").  For example, below is a picture of a damaged porcelain interior of a Wolf dual fuel range – as posted online on a forum maintained on the website Houzz (October 30, 2017):



https://www.houzz.com/discussions/2301881/wolf-dual-fuel-df366-enamel-failure-what-to-do (last visited Mar. 20, 2018).

5.      The Defect has obvious aesthetic ramifications.  Additionally, once the chipping, cracking and crazing occurs, the Ovens' convection systems then propel the porcelain pieces throughout the oven cavities.

6.      Owners of the Wolf Ovens, therefore, cannot use the Ovens, including the self-clean feature, without the risk of chipping, cracking or crazing the interior porcelain.

7.      Owners of the Wolf Ovens also risk, through regular use, having the Defect contaminate the food cooked in the Ovens or cause related harm resulting from the loose porcelain chips.

8.      Wolf is a leading manufacturer of high-end cooking appliances, including ranges and built-in ovens.  It competes directly with, for example, Viking (defined below) and Gaggenau in the luxury kitchen appliance market.  Wolf charges a premium price for its top-of-the-line Ovens.  Currently, its Ovens typically retail for approximately $4,000 to over $17,000.[4] E Series built-in double ovens, like the one plaintiff purchased retail for more than $6,500.  A 60 inch dual fuel range with six burners and a French top currently retails for more than $17,500.

9.      Wolf is aware of the  Defect.[5]

10.     Based on publicly available information, Wolf has known of the Defect since at least early 2008 – ***over ten years***.

11.     At the very latest, or most recently, Wolf was aware of the extensiveness of the Defect as of June 2015.[6]

---

[4]    As of this filing, as best as plaintiff can tell, only one model of the Wolf Ovens retails for less than $4,000 – the 24 inch E Series transitional built-in single oven, with an MSRP of $2,730.

[5]    For example, Ivan and Melanie Kail filed a class action complaint against Wolf regarding the Defect on June 16, 2015, and Barry Garfinkle filed a similar complaint on June 21, 2017, discussed *infra*.

12.     For example, upon information and belief, Wolf's factory certified servicers (*e.g.*, Wolf's agents) are aware of the Defect.  Specifically, the factory certified Wolf servicer that plaintiff spoke with about the Defect in his oven, Northeastern Appliance Service ("Northeastern"), acknowledged to plaintiff that Wolf had previously been called about the Defect, that Northeastern responded to service calls about the Defect and that plaintiff was not the first person to call Northeastern about the Defect.

13.     Defendant did not, and does not, disclose or provide any information to Class members (defined below) regarding the defective cavities in the Ovens.

14.     Defendant failed to warn Class members of the Defect.  That information was withheld from plaintiff and similarly situated  purchasers of Wolf Ovens.

15.     As a result of the Defect, the Ovens do not satisfy several of the key purposes for which they were purchased, *i.e.*: (1) cooking food without damaging the Ovens' interior; (2) self-cleaning the Ovens without causing damage to the oven interior; (3) maintaining the purity of the Ovens' interiors, including Wolf's signature aesthetics; and (4) cooking food and self-cleaning the oven without the risk that porcelain flakes or pieces will be dislodged from the oven cavity and expose users to having the porcelain chips blown around and onto food contained in the Ovens.

16.     Plaintiff and Class members purchased the defective Ovens designed, marketed, manufactured, distributed and sold by defendant based on their reasonable expectation that the Ovens would work and be reliable as advertised and impliedly warranted, and without knowledge of the Defect.  Through the ordinary and/or directed use of the Ovens, consumers

---

6     http://www.wolfblueovenchipping.com/wp-content/uploads/2016/09/WOLF-APPLICANCE-Complaint-.pdf ("*Kail* Cpt.") (last visited Mar. 20, 2018).

throughout the country have experienced chipping, cracking, crazing and/or flaking, and the inability to use their Ovens without risking damage to the oven cavity.

17.     Plaintiff and Class members would not have purchased the Ovens and/or paid the premium purchase price for a luxury brand oven if they knew that the porcelain interior, including Wolf's signature blue interior, would deteriorate and damage the oven cavities. Absent defendant's actions, and failure to warn of the Defect, and had plaintiff and Class members known of the defective nature of the Ovens, plaintiff and Class members would not have: (a) purchased and/or paid the purchase price for defendant's Ovens; and (b) used the Ovens in their homes.

18.     Plaintiff asserts claims on behalf of himself and Nationwide and New York Classes (defined below) for fraudulent concealment, breach of implied warranties, New York General Business Law ("GBL") §349 and unjust enrichment.  The Nationwide and New York Classes are cumulatively hereinafter referred to as the "Classes," and members thereof are referred to herein as "Class members."

### THE PARTIES

19.     Plaintiff is, and was at all relevant times, a resident of Chappaqua, New York.

20.     In July-August 2014, plaintiff purchased an E Series double wall-oven, model number DO30TE/S/TH, from Berger Appliances in Hawthorne, NY.  After using the oven for approximately three years, plaintiff ran the self-cleaning function.  When the cleaning cycle was completed, plaintiff observed that the blue porcelain interior finish of the oven cavity was chipping, cracking and/or crazing.  Plaintiff complained to one of Wolf's factory certified services about the Defect.  Plaintiff ran the self-clean function in his second oven cavity and observed similar chipping, cracking and/or crazing.

- 5 -

21.     Plaintiff cannot: (1) cook food without risking further damage to his ovens' interiors; (2) utilize the self-cleaning function without causing further damage to his ovens' interiors; (3) maintain the purity of the Ovens' interiors, including Wolf's signature aesthetics; or (4) cook food and utilize the self-clean function without the risk that porcelain flakes or pieces will be dislodged from the oven cavity and expose users to having the porcelain chips blown around and onto food contained in his ovens.

22.     Defendant Wolf Appliance, Inc. is a Wisconsin corporation and maintains its principal place of business in Madison, Wisconsin.  Wolf manufacturers and markets household cooking appliances under the Wolf brand name, including ovens, electric cooktops, outdoor grills, warming drawers, electric chimneys, steamers, fryers and accessories.   Wolf is a subsidiary of Sub-Zero, Inc. ("Sub-Zero") and competes directly with, for example, Viking Range Corp. ("Viking") and Gaggenau.  Sub-Zero and Wolf market and sell appliances globally through approximately three dozen showrooms nationwide and a network of specialty distributors.  Wolf is a direct-to-consumer retailer.  Sub-Zero maintains corporate offices in Madison and Fitchburg, Wisconsin, which are the centers of most of the company's production activities, along with plants in Richmond, Kentucky, and near Phoenix, Arizona.

### JURISDICTION AND VENUE

23.     This Court has original jurisdiction under 28 U.S.C. §1332(d) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action of more than 100 potential Class members in which plaintiff is a citizen of New York while defendant is a citizen of a different state.  The Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

24.     Venue is proper in this judicial district as the facts at issue in this action are substantially related to the facts underpinning two cases consolidated as *Kail, et al. v. Wolf*

*Appliance, Inc.*, No. 2:15-cv-03513 (JS) (GRB) (E.D.N.Y.), which are currently pending in this District, and because judicial economy is furthered by permitting cases involving the same issues and similar parties to be heard in the same district.

## FACTUAL ALLEGATIONS

**Defendant's Sale of Defective Ovens**

25.     Wolf is a leading manufacturer of premium cooking appliances and is in the business of manufacturing, producing, distributing and/or selling built-in ovens and ranges throughout the United States under the Wolf brand name.  Wolf sells both built-in or wall ovens and ranges.

26.     Wolf manufactures, produces, and/or distributes the Ovens for sale through its network of specialty distributors.  Wolf Ovens retail between approximately $4,000 to more than $17,000.

27.     As part of the sale of each oven, defendant impliedly warranted, marketed, and advertised that its Ovens were of merchantable quality fit for the ordinary purpose for which the Ovens are used, *i.e.,* to safely cook food, and use the typical functions of the Ovens, without causing damage to the Ovens.

28.     Defendant falsely advertises and misrepresents the characteristics, benefits and quality of the Ovens, and otherwise breaches its implied warranty with plaintiff and Class members, since the Wolf Ovens fail one of their most fundamental intended purposes – maintaining the construct of the Ovens and their cavities.  Chipping, cracking, crazing and/or flaking of the porcelain interior occurs, or will occur, under normal use (*e.g.*, running of a self-clean cycle) in the Wolf Ovens.

29.     Aside from aesthetic issues associated with the chipping of the porcelain interiors, chipping of the Ovens' cavities further creates a risk that porcelain flakes can be blown onto

and/or contaminate food, causing a risk of injury and forcing plaintiff and Class members to forgo the normal operation of the Ovens.  *See Kail v. Wolf Appliance, Inc*., No. 15-CV-3513(JS)(GRB), 2017 WL 3608242, at *7 (E.D.N.Y. Aug. 21, 2017) ("After using the self-clean function, porcelain pieces may fly onto the food, and so the range may be incapable of being cleaned, thus preventing the Kails from using it.").  In effect, both the self-clean function, and the oven itself, are rendered not fully functional.

30.     While chipping, cracking and crazing is more visually prevalent in Wolf's blue oven cavities due to its brighter color or shading, Wolf's black oven[7] cavities also exhibit the same Defect.

31.     Wolf's ranges and/or ovens that contain black porcelain enamel – like Wolf's blue porcelain oven cavities – chip, crack and/or craze through normal use, and use of the self-clean function accelerates the Defect.

32.     Given the pervasive failure of Wolf's porcelain oven cavities, the Ovens do not have the characteristics, benefits and qualities that (a) defendant represents they have; and/or (b) are expected by consumers.

33.     Defendant advertises the Ovens with the full knowledge and understanding that they are not sold as advertised, and otherwise fails to warn consumers of the known Defect.

34.     Wolf fails to inform consumers in its advertising at the time of purchase, that even if consumers operate the Ovens as instructed, the interior surface will chip, crack, craze and/or flake during normal operation, causing the risk that chipped porcelain will contaminate food cooked in the Ovens.

---

[7] Wolf's gas ranges, for example, contain black porcelain interiors.

35.     Upon information and belief, not until approximately 2016 has Wolf provided information online, directed to consumers who have already purchased a Wolf oven and have had the Defect manifest in their oven, attempting to address consumers' concerns' about porcelain crazing, chipping or crazing of the oven cavities.

36.     Defendant was obligated to disclose the Defect because defendant had exclusive knowledge of the material facts not known to plaintiff and the Classes, since only defendant had exclusive access to the aggregate data from its retailers, its own tests, and complaints from its customers (including through its factory certified servicers).  Defendant, upon information and belief, concealed and suppressed the material facts from plaintiff by failing to warn of the Defect at the time of purchase and by performing warranty and/or repair work that it knew would not cure the Defect.

37.     As consumer complaints (detailed below) indicate, and as defendant itself has maintained, Wolf has represented to complaining customers that the instances of oven cavity chipping and cracking are rare and unusual occurrences, and that repeated instances of such damage are even more scarce.  But the chipping and cracking were not rare and unusual occurrences; they were manifestations of the Defect.

38.     Purchasers of the Ovens were prevented from gaining knowledge of the Defect.

39.     As a result of Wolf's concealment of the Defect, owners of the Ovens were not provided material information before deciding which brand of oven to buy.

40.     The Ovens are worth less than the price plaintiff and Class members paid for them, as ownership and operation of the Ovens will cost more and/or require more maintenance than the ownership and operation of comparable ovens and/or will not allow owners of the Ovens to utilize all of their primary functions.

41.     Wolf fraudulently concealed the Defect, breached its implied warranty, violated GBL §349 and was unjustly enriched through its marketing and sale of the defective Ovens.

42.     Defendant has not recalled the Ovens or otherwise remedied the Defect.

43.     Plaintiff, and the putative class he seeks to represent, is thus left with a defective oven.

**Wolf's Knowledge of the Defect**

44.     Wolf is aware of the Defect in the Ovens.  Plaintiff, for example, has notified defendant of the blue porcelain chipping by complaining to defendant's factory certified Wolf service and repair company, Northeastern.  Northeastern, upon information and belief, conveyed to or communicated with Wolf about the Defect in plaintiff's oven cavities.  Despite this knowledge, Wolf continues to sell the defective Ovens without warning consumers of the known Defect or otherwise remedying the Defect.

45.     Online references and complaints regarding the Defect mirror plaintiff's experience, including:

| Source | Comments |
|---|---|
| Houzz (Garden Web)<br><br>Dec. 2, 2017<br><br>https://www.houzz.com/discussions/2301881/wolf-dual-fuel-df366-enamel-failure-what-to-do (last visited Mar. 20, 2018) | " I was speaking to a salesman who said this was an old problem (he said a "decade ago") and that the newer ovens don't chip."<br><br>I was told the same thing two years ago. I fell for it. Remember that's a Salesman telling you that. It's simply not true in my experience.<br><br>*********<br><br>Installer suggested only using self cleaning feature once per year. ***I'd call that a factory defect as it clearly can not be used as advertised with out failure.***[8] |
| Houzz (Garden Web)<br><br>Nov. 13, 2017<br><br>https://www.houzz.co | …***Wolf people say they have never heard of it or it was a small number of ranges/ovens affected a long time ago and that it was fixed a long time ago***. You can look and see this year that some of the new M ovens have had the problem. I do agree that ***it is an old*** |

---
[8]     All emphasis is added unless otherwise noted.

| | |
|---|---|
| m/discussions/230188 1/wolf-dual-fuel-df366-enamel-failure-what-to-do (last visited Mar. 20, 2018) | *problem but still a problem*. There have been quite a few posters here that have had up to 3 ovens with the problem.<br><br>*********<br><br>*It is one thing to have the problem. It is another thing to continuously sell these to people knowing this is an issue.* |
| Houzz (Garden Web)<br><br>Oct. 7, 2017<br><br>https://www.houzz.co m/discussions/230188 1/wolf-dual-fuel-df366-enamel-failure-what-to-do (last visited Mar. 20, 2018) | They have never done anything to fix mine. Once the glass is disintegrating, any movement of the metal by heating and cooling has the potential to grind the glass surfaces together and degrade more *producing glass shards*.<br><br>*********<br><br>There are new M ovens chipping so *still seems to be issues* with the enamel. |
| Houzz (Garden Web)<br><br>Aug. 22, 2016<br><br>http://ths.gardenweb.c om/discussions/32429 63/wolf-lawsuit-filed-july-9-2015-regarding-blue-porcelain-chipping (last visited Mar. 20, 2018) | I just used the oven clean feature on my Wolf oven. Sure enough some *blue enamel chipped off near the edge by seal*. Not happy. I have only had this oven since June 2016. *Used oven just 4 times*. Plan to call my salesman....<br><br>The model I have is: SO30PMSPH. 30inch Ss Pro Sngl Ele Bltin. $5149.00!! |
| Houzz (Garden Web)<br><br>Aug. 22, 2016<br><br>http://ths.gardenweb.c om/discussions/32429 63/wolf-lawsuit-filed-july-9-2015-regarding-blue-porcelain-chipping (last visited Mar. 20, 2018) | I had an *E Series double wall oven that chipped* and replaced it with another E Series with the help of my salesman and local Wolf distributor. *The second oven also chipped, like yours, after a few times using it*. I the [sic] had Wolf replace with the Pro M series double oven … *If you go with a M series you will pay the price difference*. Good luck and come back to tell us the outcome. |
| Houzz (GardenWeb)<br><br>Dec. 15, 2014<br><br>http://ths.gardenweb.c om/discussions/28135 91/wolf-porcelain-chipping-on-new-ovens (last visited Mar. 20, 2018) | Argggggg!!!! New wolf E series ovens, purchased and installed July or so. Ran the self clean for the first time today, guess what? I'm upset. *I thought they had fixed the chipping issue in the new ovens?* The local wolf/sz rep is friends with my builder, so hopefully they'll get it resolved soon. Meanwhile *I'm scared to use the oven*, so I guess we eat out??? |

| ConsumerAffairs.com<br><br>Dec. 1, 2014<br><br>http://www.consumeraffairs.com/homeowners/wolf-cooking-appliances.html?page=2 (last visited Mar. 20, 2018) | This thanksgiving we turned on the self-cleaning mode after we roasted our thanksgiving meal. Upon inspection of the oven floor there was left a dull marring on the oven floor. Obviously **the integrity of the porcelain has been damaged by the high heat of the self cleaning mode as well as crazing of the blue porcelain oven floor** where the heating elements are underneath. In researching on the Internet, **we are now aware that Wolf has had multiple problems with their blue porcelain oven surfaces crazing, flaking, and peeling.** The problems are all over the Internet. Problems with both the ranges and wall oven units. I also believe that **the company knew of this problem previous to our purchase, and were still selling their product at the tune of 7,919.00 per range**. I have started a paper trail with a certified letter to the CEO of Sub Zero Wolf, and if no satisfaction is received I will start a Class Action lawsuit on behalf of all those that have been ripped off! Buyer BEWARE! |
| --- | --- |
| Houzz (GardenWeb)<br><br>Aug. 5, 2014<br><br>http://ths.gardenweb.com/discussions/2301881/wolf-dual-fuel-df366-enamel-failure-what (last visited Mar. 20, 2018) | I found it not nice **they tried to say 1) no one else had these repeated problems**, 2) the ovens weren't made for the use, although not inappropriate, I gave them, and 3) that this problem is "just cosmetic.**"** **I got a bloody finger**, too, from a difficult to remove, crumbling glass shard. And **who wants to pay top dollar for an oven that looks like heck inside in a matter of months, and is harder to clean, even if there weren't glass flakes to gouge our fingers and possibly blow into our food?** |
| Houzz (GardenWeb)<br><br>Oct. 26, 2013<br><br>http://ths.gardenweb.com/discussions/2267417/breaks-in-enamel-finish-of-relatively-new-wolf-oven    (last visited Mar. 20, 2018) | Right now the oven is extra storage until I figure out what to do. You **can't really use it because there are shards of glass coming off and add to that a convection fan blowing them around**. |
| Houzz (GardenWeb)<br><br>July 5, 2013<br><br>http://ths.gardenweb.com/discussions/2301881/wolf-dual-fuel-df366-enamel-failure-what (last visited Mar. 20, 2018) | I have the Wolf 36 inch DF range and the enamel on the floor of **the oven cavity has failed**. . . .  This oven has only been lightly used as it is a second oven and never at high heat. After haggling back and forth, they will give me the part and $325 towards labor which is estimated to start at $800 and can be more. . . . My concern other than the eventual degradation of the floor of the oven is the **glass shards of enamel finding their way into food or being inhaled**. |
| Blogger<br><br>Jan. 10, 2013 | Sadly, at about 13 months in, I noticed porcelain issues across the bottom and in the corners of both oven cavities. . . . |

| | |
|---|---|
| http://rhome410.blogspot.com/2013/01/the-oven-saga-continues.html (last visited Mar. 20, 2018) | But only 6 months later, ***I was wiping crumbs out of oven #2 and got a shard of porcelain in my hand***.  That oven, also, was developing issues with the porcelain at the front corners.  I again sent photos and got a quick phone call from Wolf, apologizing that I'd had to deal with this twice, and ***assured it was unusual for this to happen***.  Again, there was a pretty quick oven switch. . . . <br><br> In early November I noticed crazing in the porcelain at those infamous front corners, and by Thanksgiving, I could see ***bare metal and had the loose shards of blue porcelain again***. <br><br> This time Wolf is throwing in the towel. . . If the porcelain was letting go in the corners in the first half year, I have no idea what it will look like a couple years in, or 10 years from now, and wasn't willing to keep it under those circumstances.  In addition, ***I didn't consider it just a cosmetic issue, but also a cleaning and safety issue***, so decided they can have it back. |
| Houzz (GardenWeb) <br><br> Nov. 30, 2012 <br><br> http://ths.gardenweb.com/discussions/2270633/oven-porcelain-lining-flaking-chippingonly-with-blue (last visited Mar. 20, 2018) | Enter my first Wolf, which had porcelain issues about 10 months in. They promptly replaced it with oven 2, which developed the same problem. The rep was so nice, apologetic, and aghast that I'd had this happen twice. Again, they sent and arranged the replacement right away. . . . Well, as I told them now, ***the 3rd time has not been the charm, because here I am with the porcelain splintering at the front corners*** (inside, near the door on each side) again . . . just where it started with the other two. |
| Houzz (GardenWeb) <br><br> Jan. 22, 2012 <br><br> http://ths.gardenweb.com/discussions/2267417/breaks-in-enamel-finish-of-relatively-new-wolf-oven (last visited Mar. 20, 2018) | [M]y latest problem is the finish on the floor of the upper oven which has several cracks and chips. At the advise [sic] of my dealer I paid them to come out and take photos. ***They agreed that it was a defect in the finish*** so they sent Wolf the photos and their report. A few days later I was called by my dealer who told me that . . . the enamel finish is considered an appearance item and therefore not covered by warranty (which I think is total crap). |
| Houzz (GardenWeb) <br><br> Mar. 4, 2008 <br><br> http://ths.gardenweb.com/discussions/2267417/breaks-in-enamel-finish-of-relatively-new-wolf-oven (last visited Mar. 20, 2018) | We noticed recently that on the floor of the upper oven, ***that beautiful bright blue enamel had what for the world looked like scrape marks*** (except that NO ONE has scraped it with anything at all, much less something seriously metallic which is what it would take to dig into the enamel) toward the left rear. Sort of a small clump of lines where the enamel is clearly broken. Just ran the self-clean on that oven last night, and found a new area, looking identical, of "scrapes" at the front center. The ***enamel actually came off in bits when we wiped down the oven*** with a damp paper towel post-cleaning. |

|  | \*\*\*\*\*\*\*\*\*\*\*\*\* <br><br> We have the same problem with our Wolf DO. ***I often wipe out "splinters" of blue paint out of the base of each oven***. . . . <br><br> I like the looks, but ***I'm not convinced anyone should pay the premium for Wolf wall ovens***. <br><br> \*\*\*\*\*\*\*\*\*\*\*\* <br><br> So . . . on closer inspection, it appears that the exact same problem exists (or will just as soon as the crazing that is showing now blossoms into full-fledged breakthrough of the enamel) on the bottom oven as well. Curiously (and I suspect significantly), the two areas of concern are in EXACTLY (meaning, we measured with a tape measure) the same place in both ovens. . . . <br><br> Wolf has agreed to replace the entire unit . . . it will cost us out of pocket anywhere from $300-$700 for delivery and installation of the new unit. |
|---|---|

46.     Dissatisfied owners of the Ovens also posted pictures exhibiting the damage to their Wolf Ovens.  As explained above, *supra* ¶4, as recently as October 2017, a consumer posted a picture in an online forum demonstrating that the Defect in Wolf Ovens that defendants have known about for over ten years, continues to manifest in Wolf oven cavities unabated.

47.     These recent customer posts mirror older posts concerning the same Defect.  For example, in September 2014 one customer posted the following picture on a discussion board showing damage to the blue porcelain oven interior, virtually identical to the damage to plaintiff's oven:

- 14 -



*See* http://ths.gardenweb.com/discussions/2324401/wolf-48-dual-fuel-or-all-gas (last visited June 14, 2017).

48.     Another customer posted a similar photo of damage to her Wolf oven:



*See*  http://rhome410.blogspot.com/2013/11/still-sad-about-wolf-breaking-up-with-me.html  (last visited Mar. 20, 2018).

49.     Wolf, clearly, knew about the Defect, knew the prevalence or incidence of the

Defect, and knew that customers were observing the cracking and crazing associated with the

Defect through regular use of the Ovens.  Still, Wolf continued to sell the Ovens – without any

warning or disclosure to consumers about the Defect.  The customer referenced in paragraph 48, above, wrote what many other Wolf customers experienced in their discussions with Wolf about the Defect; specifically, that Wolf places the blame on its customers by claiming that their unique use of the Ovens creates an "unusual situation" that causes the Defect.  *Id*.  In this customer's case, Wolf "decided" the customer "baked more often and at higher heats (for pizzas) than 'the norm' who the oven was designed for (even though they agreed and assured me I was doing nothing wrong)."  *Id*.  She explained on another forum that ***Wolf "promises that this 'never' happens, and 'certainly not to one person twice'.***"[9]  After communicating her experience to others, the poster realized that the problem was widespread and not unique to her "unusual situation," as "many Wolf oven owners who baked less often and at more 'normal' temperatures contacted [her] to say they had the same, exact problem."[10]

50.     Another customer, who purchased a new Wolf E series oven in July 2014 and then ran the self-clean function ***for the first time***, posted the following picture demonstrating extensive chipping and crazing from wiping down the oven interior:

---

[9]     *See*     http://ths.gardenweb.com/discussions/2813591/wolf-porcelain-chipping-on-new-ovens (last visited Mar. 20, 2018).

[10]    *See*     http://rhome410.blogspot.com/2013/11/still-sad-about-wolf-breaking-up-with-me.html (last visited Mar. 20, 2018).



*See*  http://ths.gardenweb.com/discussions/2813591/wolf-porcelain-chipping-on-new-ovens  (last visited Mar. 20, 2018).

The customer, according to the online post, was "scared to use the oven" after the incident and "afraid of the shards blowing into our food at this point."  *Id.*

      51.    Defendant failed to adequately design and/or manufacture the Ovens to ensure that they were and are free from the Defect that causes chipping, cracking, crazing and/or flaking of the oven interiors.  At the time defendant began selling the Ovens in the United States, defendant knew, or was reckless in not knowing, that they: (a) contained a defect to the Ovens' design, parts, materials and workmanship; and (b) were not of merchantable quality or fit for their ordinary purpose.

52.     Despite notice of the Defect in the Ovens, and the reasonable expectations of consumers created by defendant's marketing of its Ovens, defendant engaged (and continues to engage) in a wrongful course of conduct by:

(a)     designing, manufacturing and selling the Ovens with a defect that causes chipping, cracking, crazing and/or flaking of the oven interiors;

(b)     failing to disclose that the Ovens cause chipping, cracking, crazing and/or flaking of the oven interiors;

(c)     failing to warn purchasers of the Ovens' inherent Defect;

(d)     concealing material information about the Ovens, including information about the Defect;

(e)     manufacturing, distributing, and selling the Ovens to consumers when defendant was on notice that the Ovens could not be used, in normal operation, by consumers without the porcelain oven cavity, and most notably without the blue porcelain oven cavity, chipping or cracking, and ultimately causing chipped porcelain to contaminate food;

(f)     failing to implement a recall or repair program to adequately announce to plaintiff and Class members the presence of the Defect, and failing to provide to plaintiff and Class members an effective solution to correct the Defect in the Ovens;

(g)     failing to correct and eliminate the Defect in materials and workmanship that cause chipping, cracking, crazing and/or flaking of the Ovens' interiors; and

(h)     failing to disclose that ordinary, or recommended, use of the Ovens will cause oven interiors to chip, crack, craze and/or flake, causing the Ovens (or, at a minimum, certain functions of the Ovens) to be not fully functional.

53.     Other companies develop, manufacture and sell high end defect-free ovens with interiors, including blue interiors, that do not chip, crack or craze through normal use.  One company, Gaggenau, manufactures and sells high quality ovens with a blue enamel coating that is "sprayed in a particularly thick layer on the oven" such that "[s]tubborn stains can be removed easily."[11]

54.     The quality of Gaggenau enamel oven interiors is lauded by some of the same consumers who have experienced or otherwise discussed chipping, cracking or crazing in the Wolf oven interiors in online forums.  One such consumer stated that "my Gaggenau with blue interior does NOT have problems," while another commented, "I have never seen porcelain chipping complaints with" Gaggenau ovens.[12]   The latter individual also commented that KitchenAid produces an oven with a blue interior that also "doesn't seem to have a problem with chipping."[13]

55.     At a minimum, Wolf is aware that other companies, including producers of high end ovens with blue enamel oven cavities, produce quality interiors that do not chip, crack or craze through normal use.

56.     Plaintiff and Class members would not have purchased the Ovens at the prices they paid, or would not have purchased the Ovens at all, absent defendant's advertising, failure to disclose the Defect and/or concealment of material information about the Defect.

---

[11]   http://www.gaggenau.com/id/the-gaggenau-experience/the-difference-is/tradition/a-closely-guarded-secret-our-enamel (last visited Mar. 20, 2018).

[12]   https://www.houzz.com/discussions/2270633/oven-porcelain-lining-flaking-chippingonly-with-blue (last visited Mar. 20, 2018).

[13]   *Id*.

**New York and Pennsylvania Consumers Initiate Class Actions
Stemming From the Defect**

57.     On June 16, 2015, consumers in New York who purchased a Wolf dual fuel oven

in 2006 and had their oven and/or oven cavity replaced repeatedly until Wolf, in 2015, refused to

provide any further replacements or otherwise remedy the Defect, brought a lawsuit against Wolf

for breach of express and implied warranties, negligent misrepresentation, violation of the

Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq*. ("MMWA") and violations of New

York General Business Law §§349-50.   Plaintiffs in the case, styled *Kail, et al. v. Wolf

Appliance, Inc*., Civil Action No. 2:15-cv-03513 (JS) (GRB) (E.D.N.Y.), seek certification of a

nationwide class and New York subclass of Wolf oven purchasers containing a blue porcelain

oven cavity.

58.     As alleged, when plaintiffs in the *Kail* action received their last oven replacement

in 2014, they had already had their Wolf ovens or oven cavities replaced due to chipping,

cracking and/or crazing on eight separate occasions.[14]   When this last oven again exhibited the

same defect, it marked the ***tenth oven*** that developed chipping, cracking and/or crazing of the

blue porcelain interior.[15]   On August 21, 2017, the Court in the *Kail* action sustained plaintiffs'

breach of express and implied warranty, violation of the MMWA and negligent

misrepresentation claims in connection with Wolf's motion for summary judgment.[16]

59.     On June 21, 2017, a consumer in Pennsylvania, Dr. Barry Garfinkle, filed a

similar action against Wolf in federal court after having his E Series oven replaced twice due to

---

[14]   *E.g*., *Kail, et al. v. Wolf Appliance*, No. 2:15-cv-03513 (E.D.N.Y.), ECF No. 24-12,
Declaration of Stephanie Stetson ("Stetson Decl."), at ¶¶4-5, 9; *see also Kail* Cpt., at ¶¶45-55.

[15]   *Id.*

[16]   *Kail, et al. v. Wolf Appliance*, No. 2:15cv03513 (E.D.N.Y.), ECF No. 35.

chipping, cracking and/or crazing of his oven cavities.  That case, captioned *Garfinkle v. Wolf Appliance, Inc*., No. 17-CV-03753 (E.D.N.Y.), seeks certification of a nationwide and Pennsylvania subclass of Wolf oven purchasers for breach of express and implied warranties, violation of the MMWA, negligent misrepresentation and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §201–1, *et seq.*

60.     Publicly available filings from the *Kail* action reveal that Wolf maintains data and information related to customer contacts with Wolf in a customer service database, including information pertaining to service complaints regarding porcelain chipping or crazing.

61.     Even prior to these lawsuits and to plaintiff's purchase of his Wolf oven in July or August 2014, Wolf was aware of the Defect in its Ovens but failed to warn consumers about the problem or otherwise remedy the Defect.  As discussed above, *supra* ¶¶45-50, online customer complaints reveal that customers routinely complained to Wolf about chipping, cracking and/or crazing of Wolf oven cavities.

**Plaintiff's Experience with Wolf Ovens**

62.     In July-August 2014, plaintiff purchased a Wolf E Series double wall oven, model number DO30TE/S/TH, from Berger Appliances in Hawthorne, NY.  The oven was registered online for warranty on August 19, 2014.  Both ovens were used from installation until November 2017 under normal circumstances, and neither oven was soiled enough to require self-cleaning. On November 30, 2017, plaintiff followed the instructions in the Use and Care Guide and washed and wiped off any accumulation from the surfaces.  Plaintiff then ran the self-clean function and subsequently observed extensive damage, including chipping, cracking and/or crazing of the blue porcelain in three areas of the oven floor.  Below is a picture of part of the damage he observed:



63.     Berger Appliances then referred plaintiff to Northeastern, a factory certified Wolf service company.  A representative of Northeastern acknowledged to plaintiff that plaintiff was not the first person to call Northeastern about the chipping, cracking and/or crazing plaintiff described.  Plaintiff sent the picture above in paragraph 62, along with the picture below, to Northeastern.



64.     The representative from Northeastern also told plaintiff nothing could be done other than replace the oven cavity.  The representative instructed plaintiff to clean the second oven and report back if he observed similar damage.

65.     Plaintiff initiated the self-clean function with his second oven and observed damage similar to what he observed after operating the self-clean function on the first oven. Plaintiff contacted Northeastern again and was told that it had informed Wolf of his situation. The representative told plaintiff that Wolf: (1) would not do anything about the damage in either oven; (2) said the damage was purely cosmetic and that the ovens would function with no problems; and (3) would do nothing to repair or share in the cost of repairs.

66.     An oven replacement or cavity replacement would not preclude the Defect from manifesting itself again.

67.     Plaintiff purchased his Wolf oven on the basis that it would cook safely and operate as advertised.  Prior to purchasing the oven, plaintiff was unaware and could not have

discovered, even in the exercise of reasonable diligence, that defendant's Ovens were defective. Had plaintiff known about the Defect in the oven, and the chipping, cracking, crazing and/or flaking of the oven interior caused thereby, he would not have purchased the oven and would not have been willing to pay a premium price for a Wolf oven.

68.     The Wolf Ovens were and/or are worth less than what plaintiff and Class members paid for them.  In fact, plaintiff and Class members paid more for defendant's Ovens than they otherwise would have had they not been misled by the deceptive conduct complained of herein.  As such, plaintiff and Class members lost money as a result of defendant's actions in that they did not receive what they paid for.

69.     As a result of defendant's conduct and concealment of material information about its Ovens, as well as defendant's other acts and omissions described in this Complaint, including the failure to warn of a known defect, defendant has caused plaintiff and Class members to suffer injury as a result of the Defect, including, but not limited to: (1) a refund of the cost and/or cost of replacement of the oven (and associated costs); (2) overpayment for a defective product; (3) a decrease in value of the Ovens due to the Defect; and (4) payment for a product that does not function as advertised, and other purported remedies.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4), individually and as a class action on behalf of the following proposed classes:

### The Nationwide Class

All persons and entities in the United States who purchased one or more of the Wolf Ovens containing a porcelain oven cavity.

### The New York Class

All persons and entities in the State of New York who purchased one or more of the Wolf Ovens containing a porcelain oven cavity.

71.     Excluded from the Classes is defendant, its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.  Also excluded is any entity in which defendant has a controlling interest and any of the legal representatives, heirs, or assigns of defendant.  Plaintiff reserves the right to amend the class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

72.     <u>Numerosity</u>:  The Classes are so numerous that joinder of all individual members is impracticable.  While the exact number and identities of members of the Classes are unknown to plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, plaintiff alleges that the Classes are comprised of thousands of individual members geographically disbursed throughout the United States.  The number of Class members and their geographical disbursement renders joinder of all individual members impracticable if not impossible.

73.     <u>Commonality</u>:  There are questions of fact and law common to members of the Classes that predominate over any questions affecting solely individual members, including, *inter alia*, the following:

(a)     whether defendant omitted material information about the quality of the Ovens or otherwise failed to disclose to Class members or warn them of the hidden and/or concealed a defect of the Ovens although such defect was fully known to defendant;

(b)     whether defendant misled Class members into believing that the Ovens operated as advertised and were free from defects;

(c)     whether defendant knew or should have known that the Ovens contained a defect that cause the oven cavity to chip, crack, craze and/or flake;

(d)     whether defendant fraudulently concealed the Defect in the Ovens;

(e)     whether defendant breached its implied warranties to Class members concerning the Ovens;

(f)     whether plaintiff and members of the Classes are entitled to statutory relief;

(g)     whether plaintiff and members of the Classes are entitled to compensatory relief; and

(h)     whether plaintiff and members of the Classes have sustained damages, and, if so, what is the proper measure of damages.

74.     <u>Typicality</u>:  Plaintiff's claims are typical of the members of the Classes he seeks to represent.  Plaintiff and all other members of the Classes sustained damages arising out of defendant's common course of conduct as complained herein.  The losses of each member of the Classes were caused directly by defendant's wrongful conduct alleged herein.  The amount of money at issue is such that proceeding by way of class action is the only economical and sensible manner in which to vindicate the injuries sustained by plaintiff and the members of the Classes.

75.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Classes.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Classes, and plaintiff has retained competent counsel experienced in litigation of this nature.

76.     Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Classes.  Indeed, the predominant issue in this action is whether defendant sold defective Ovens, misrepresented the quality of the Ovens and failed to disclose a known defect to Class members

that caused damages to plaintiff and the members of the Classes.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and plaintiff envisions no unusual difficulty in the management of this action as a class action.

77.     In addition, the Classes may also be certified under Rule 23(b)(2) because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

78.     Further, the Classes may be certified for specific issues under Rule 23(c)(4).

79.     The undersigned counsel for plaintiff and the Classes request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g).  The undersigned counsel will fairly and adequately represent the interests of the Classes, have identified or investigated the Classes' potential claims, are experienced in handling class actions, other complex litigation, and

consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the Classes, and are best able to represent the Classes.

## COUNT I

### Fraudulent Concealment

80.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

81.    The fraudulent concealment allegations contained in this cause of action are limited to this cause of action alone, and are not incorporated into any of the other causes of action below.

82.    At all times during the course of dealing between defendant or its agents and plaintiff and Class Members, defendant concealed the Defect of the Wolf Ovens.

83.    Defendant had a duty to disclose the Defect.

84.    Defendant had a duty to disclose the existence of the Defect and material facts regarding how cracking, crazing and chipping of the porcelain oven interiors would occur through regular use – *e.g.*, cycling the self-clean function – of the Ovens.

85.    Defendant knew, or was reckless in not knowing, of the Defect and that it was bound to disclose the Defect.

86.    Defendant fraudulently concealed, and/or intentionally omitted, that the Wolf Ovens were defective in design and manufacturing in that they routinely chip, crack and craze rendering them unfit for the purposes for which they are purchased, namely: (1) cooking food without damaging the Ovens' interior; (2) self-cleaning the Ovens without causing damage to the oven interior; (3) maintaining the purity of the Ovens' interiors, including Wolf's signature aesthetics; and (4) cooking food and self-cleaning the oven without the risk that porcelain flakes

or pieces will be dislodged from the oven cavity and expose users to having the porcelain chips blown around and onto food contained in the Ovens.

87.    Defendant fraudulently concealed and/or intentionally omitted the fact that it was aware of consumer complaints regarding the Defect.  Despite its knowledge, defendant did nothing.

88.    Defendant failed to discharge its duty to disclose by staying silent about the known Defect.

89.    Defendant's concealment and omissions of material facts concerning the Defect was made purposefully, willfully, wantonly, and/or recklessly to mislead plaintiff and Class members into reliance and continued purchase and use of the Ovens, and to cause them to purchase and/or use defendant's Ovens solely for defendant's financial gain.

90.    Defendant knew that plaintiff and Class members, had no way to determine the truth behind defendant's concealment and omissions, before or at the time of purchase, including these material omissions of facts surrounding the Defect as alleged herein.

91.    Plaintiff and Class members reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

92.    Plaintiff and Class members reasonably relied on defendant's silence regarding the Defect and related facts that defendant negligently, fraudulently and/or purposefully concealed and/or omitted.

93.    As a result of the foregoing acts and omissions, plaintiff and Class members experienced, and/or are at the risk of experiencing, injuries and/or financial damage and injury.

## COUNT II

### Violations of §349 of New York General Business Law

94.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs, except paragraphs 80-93 above, as if fully set forth herein.

95.     GBL §349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

96.     Defendant is engaged in consumer-oriented, commercial conduct by selling and advertising the Ovens.

97.     Defendant has engaged in deceptive acts and practices through omissions of material facts, including the failure to warn of the Defect, directed at plaintiff and Class members, as more fully described above, in connection with the sale of Wolf Ovens that have an inherent Defect that cause the oven interiors to chip, crack, craze and/or flake.

98.     Wolf also fails to adequately compensate plaintiff and Class members for the effects of its behavior.

99.     Defendant's omissions and failure to warn of the Defect are likely to mislead and did materially mislead plaintiff and other reasonable consumers by causing them to purchase the Ovens at a price they would not have otherwise paid and to incur additional damages and expenses that they would not have incurred but for defendant's deceptive acts and practices.

100.    Defendant's omissions and failure to warn of the Defect constitute unconscionable commercial practices and deception in connection with the sale and advertisement of the Ovens, in violation of GBL §349.

101.    Defendant violated GBL §349 by knowingly and falsely representing that the Ovens were fit to be used for the purpose for which they were intended, when Defendant knew of the Defect as alleged herein.

102.     The unfair and deceptive trade practices have directly, foreseeably, and proximately caused damages and injury to plaintiff and Class members as described above.

103.     By virtue of the foregoing, defendant has violated GBL §349.

## COUNT III

### Breach of Implied Warranty of Merchantability

104.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs, except paragraphs 80-93 above, as if fully set forth herein.

105.     At the time of sale, on each purchase and installation date and currently, defendant has been or is in the business of manufacturing and selling the Ovens.

106.     By operation of law, defendant impliedly warranted to plaintiff and Class members that the Ovens were of merchantable quality and fit for the ordinary purposes for which they are used.

107.     Defendant knowingly and/or recklessly sold a defective product without informing consumers about the Defect.

108.     Defendant possessed actual superior knowledge of the problems with its blue porcelain oven interiors based on, *inter alia*, plaintiff's and Class members' complaints and/or calls to customer care and complaints posted on the internet.

109.     Plaintiff's oven became unfit for the ordinary purpose of cooking food, self-cleaning and maintaining Wolf's "signature aesthetics" because it developed chipping, cracking, crazing and/or flaking in the oven interior.

110.     Plaintiff cannot use the self-clean function without causing further damage to his Wolf oven.

111.     Plaintiff was the intended third-party beneficiary of the implied warranty made by defendant.  Defendant knew that the retailers to whom it sold the Ovens were not going to own

the Ovens any longer than it took to sell them to plaintiff.  Further, defendant intended that any implied warranties that applied to the Ovens were for the benefit of plaintiff and Class members.

112.    Defendant knew plaintiff and Class members were, and intended that they be, the ultimate beneficiaries of defendant's implied warranties as they are the owners of the Ovens.

113.    Defendant, who manufactures and markets the Ovens, and/or sellers/resellers of the Ovens, knew that plaintiff and Class members were the end users of the Ovens when defendant entered into any and all sales contracts and subcontracts for the Ovens and defendant's intent to benefit plaintiff and Class members arises by operation of law pursuant to the "implied covenant of good faith and fair dealing" contained within any and all sales contracts and subcontracts for the Ovens entered into by defendant.

114.    As a proximate result of defendant's breach of implied warranty, plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial. Plaintiff and Class members are entitled to recover damages and attorneys' fees, costs, rescission, and other relief as is provided by statute or deemed appropriate by the Court.

## COUNT IV

### Unjust Enrichment

115.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs, except paragraphs 80-93 above, as if fully set forth herein.

116.    Defendant was and is, at all relevant times, a manufacturer and seller of Wolf Ovens.

117.    Plaintiff paid for his Wolf oven for the purpose of cooking food in a designer oven without the risk of chipping, cracking or crazing of the oven cavity.

118.    Plaintiff did not receive an oven that can be operated without the risk of chipping, cracking or crazing, or of pieces of porcelain flakes blowing onto and/or contaminating food

cooked therein.  Rather, defendant sold the defective Ovens to plaintiff and Class members and benefited financially from the sale of such Ovens.  These unlawful acts caused plaintiff and Class members to suffer injury, lose money and otherwise be deprived of the benefit of fully functioning Wolf ovens.

119.    Equity, therefore demands that Defendant be disgorged of its profits from the defective Ovens.  Defendant was unjustly enriched from the sale of the Ovens even though the Ovens contain the Defect and cause damage and injury described herein.

120.    Plaintiff and Class members seek restoration of the monies of which they were unfairly and improperly deprived, as described herein.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, plaintiff on behalf of himself and all others similarly situated, prays for judgment and relief against defendant as follows:

A.    An Order determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the Classes, and any other appropriate subclasses, certifying plaintiff as a representative of the Classes and appointing plaintiff's counsel Robbins Geller Rudman & Dowd LLP as Lead Counsel for the Classes;

B.    An Order awarding statutory, compensatory and punitive damages in favor of plaintiff and the other Class members against defendant for defendant's violations of law described herein, and for all damages sustained as a result of defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    An Order declaring defendant's practices to be improper, unfair, unlawful and/or deceptive and requiring defendant to provide refunds to or otherwise fully compensate plaintiff and members of the Classes;

D.      An Order requiring Wolf to correct its advertising and marketing of the Ovens to warn consumers of the Defect and its risks for when the Defect manifests in the Ovens' cavities;

E.      An order enjoining defendant from marketing and selling the Ovens until the Defect discussed herein is cured;

F.      Disgorgement and restitution;

G.      An Order awarding plaintiff and the Classes their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

H.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 20, 2018                    ROBBINS GELLER RUDMAN
                                                                   & DOWD LLP
                                                          SAMUEL H. RUDMAN
                                                          MARK S. REICH
                                                          VINCENT M. SERRA


                                                                   */s/ Mark S. Reich*
                                                          MARK S. REICH

                                                          58 South Service Road, Suite 200
                                                          Melville, NY  11747
                                                          Telephone:  631/367-7100
                                                          631/367-1173 (fax)
                                                          srudman@rgrdlaw.com
                                                          mreich@rgrdlaw.com
                                                          vserra@rgrdlaw.com

                                                          *Attorneys for Plaintiff*