UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————— x

IVAN and MELANIE KAIL, Individually and
on Behalf of All Others Similarly Situated,

                Plaintiffs,

    vs.

WOLF APPLIANCE, INC.,

                Defendant.

Civil Action No. 2:15-cv-03513-JS-GRB

CLASS ACTION

—————————————————————

BARRY GARFINKLE, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

WOLF APPLIANCE, INC.,

                Defendant.

Civil Action No. 2:17-cv-03753-JS-GRB

CLASS ACTION

—————————————————————

FREDERICK I. SHARP, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

WOLF APPLIANCE, INC.,

                Defendant.

Civil Action No. 2:18-cv-01723-JS-GRB

CLASS ACTION

—————————————————— x

BARRY GARFINKLE AND FREDERICK SHARP'S MEMORANDUM OF LAW IN
OPPOSITION TO WOLF APPLIANCE, INC.'S CONSOLIDATED MOTION TO STRIKE
CERTAIN CLASS CLAIMS ALLEGED BY BARRY GARFINKLE AND FREDERICK
SHARP BECAUSE THEY ARE UNTIMELY

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

A.   Wolf Manufactures, Sells and Promotes Its "Signature" Blue Oven
Interiors, Premium Brand and Dependability ...........................................2

B.   Wolf's Blue Oven Cavities Chip, Crack, Craze or Otherwise Manifest
Similar Imperfections...............................................................................3

C.   The Imperfections Have Ancillary and Negative Effects on Consumers'
Use of Wolf Ovens...................................................................................5

D.   Wolf Is, and Has Been, Aware that the Blue Cavities Will Craze and Form
Imperfections ...........................................................................................6

E.   Dr. Garfinkle and Mr. Sharp's Experience with Wolf's Ovens Containing
Porcelain Imperfections ...........................................................................7

   1.   Dr. Garfinkle's Experience .............................................................7

   2.   Mr. Sharp's Experience .................................................................10

   3.   Dr. Garfinkle and Mr. Sharp Were Diligent in Filing Suit When
   They Discovered Sufficient Facts Giving Rise to Their Claims..............11

III. ARGUMENT ......................................................................................................12

A.   Dr. Garfinkle and Mr. Sharp's Claims Are Tolled by the Pendency of the
Existing Putative Class Action................................................................12

   1.   All Claims Are Timely as the Applicable Statutes of Limitations
   Were Extended by the *Kail* Action .........................................13

      a.   The No-Tolling Finding in *China Agritech* Is Limited to
      Class Complaints Brought *After* the Denial of Class
      Certification ......................................................................13

      b.   State Law Claims Are Tolled; *China Agritech* Does Not
      Change That Benefit .........................................................15

B.   Dr. Garfinkle's Warranty Claims Are Not Barred on Statute of Limitations
Grounds...................................................................................................17

i

**Page**

1.      The Future Performance Exception Applies to Dr. Garfinkle's
        Express *and* Implied Warranty Claims ......................................................17

2.      The Statute of Limitations for Dr. Garfinkle's Implied Warranty
        Claim Began with the Delivery of Dr. Garfinkle's February 2015
        Oven .............................................................................................................19

3.      Wolf Does Not Challenge Dr. Garfinkle's Express Warranty Claim
        Based on Wolf's Written Warranty .............................................................21

C.      Equitable Tolling Applies to Dr. Garfinkle's Warranty Claims, and Mr.
        Sharp's GBL §349 and Unjust Enrichment Claims.............................................22

IV.     CONCLUSION.............................................................................................................25

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aiken v. Nixon*,
    236 F. Supp. 2d 211 (N.D.N.Y. 2002) .................................................................23

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................... *passim*

*Amodeo v. Ryan Homes, Inc.*,
    407 Pa. Super. 448, 595 A.2d 1232 (1991) ...............................................22

*Antz v. GAF Materials Corp.*,
    719 A.2d 758 (Pa. Super. Ct. 1998) .............................................18, 19

*Argabright v. Rheem Mfg. Co.*,
    201 F. Supp. 3d 578 (D.N.J. 2016) .............................................22, 23

*Casey v. Merck & Co.*,
    653 F.3d 95 (2d Cir. 2011) .........................................................15

*Chavez v. Occidental Chem. Corp.*,
    300 F. Supp. 3d. 517 (S.D.N.Y. 2018) .............................................13, 14, 15, 16

*China Agritech v. Resh*,
    138 S. Ct. 1800 (2018) ................................................ *passim*

*Cty. of Mercer v. UniLect Corp.*,
    612 F. Supp. 2d 638 (W.D. Pa. 2009) .............................................18

*Cucchi v. Rollins Protective Servs. Co.*,
    524 Pa. 514 (1990) ...............................................................18

*Famular v. Whirlpool Corp.*,
    No. 16-CV-944(JB), 2017 WL 2470844
    (S.D.N.Y. June 7, 2017) ...........................................................13, 14, 16

*Giovanniello v. ALM Media, LLC*,
    726 F.3d 106 (2d Cir. 2013) .....................................................13, 14

*Gunsalus v. Celotex Corp.*,
    674 F. Supp. 1149 (E.D. Pa. 1987) ..............................................19

*Hart v. BHH, LLC*,
    No. 15CV4804, 2018 WL 5729294
    (S.D.N.Y. Nov. 2, 2018) ...........................................................13, 14

**Page**

*Hrycay v. Monaco Coach Corp.*,
  C.A. No. 07-2605, 2008 WL 1869277
  (E.D. Pa. Apr. 28, 2008) ........................................................24

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  No. CIV03-4558(HAA), 2008 WL 4126264
  (D.N.J. Sept. 2, 2008) .....................................................23, 24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MDL 2262-NRB, 2015 WL 6243526
  (S.D.N.Y. Oct. 20, 2015) ...............................................14, 17

*Korwek v. Hunt*,
  827 F.2d 874 (2d Cir. 1987) ...........................................14, 15

*Marincovich v. Dunes Hotels & Casinos, Inc.*,
  41 A.D.3d 1006, 839 N.Y.S.2d 553 (2007) ...........................22

*McPhee v. DePuy Orthopedics, Inc.*,
  989 F. Supp. 2d 451 (W.D. Pa. 2012) ...................................18

*Mills v. Forestex Co.*,
  108 Cal. App. 4th 625 (2003) ..............................................24

*Nelson v. Nissan N. Am., Inc.*,
  894 F. Supp. 2d 558 (D.N.J. 2012) .......................................22

*Neuhoff v. Marvin Lumber & Cedar Co.*,
  370 F.3d 197 (1st Cir. 2004) ...........................................20, 21

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
  No. 17 Civ. 1388 (KPF), 2018 W.L. 1382105
  (S.D.N.Y. Mar. 16, 2018) ....................................................13

*Primavera Familienstifung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001) ...............................16, 17

*Simpson v. Widger*,
  311 N.J. Super. 379 (App. Div. 1998) ...................................24

*The Knit With v. Knitting Fever, Inc.*,
  625 F. App'x 27 (3d Cir. 2015) .......................................23, 24

**Page**

*Zimmerman v. Poly Prep Country Day Sch*.,
888 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................................................................23

**STATUTES, RULES AND REGULATIONS**

New York General
Business Law §349 ........................................................................1, 12, 22, 23

Plaintiffs Barry Garfinkle and Frederick Sharp respectfully submit this Memorandum of Law in Opposition to Defendant Wolf Appliance, Inc.'s ("Wolf" or "defendant") Consolidated Motion to Strike Certain Class Claims Alleged by Barry Garfinkle and Frederick Sharp Because They Are Untimely ("Def. Mem.").[1]

## I.      INTRODUCTION

The claims of Dr. Garfinkle and Mr. Sharp were all tolled by the filing of the *Kail* action.[2]  Each of their claims were filed within the applicable statutes of limitation as of June 16, 2015.[3]  The Supreme Court's decision in *China Agritech v. Resh*, 138 S. Ct. 1800 (2018) does not undercut the rights of Dr. Garfinkle and Mr. Sharp to bring individual ***and class*** claims, because *China Agritech* does not: (1) affect successive complaints brought, as they were here, ***before*** the denial of class certification; and (2) govern the state law claims at issue here.  The law is clear on these points and, as detailed below, forms the sole basis needed to deny defendant's motion in its entirety.

Secondarily, Dr. Garfinkle's breach of warranty claims are timely under the future performance exception, and because his 2015 replacement oven carried an implied warranty.  The statute of limitations as to Dr. Garfinkle's warranty claims and Mr. Sharp's claims under New York General Business Law ("GBL") §349 and for unjust enrichment are extended under the doctrine of equitable tolling.  For these reasons, Wolf's statutes of limitations arguments fail as well.

Defendant's motion to strike presents a noticeable shift in position: *from, mere months*

---

[1]   All references to "Ex. __" are to the Declaration of Vincent M. Serra in Support of Barry Garfinkle and Frederick Sharp's Memorandum of Law in Opposition to Defendant's Consolidated Motion to Strike Certain Class Claims as well as in Support of their Memorandum of Law in Opposition to Defendant's Consolidated Motion for Summary Judgment ("Serra Decl."), submitted herewith.

[2]   *Kail v. Wolf Appliance, Inc.*, Civ. No. 2:15-cv-03513-JS-GRB, was commenced on June 16, 2015.

[3]   *See infra* Fig. 1, §III.A., at 12; *see American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

*ago*, claiming that Dr. Garfinkle and Mr. Sharp's counsel was bullying it and the Court by filing additional cases when it was not yet necessary[4] while Wolf claimed that there was no legitimate rational for filing additional cases on top of the *Kail* action[5] *to, now*, claiming that the *Garfinkle* and *Sharp* actions are untimely.   Ironically, defendant's latest position, reads as a directive to absent class members to file their own actions in order to protect class interests.   Meaning, the very position Wolf claims it should not be subjected to, is the logical result of its own procedural contention.

Given its limited scope, Wolf's motion to strike, ***even if successful***, would allow most of Dr. Garfinkle and Mr. Sharp's claim to proceed.[6]   Defendant's motion to strike fails in its entirety, however, as each and every claim brought by Dr. Garfinkle and Mr. Sharp was timely or tolled.

## II.     FACTUAL BACKGROUND

### A.     Wolf Manufactures, Sells and Promotes Its "Signature" Blue Oven Interiors, Premium Brand and Dependability

Wolf manufactures and sells high-end built-in ovens and ranges with porcelain enameled oven interiors (the "Wolf Ovens"), including its "signature" cobalt blue porcelain ovens (the "Blue Ovens" or "Blue Cavities").[7]   Wolf markets itself as a leading manufacturer of high-end

---

[4]    *See Sharp v. Wolf Appliance, Inc*., Civ. No. 2:18-cv-01723-JS-GRB, ECF No. 19 at 5 ("*Sharp* ECF No.") (arguing that the "real reason" for the filing of the Sharp action was "to bully Wolf and this Court" through additional cases and claims).   All general references to "ECF No." are to the docket filings in *Kail v. Wolf Appliance, Inc.*, Civ. No. 2:15-cv-03513-JS-GRB, unless otherwise noted.

[5]    Ex. 1, July 13, 2018 Tr. at 18:14-16 (Wolf's counsel: "I don't hear a legitimate rationale for the timing of bringing the *Sharp* action"), 20:11-20 (Wolf's counsel:  "the bottom line is there were no grounds to file the Sharp action in the first instance.  It adds nothing, it's cumulative . . .").

[6]    Ex. 2, Chart of Claims showing that Wolf's Motion to Strike does not address Dr. Garfinkle's breach of express warranty (based on the written warranty), negligent misrepresentation and consumer fraud claims under Pennsylvania law, nor does it address Mr. Sharp's fraudulent concealment or breach of implied warranty claims.

[7]    Wolf also refers to its oven interiors as "cavities."  Wolf's built-in (or "wall") ovens, "dual fuel" ranges (ovens that include a gas cooktop and electric oven) and induction ranges contain blue oven cavities.  The built-in ovens are sold in different series, including the L Series, E Series and M Series models.

cooking appliances.[8]  Wolf's Blue Ovens, for example, retail for between approximately $4,300 and $17,600.[9]  Wolf advertises its ovens as premium-brand luxury appliances that are both aesthetically pleasing and dependable.[10]  The cobalt blue porcelain in the Blue Ovens are a defining product "feature" as part of Wolf's advertised "*signature aesthetics*" to "enhance the oven's interior."  *E.g.*, Garfinkle Cpt. at ¶8.  Wolf relies on representations regarding the dependability of its ovens[11] to sell the Blue Ovens (*e.g.*, Wolf's "20 year life goal")[12] and the Company's stated intention for perfection – which it touts to consumers and its customers expect – is intended to apply to all facets of Wolf products, including aesthetic features.[13]  Wolf markets its ovens through a variety of means, including online (*e.g.*, its own web site), print (*e.g.*, magazines; brochures) and at point of purchase or sale (*e.g.*, at its exclusive authorized retailers with sales representatives).[14]

### B.   Wolf's Blue Oven Cavities Chip, Crack, Craze or Otherwise Manifest Similar Imperfections

Wolf's "signature" blue porcelain oven cavities chip, crack, craze and/or flake through regular and customary use.  These imperfections[15] appear through ordinary use of the oven and,

---

[8]    *See* ECF No. 57, Class Action Complaint ("Sharp Cpt."), at ¶8.

[9]    Ex. 3, WOLF 1208857-976; *see also* Ex. 4 at KAIL0000378-79.

[10]   *E.g.*, ECF No. 39, Class Action Complaint ("Garfinkle Cpt.") at  ¶¶7, 8; *see also* Ex. 5 at KAIL0000386; Ex. 6, Deft's Ex. 10 at KAIL0000389-91; Ex. 7 at WOLF 0023945-46.

[11]   Ex. 6, Deft's Ex. 10 at KAIL0000390 (Wolf ovens are "*rigorously tested to ensure dependability*"; "Built with *superior-quality materials*, *Wolf products are designed to last a minimum of 20 years* under far heavier use than any home cook will ever subject them to.  To ensure reliability, engineers stress-test our designs under laboratory conditions that simulate years of use. . .").

[12]   Ex. 8, Dietsch Tr. at 52:15-21.

[13]   *Id.* at 77:21-23; *see also id*. at 95:5-23, 111:20-24.

[14]   Dr. Garfinkle and Mr. Sharp both visited a Wolf authorized retailer to personally view the Blue Ovens and speak to sales associates.  Dr. Garfinkle, at his deposition, was able to recall viewing brochures as well.

[15]   Dr. Garfinkle and Mr. Sharp use the term "imperfections" to describe the chipping, cracking, crazing, flaking and/or spidering of Wolf's porcelain oven interiors.  Dr. Garfinkle and Mr. Sharp previously used the word "defect" not as legal definition, but to describe the manifestation of the imperfections or blemishes in Wolf's oven cavities.  To be clear, however, while the imperfections are in fact defects by definition, and  defendant's own witnesses and porcelain reference materials use the term "defect" to describe the imperfections at issue, this is not a products defect case in the traditional sense of the legal term (*e.g.*, a products liability case).  This case arises from visible

based on discovery in this action, is exacerbated through normal and instructed use of the ovens at high temperatures; *e.g.*, by utilizing the self-clean function.[16]  The crux of Dr. Garfinkle and Mr. Sharp's claims, and the absent class members they seek to represent, relates to crazing that occurs at the front corners of the bevel[17] at the bottom of the oven cavities near the walls.[18] Wolf's senior engineer in charge of porcelain, Randy Rinehart, testified that imperfections appearing at the outer edges of the oven cavity or on the bevel were apt to have been caused by movement of the porcelain oven floor, which is directly related to high temperatures, and not consistent with misuse.[19]

Predictably, Dr. Garfinkle and Mr. Sharp's ovens manifested imperfections in the same location that Mr. Rinehart testified was, and would be, impacted.[20]  Dr. Garfinkle and Mr. Sharp, akin to countless class member consumers, reported their experiences to Wolf.[21]  Both described the imperfections in a similar fashion – chipping, cracking, crazing, flaking or spidering of the porcelain interiors of their Wolf oven.[22]

---

imperfections that appear on Wolf's oven cavities and the use of the word "defect" was not intended to convert this case from a false advertising/failure to warn case (which it is) to a products liability or defect case (which it is not).

[16]   Ex. 9, Rinehart Tr. at 74:11-75:2 (noting that, while chipping can happen during "regular" cooking and baking, the "potential for damage is higher" from self-cleaning because the "heat temperature" is higher).

[17]   A "bevel" is a sloping edge from, in this context, a horizontal surface (such as a beveled mirror).  A collection of images of the Blue Cavities with imperfections at the bevel corners are attached as Ex. 10 to the Serra Decl.

[18]   *E.g.*, Garfinkle Cpt. at ¶21; Sharp Cpt. at ¶20.

[19]   Ex. 9, Rinehart Tr. at 110:6-19.  Other Wolf representatives supported Rinehart's position or deferred to him as the person most knowledgeable of the porcelain crazing that Wolf was experiencing in connection with its Blue Ovens. *See* Ex. 11, Posorske Tr. at 53:8-10; Ex. 8, Dietsch Tr. at 64:11-21; Ex. 12, Hoffman Tr. at 102:1-14.

[20]   *E.g.*, ECF No. 66-5, Jan. 30, 2018 Deposition of Barry Garfinkle ("Garfinkle Tr.") at 106:22-107:8; Sharp Cpt. at ¶¶21-23.  Plaintiff will refer to the deposition transcript of Barry Garfinkle and Frederick Sharp attached to Wolf's Summary Judgment Motion (*see* ECF No. 66-5 and 66-6, respectively) for citations and because it was submitted in connection with defendant's brief.

[21]   *E.g.*, Garfinkle Tr. at 19:21-20:4, 39:21-22, 97:8-98:2, 153:10-154:21; ECF No. 66-6, Aug. 22, 2018 Deposition of Frederick I. Sharp ("Sharp Tr.") at 30:2-17, 91:22-25, 92:1-20.

[22]   Garfinkle Tr. at 104:5-107:8; 124:10-125:13; Sharp Tr. at 60:14-18; 67:21-68:9; 141:23-142:3.

Wolf is aware of the manifestation of the imperfections,[23] and knew of their prevalence and inevitability prior to selling ovens to Dr. Garfinkle and Mr. Sharp.[24] Wolf had internal discussions about addressing the pervasiveness of the occurrences.[25] Wolf and its authorized service representatives were called, sometimes repeatedly by the same customers, to respond to complaints about the imperfections.[26] **But,** despite all this, Wolf decidedly concluded not to determine what aspect of its processes (*e.g.*, design, manufacturing, shipping) was the root cause leading to the manifestation of the imperfections.

### C.   The Imperfections Have Ancillary and Negative Effects on Consumers' Use of Wolf Ovens

The imperfections are accompanied by loose flakes of porcelain – pieces derived from the chipping, cracking, and crazing – of the Blue Cavities. Oven users are, therefore, at risk of having flakes blow onto, and potentially contaminating, food.[27] Indeed, Wolf has been notified, and received complaints, of porcelain pieces on food after cooking in their Wolf Ovens.[28] Because of this risk, and the potential for worsening the imperfections, Dr. Garfinkle and Mr. Sharp and the consumers they seek to represent are faced with the dilemma as to whether to run

---

[23]   *E.g.*, Ex 13, Rinehart Ex. 54 at WOLF 0115092 ("There is a customer who is on her 4th oven."); *see also* Ex. 14, WOLF 1353924 ("Porcelain damage in upper oven. Upper cavity already replaced once.").

[24]   *E.g.*, Ex. 9, Rinehart Tr. at 73:7-16; Ex. 8, Dietsch Tr. at 110-111.

[25]   *E.g.*, Ex. 15, Hammond Ex. 66 at WOLF 0105386-87; Ex. 16, Posorske Ex. 2 at WOLF 0137825; Ex. 17, Posorske Ex. 4 at WOLF 0123748.

[26]   *E.g.*, Ex. 14, WOLF 1353924 ("Porcelain damage in upper oven.  Upper cavity already replaced once."); *see also* Ex. 18, WOLF 1353948; Ex. 19, WOLF0029737; Ex. 20, WOLF 1354055.

[27]   *See, e.g.*, ECF No. 35, Memorandum and Order at 18 ("it is unclear whether chipped porcelain contaminates food cooked in the oven," therefore "[t]he durability of the porcelain may affect the functionality of the oven" because porcelain pieces may fly onto the food . . . [such that] the range may be incapable of being cleaned, thus preventing the Kails from using it."); *see also* Garfinkle Tr. at 139:14-140:4; Ex. 21 at WOLF 1353401 ("I don't believe glass shards and particles that can become airborne due to the convection fans that are continuously operating inside the oven make this a problem that is only cosmetic.").

[28]   Ex. 15, Hammond Ex. 66 at WOLF 0105386 ("Many Customers complaining about this being unacceptable. Many state that glass like shards end up in the food."); Ex. 22, WOLF 0105954 at 70 ("the place where the porcelain is coming off in shards bothers me.  There was a blue piece of it on top of a loaf of bread I took out of the oven this week, which seems to indicate the fans are blowing it around.  That's easy to see on a loaf of bread, but may be missed in a casserole or in a batch of chicken pieces.  The way it felt in my finger it's not something I want to imagine in someone's mouth or throat.").

the Wolf Ovens' self-clean function (and risk additional damage) or stop using the function (and lose the benefit of the self-cleaning attribute entirely).[29]  Wolf has maintained that imperfections, while aesthetically displeasing, do not render the Wolf Ovens unsafe to use.[30]  But testimony confirms that Wolf's customers are not convinced that the shards exhibited from the imperfections are safe and, instead, stated a preference or need to cover all food cooked in the Wolf Ovens to ensure it is not contaminated.[31]

###   D.      Wolf Is, and Has Been, Aware that the Blue Cavities Will Craze and Form Imperfections

Wolf knows that regular use of its ovens will lead to chipping, cracking or crazing of the oven cavities, and that it would be most perceptible on its Blue Cavities.  Customer complaints about this issue were escalated to senior Wolf executives, including the chief manufacturing engineer in charge of porcelain finishing, Mr. Rinehart, the head of Design Engineering, Terry Hoffmann, as well as directly to Wolf's President and Chief Executive Officer ("CEO"), James Bakke.[32]  Wolf knew that this was a genuine and considerable issue at least as early as 2010,[33] yet chose to continue selling Blue Ovens as a signature aesthetic and failed to warn consumers of the foreseeable crazing problem.  Internal documents evince that "porcelain damage" was a significant basis for customer complaints (*e.g.*, at times, the number one return reason code

---

[29]     Garfinkle Tr. at 138:3-140:4, 171:9-172:7; Sharp Tr. at 22:25-23:19.

[30]     Ex. 23, Posorske Ex. 1, WOLF 0002249 (referring to porcelain crazing as "harmless").

[31]     Sharp Tr. at 141:16-22; *see also* Ex. 21 at WOLF 1353401 ("It's a very egregious defect and now we are going to half [sic] to cook ***everything*** inside the oven with a cover on it for the rest of its lifespan.") (emphasis in original).

[32]     *E.g.*, Ex. 15, Hammond Ex. 66 at WOLF 0105386 (Wolf's Director of Reliability Engineering acknowledging that "[t]he Enamel cracking and peeling is a ***massive issue***" in Wolf's dual fuel and wall ovens and noting that "***Many Customers*** [were] complaining about this being unacceptable."); Ex. 24, Dietsch Ex. 4 at WOLF 0114498 (Senior Project Engineer stating that "[t]his type of porcelain damage can be cause [sic] by ***normal use***."; Wolf's chief porcelain expert exclaiming that "this is ***not abnormal porcelain damage*** to the oven floor."); Ex. 25, Rinehart Ex. 50 at WOLF 0105408 (Wolf's Senior Manufacturing Engineer in Charge of Finishing stating that "[t]his kind of damage is ***all too common*** . . ."); Ex. 26, WOLF 0109458-60 (dubbed, "Presidential Letters" by Wolf representatives).

[33]     *E.g.*, Ex. 15, Hammond Ex. 66 at WOLF 0105386.

tracked by Wolf's customer service team).[34]   Discovery obtained in this case includes several thousand ticket entries from Wolf's customer service database relating oven cavity imperfections, along with emails, photographs, etc., from complaining customers "linked" to the database that further support the widespread nature of the defective Wolf oven cavities.[35]

Notwithstanding the overall awareness within the Company, coupled with internal discussions (*e.g.*, requests by Mr. Rinehart) to improve efforts to identify the cause and execute remedial measures to eliminate the incidence of the blemishes,[36] Wolf did not undertake an investigation or conduct a study to determine the causes of the porcelain defect or remedy the issue.[37]   In fact, Wolf's own expert, Brian Sheldon, testified that, based on the work and assessment he was tasked to perform by Wolf's counsel in connection with this case, including personal visits to Wolf's production and assembly lines and discussions with Wolf employees, Wolf did not have a concrete explanation for why the Blue Cavities are prone to crazing or cracking, and did not perform a root cause analysis to gain an explanation.[38]

### E.   Dr. Garfinkle and Mr. Sharp's Experience with Wolf's Ovens Containing Porcelain Imperfections

#### 1.   Dr. Garfinkle's Experience

Dr. Garfinkle purchased his Wolf E Series double oven in May 2012 from Keiffer's

---

[34]   *See* Ex. 27, Pltfs' Ex. 35, WOLF 0105059.

[35]   *E.g.*, Ex. 28, Excerpts from Customer Service Database ("CS Excerpts"); Ex. 29, Stetson Tr. at 110:16-111:10; Ex. 30, WOLF 1353369 ("I am horrified to have found damage to the interior."); Ex. 21 at WOLF 1353401 (describing "very egregious defect" and referencing photograph of "several pieces of that glass porcelain" that are "sizeable"); Ex. 31, WOLF 1353394 (photograph of blue glass shards resulting from porcelain chipping).

[36]   *See* Ex. 32, Rinehart Ex. 53 at WOLF 0143201-02.

[37]   *See*, *e.g.*, Ex. 33, Hammond Tr. at 71:23-72:15, 76:15-77:2; Ex. 34, Pltfs' Ex. 32A (refusing to investigate severe porcelain damage); Ex. 32, Pltfs' Ex. 53, WOLF 0143201-04 (demonstrating an inability to categorize porcelain damage to influence design changes); Ex. 9, Rinehart Tr. at 90:16-8 (having protocol for photographing defects "would help clarify and streamline the process of determining what actually happened to a customer's oven"), 94:9-95:23 (detailing Mr. Rinehart's inability to get ovens brought back for inspection despite requests or to get useful knowledge or information from customer service representatives about customer use regarding cracked oven cavities); Ex. 29, Stetson Tr. at 83:6-11 (failing to identify any instance where a field service manager inspected an oven due to porcelain damage).

[38]   *E.g.*, Ex. 35, Sheldon Tr. at 275:3-6; 161:22-162:23.

Appliance, and it was delivered the following month.  Garfinkle Cpt. at ¶58.  Prior to purchasing his oven, Dr. Garfinkle visited two separate Wolf dealers and read brochures about Wolf's ovens from each.   Garfinkle Tr. at 55:3-16.   Dr. Garfinkle recalled specific statements in those brochures about the "blue enamel interior" of Wolf ovens and Wolf offering one of the best warranties in the business.  *Id*. at 55:19-56:4, 57:23-58:3; GSMF ¶¶10-11, 17.[39]  Dr. Garfinkle was also exposed to various other in-store statements, representations and/or advertisements about Wolf ovens – in print, and from representatives at Wolf's exclusive authorized retailers. GSMF ¶¶9, 12; Garfinkle Tr. at 58:25-59:12.

Additionally, Dr. Garfinkle maintained communications with Keiffer's via in-person visits, email and telephone, beginning with the purchase of the first oven for his home he purchased in 1997 and continuing through the purchase of his Wolf oven (and the purchase of ***all*** the appliances for his kitchen renovation) and subsequent problems with the porcelain cavity chipping.[40]  And he had repeated telephonic and email communications with Wolf's customer service team and its hand-selected *authorized servicers*.[41]

Dr. Garfinkle testified to several reasons for purchasing his Wolf oven, including the general reputation of Wolf, the high-end nature of Wolf ovens and, importantly, the aesthetics of Wolf ovens, including the blue interior.  GSMF ¶17 (describing Wolf as a "gourmet line" and as one of the "better lines," in terms of aesthetics, that the dealer carried; and explaining that "aesthetics" and the "blue interior" were "big item[s]" for him in his purchasing decision); *see also* Garfinkle Tr. at 58:5-9 (describing the blue interior as "very striking"), 64:18-22 (agreeing that the "different aesthetic style" of the Wolf oven was a "big factor" in his purchase), 81:22-

---

[39]    All references to "GSMF ¶__" refer to Plaintiff Barry Garfinkle's Response to Defendant Wolf Appliance, Inc.'s Statement of Material Facts as to Which There is No Genuine Issue, ECF No. 66-3.

[40]    *See id.* at 21:7-13; 47:14-24; 55:3-16; 58:25-60:6; 60:20-61:4; 78:5-16; 85:17-20; 93:5-20; 115:10-19; 119:19-120:8; 144:2-11; 148:6-20; 163:17-164:11; 180:9-18.

[41]    *Id.* at 18:21-20:4; 97:8-99:11; 123:16-21; 153:10-155:17; 159:10-15.

82:3 (discussing the importance of the "quality of the unit").  Indeed, Dr. Garfinkle testified that he would not have purchased his Wolf oven if it did not contain the blue porcelain interior. Garfinkle Tr. at 84:22-85:4.  Given the importance of quality and aesthetics to Dr. Garfinkle, he also testified that he expected the interior of his oven to last for the "life of the appliance."  *Id*. at 63:9-13 ("when it comes to . . . the interior, my expectation is that that's going to be there and not going to change.").

In 2013, Dr. Garfinkle ran the self-clean function and observed that the blue porcelain was cracking and splintering off in one of the two, top-bottom, oven cavities.  GSMF ¶18; Garfinkle Cpt. at ¶59.  He then noticed the same problem in the other oven cavity.  Garfinkle Tr. at 104:5-106:13.  The chipping, cracking and/or crazing manifested at the indentations on the right and/or left sides of the floors of both oven cavities (at or on the bevel corners).  *Id*.  Plaintiff complained to his Wolf dealer and Wolf, and was told the porcelain issue was a one-off issue and would not affect the performance of the oven.  Garfinkle Tr. at 180:9-13 ("[i]n discussions with either people selling Wolf or speaking with people at Wolf, Misty as an example, it was always portrayed as a one off."); *see also* Garfinkle Cpt. at ¶60.

Wolf ultimately agreed to replace Dr. Garfinkle's entire double oven, and Dr. Garfinkle had a new E Series double oven installed in January 2014.  Garfinkle Cpt. at ¶61.  In approximately November 2014, plaintiff experienced the same problems with the replacement double oven – meaning, the porcelain interior began to chip, crack and/or craze on the sides of his oven cavities.  *Id*.  Plaintiff again reported the damage to the blue porcelain cavities of his replacement oven, and Wolf agreed to replace his first replacement Wolf double oven.  *Id*. at ¶62.  In approximately February 2015, a Wolf factory certified servicer removed plaintiff's first replacement oven and installed the second replacement E Series Wolf oven – plaintiff's ***third***

- 9 -

Wolf oven. *Id.* at ¶63. After approximately a year, like the ovens before it, plaintiff's second replacement oven too began to chip and/or crack through regular use of the oven. Both oven cavities – top and bottom – again manifested chipping, cracking and/or crazing of the blue porcelain enamel coating. *Id.*

### 2. Mr. Sharp's Experience

Mr. Sharp purchased his Wolf E Series double oven in 2014, and it was delivered the following month. Sharp Cpt. at ¶20. Prior to purchasing his oven, Mr. Sharp visited "a variety of different" appliance stores, including a Wolf exclusive authorized retailer, and he was "absolutely intrigued by the appearance of the Wolf Oven," including "most especially the color of the blue interior of the oven." Sharp Tr. at 46:9-13. He stated that the Wolf material he reviewed did not contain any information about potential porcelain problems. SSMF ¶4.[42] He also had conversations with salespersons at the Wolf authorized dealer where he bought his oven. Sharp Tr. at 50:6-24. Additionally, Mr. Sharp recalls that he may have researched Wolf's line of products on the internet. *Id.* at 134:12-15.

Like Dr. Garfinkle, Mr. Sharp testified to several reasons for purchasing his Wolf oven, including the reputation of Wolf, the high-end nature of Wolf ovens and, importantly, the aesthetics of Wolf ovens, including the blue interior. PSMF ¶¶9, 17 (explaining that Wolf had a "very good reputation" and "a reputation of being top of the line," that he liked the design, and "especially liked the interior" of the ovens, that Wolf's blue interior was a "determining factor" among the ovens he was considering and that he paid for a "top-of-the-line premium product" that he expected "to operate as it was presented"). Mr. Sharp testified that he would not have purchased his Wolf oven if it did not contain the blue porcelain interior. Sharp Tr. at 112:5-10.

---

[42]   All references to "SSMF ¶__" refer to Plaintiff Frederick I. Sharp's Response to Defendant Wolf Appliance, Inc.'s Statement of Material Facts as to Which There is No Genuine Issue, filed herewith.

In late 2017, plaintiff followed the instructions in the Use and Care Guide, ran the self-clean function and subsequently observed extensive damage, including chipping, cracking and/or crazing of the blue porcelain oven floor (including the corner bevel).  SSMF ¶6 and 7; Sharp Cpt. at ¶62; Sharp Tr. at 60:14-22, 82:13-19.  Mr. Sharp contacted the Wolf authorized dealer where he purchased his oven about the damage; he referred Mr. Sharp to a factory certified Wolf service company.   A representative of the service company acknowledged to plaintiff that plaintiff was not the first person to call about the chipping, cracking and/or crazing plaintiff described.  Sharp Cpt. at ¶63.  The representative also told plaintiff nothing could be done other than replace the oven cavity, and instructed plaintiff to clean the second oven and report back if he observed similar damage.  SSMF ¶8; Sharp Cpt. at ¶64; Sharp Tr. at 83:16-84:2.

Plaintiff initiated the self-clean function with his second oven and observed damage similar to what he observed after operating the self-clean function on the first oven.  Sharp Cpt. at ¶65; Sharp Tr. at 91:22-92:6.  Plaintiff contacted the service company again and was told that it had informed Wolf of his situation.  The representative told plaintiff that Wolf: (1) would not do anything about the damage in either oven; (2) said the damage was purely cosmetic and that the ovens would function with no problems; and (3) would do nothing to repair or share in the cost of repairs.  SSMF ¶8; Sharp Cpt. at ¶65; Sharp Tr. at 92:7-13.

### 3.      Dr. Garfinkle and Mr. Sharp Were Diligent in Filing Suit When They Discovered Sufficient Facts Giving Rise to Their Claims

Wolf sought to convince Dr. Garfinkle and, separately, Mr. Sharp that the imperfections they observed in their respective ovens would not affect the functioning of their ovens. Likewise, Wolf sought to convince Dr. Garfinkle that the imperfections were anomalies – suggesting, that a replacement oven would not have a repeat performance in the form of manifested crazing in the porcelain oven cavities.  When the appearance of the imperfections did,

in fact, repeat in subsequent oven cavities, Wolf continued to conceal the fact that the imperfections would likely reoccur, thus further delaying Dr. Garfinkle and Mr. Sharp from seeking redress.  Dr. Garfinkle and Mr. Sharp filed suit only after they recognized that: (1) Wolf would not take ownership of its false advertising of the Wolf Ovens; (2) Wolf would continue to sell its ovens without warning that the imperfections were likely to reoccur; (3) Wolf would not or could not provide them with an adequate remedy; and (4) the problems they experienced with their porcelain oven interiors were similar, if not identical, to those many other consumers had already experienced.

## III.   ARGUMENT

### A.   Dr. Garfinkle and Mr. Sharp's Claims Are Tolled by the Pendency of the Existing Putative Class Action[43]

As of June 16, 2015, statute of limitations defenses against plaintiffs Garfinkle and Sharp were tolled.  As exemplified by the chart below, *even accepting* defendant's version of the applicable statute of limitations period, each one of plaintiffs Garfinkle and Sharp's claims were timely:

**Fig. 1 Chart of Applicable Statutes of Limitations**

| Plaintiff | Cause of Action | SoL Accrual Date | Applicable SoL | Time Elapsed (before tolling began) |
|---|---|---|---|---|
| *Barry Garfinkle* | | | | |
| | Breach of Express Warranty (written & affirmations/promises) | June 12, 2012 | 4 years | 3 years |
| | Breach of Implied Warranty of Merchantability | June 12, 2012 | 4 years | 3 years |
| | Magnuson Moss Warranty Act | June 12, 2012 | 4 years | 3 years |
| *Frederick Sharp* | | | | |
| | GBL §349 | July 2014 | 3 years | 11 months |
| | Unjust Enrichment (monetary damages) | July 2014 | 3 years | 11 months |

---

[43]   *Kail v. Wolf Appliance, Inc.*, Civ. No. 2:15-cv-03513-JS-GRB, was commenced on June 16, 2015.

Plaintiffs' claims are tolled, unaffected by the decision in *China Agritech v. Resh*, 138 S. Ct. 1800 (2018) (discussed below), because class certification remains undecided here[44] and the State law claims are tolled, whether from the same State or another State.[45]

### 1. All Claims Are Timely as the Applicable Statutes of Limitations Were Extended by the *Kail* Action

Defendant contends that Garfinkle's breach of warranty claims are untimely because they are barred by the Supreme Court's recent holding in *China Agritech*. Def. Mem. at 6. Wolf's argument misstates the holding and reach of *China Agritech*, which: (1) only applies to successive complaints brought ***after*** the ***denial*** of class certification; and (2) is inapplicable to the state law claims at issue here. *See, e.g.*, *supra*, Fig. 1, §III.A. at 12.

### a. The No-Tolling Finding in *China Agritech* Is Limited to Class Complaints Brought *After* the Denial of Class Certification

In *China Agritech*, plaintiff's complaint was tolled after class certification had already been denied twice.[46] The decision clarified *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), which established that the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. *China Agritech*, 138 S. Ct. at 1801. In the Court's own words:

> The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no. *American Pipe* tolls the statute of

---

[44] *See Chavez v. Occidental Chem. Corp.,* 300 F. Supp. 3d. 517, 534 (S.D.N.Y. 2018); *Hart v. BHH, LLC*, No. 15CV4804, 2018 WL 5729294, at *2 (S.D.N.Y. Nov. 2, 2018) ("*BHH I*"); *see also Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17 Civ. 1388 (KPF), 2018 W.L. 1382105 (S.D.N.Y. Mar. 16, 2018) (tolling extended up to the denial of class status); *cf. Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 119 (2d Cir. 2013) (tolling unavailable only after the a court denied class status).

[45] *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2017 WL 280821, at *9 (S.D.N.Y. Jan. 19, 2017) ("exact claims need not have been brought in the prior suit; it is sufficient that they arise from the same basic facts and rely on the same basic legal theories").

[46] *China Agritech*, 138 S. Ct. at 1804 ("the question presented in the case now before us: **Upon denial of class certification**, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?") (emphasis added).

limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual 2claims *if the class fails*. But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.

138 S. Ct. at 1804 (emphasis added).

Earlier this month, a New York District Court confirmed that the *China Agritech* holding should not be construed to deny class tolling *before* a denial of class certification. *Hart v. BHH, LLC*, No. 15-CV-4804, 2018 WL 5729294, at *2 (S.D.N.Y. Nov. 2, 2018) ("*BHH II*") ("the China Agritech decision was that plaintiffs there brought the action *after* the denial of class certification in the prior action") (emphasis in original). In *BHH I*, defendant moved to reconsider Judge Pauley's decision[47] that the successive class claims of breach of express warranty and violation of California consumer protection statutes of two California residents was tolled during the pendency of a first class action in Ohio. The basis for reconsideration was premised on *China Agritech*, and BHH argued that the breach of express warranty and consumer protection class claims of the later filed California plaintiffs could not be tolled by the pendency of the Ohio action. *BHH II*, 2018 WL 5729294, at *1. Using this flawed logic, BHH maintained that, for statute of limitations purposes, the commencement date of the action should be as of the filing of the complaint filed by the second set of plaintiffs. *Id.* Judge Pauley disagreed and held that the action should be deemed commenced when the first, similar action was filed[48] and, even after reconsideration and analysis of *China Agritech*, maintained that same holding.[49]

---

[47]   *BHH I*, 323 F. Supp. 3d. at 560.

[48]   *BHH I*, 323 F. Supp. 3d at 566 (relying on *Chavez v. Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 530 (S.D.N.Y. 2018), *Famular v. Whirlpool Corp.*, No. 16-CV-944(JB), 2017 WL 2470844, at *9 (S.D.N.Y. June 7, 2017), and *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262-NRB, 2015 WL 6243526, at *145-*46 (S.D.N.Y. Oct. 20, 2015).

[49]   *BHH II*, 2018 WL 5729294, at *3 ("[defendant's] interpretation of *China Agritech* would lead to an absurd result"); *cf. Korwek v. Hunt,* 827 F.2d 874, 877-78 (2d Cir. 1987) ("we hold that the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification"); *Giovaniello*, 726 F.3d at 116 ("We now take this opportunity to join our sister circuits and hold that *American Pipe* tolling does not extend beyond the denial of class

Defendant's reliance on *Korwek v. Hunt* does not support its argument. Defendant cites a portion of *Korwek* (in which the Court analyzed decisions from the Fifth Circuit, Texas, Minnesota, and Alabama) and claims that the Court held that the "*American Pipe* tolling rule does not apply to permit putative class members to file a subsequent class action." *See* Def. Mem. at 6; *Korwek*, 827 F.2d at 878. But a straight reading of the *Korwek* decision provides the genuine and complete conclusion: "In sum, we hold that the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action ***following a definitive determination of the inappropriateness of class certification***. *Korwek,* 827 F.2d at 879 (emphasis added).

*China Agritech* does not, therefore, serve to bar individual or class tolling here. Plaintiffs' motion for class certification is not due until, at the latest, December 12, 2018, much less decided or ***denied***. Accordingly, this Court can start and end its analysis of defendant's statute of limitations arguments right here. They should all be denied. Plaintiff Garfinkle's claims, as well as plaintiff Sharp's claims, were ***all*** tolled and ***all*** remain viable.

### b.    State Law Claims Are Tolled; *China Agritech* Does Not Change That Benefit

Defendant maintains that, under *China Agritech* and *American Pipe*, no tolling doctrines apply to plaintiff Garfinkle's breach of warranty claims. Def. Mem. at 6. The warranty claims (along with plaintiffs' other claims), however, are rooted in State law and, therefore, are unaffected by those holdings. *China Agritech* and *American Pipe* are limited to claims arising under federal law and thus implicating federal question jurisdiction. *See Casey v. Merck & Co.,* 653 F.3d 95, 100-101 (2d Cir. 2011); *Chavez,* 300 F. Supp. 3d. at 530 (noting "states remain free to adopt alternative rules as to whether the pendency of a state-law class action, whether filed

---

status.").

- 15 -

within or without the state, tolls the state's statutes of limitation"); *see, e.g.*, *McLaughlin on Class Actions §3:15* (14th ed.) ("*American Pipe* did not itself announce any tolling rule applicable to state law claims.").

New York District Courts will toll State law causes of action during the pendency of the first action and, in certain instances, have done so even after the denial of class certification.  In *Chavez,* for example, plaintiffs from countries including Costa Rica, Ecuador, and Panama filed a class action in Texas State Court against a number of chemical manufacturers.   Class certification in the state court action was denied on June 3, 2010.  *Chavez*, 300 F. Supp. 3d at 526.  A new set of plaintiffs filed a similar action a year later, in June 2011, and defendants filed motion for judgement on the pleadings on the grounds that the applicable statute of limitations had run and tolling could no longer be used as a tool for this new set of plaintiffs.  *Id.* at 527.  The Court in *Chavez* denied defendants' motion, determined that cross jurisdictional tolling applied to extend the applicable statute of limitations, reasoned that successive class action alleged the same underlying misconduct, and noted the decision did not conflict with tolling principles.  *See Chavez*, 300 F. Supp. 3d at 532.

In *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *7, the Court analyzed whether a New York plaintiff's claims – for consumer fraud, unjust enrichment, and breach of warranty – were tolled by the filing of an earlier New Jersey class action alleging the same underlying misconduct by defendant.  Cross jurisdictional tolling ultimately applied to extend the applicable statute of limitations and the Court stated that "unlike *American Pipe* tolling, which applies only to cases with federal question jurisdiction over federal claims, cross-jurisdictional tolling is 'a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the

- 16 -

filing of a class action in another jurisdiction.'" *Id.* at 7[50] (quoting *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 515 (S.D.N.Y. 2001)); *see also In re LIBOR-Based,* 2015 WL 6243526, at *147-*148 (recognizing the application of cross jurisdictional class action tolling for state law claims).

Here, the pendency of the *Kail* action tolled the class and individual claims brought by plaintiffs Garfinkle and Sharp.   The three cases involve the same underlying facts and wrongdoing on the part of defendant.  As a result, the applicable statutes of limitation for each of their respective claims have been extended and were timely filed.

**B.     Dr. Garfinkle's Warranty Claims Are Not Barred on Statute of Limitations Grounds**

**1.     The Future Performance Exception Applies to Dr. Garfinkle's Express *and* Implied Warranty Claims**

Under Pennsylvania law, where a "warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance," the cause of action does not accrue until "the breach is or should have been discovered."  13 Pa. Stat. and Cons. Stat. Ann. §2725.[51]  The application of the future performance exception, as an extension to applicable statutes of limitation for both express and implied warranty claims, must be taken in context.  Here, a purchaser of a Wolf Oven cannot immediately determine if the warranty of the products' durability is satisfactory.  As alleged, and as confirmed by record evidence, the manifestation of the crazing or imperfections at issue in this litigation cannot be immediately identified by consumers.  The inevitable crazing occurs over time and, based on testimony by Wolf's witnesses and as confirmed by user experience, will occur after a period of regular and

---

[50]   The Court further held that it would be "wrong and disingenuous" to only toll the identical claims shared by the two complaints because defendant was on notice of claims surrounding the underlying misconduct from the first complaint. *Id.* at 9.

[51]   The statute of limitations in contracts for the sale of goods in Pennsylvania will typically accrue, subject to any exceptions, on the date the seller tenders delivery of the goods. *Id.*

ordinary use of the Wolf Ovens – typically when an oven is exposed to high heat; *e.g.*, the running of a self-clean cycle, which will cause an oven to reach a temperature of 850 degrees.[52] In fact, according to Wolf, the crazing may not be visibly apparent to a consumer until the oven cavity is exposed to multiple uses or rounds of high heat.[53]

The tender of delivery of Dr. Garfinkle's original oven is, therefore, an untenable date to use to start the accrual of Dr. Garfinkle's warranty claims. *See Antz v. GAF Materials Corp.*, 719 A.2d 758, 760 (Pa. Super. Ct. 1998) (finding complaint timely "if the discovery of the defect occurred when either [plaintiff] initially **noticed** the defects or [defendant] **acknowledged** the defects . . .") (emphasis added); *cf. Cty. of Mercer v. UniLect Corp.*, 612 F. Supp. 2d 638, 648 (W.D. Pa. 2009) (granting summary judgment for defendant as to plaintiff's express warranty claim where there was "no evidence [of] . . . any latent defects upon delivery."). While Wolf maintains that implied warranties of merchantability cannot explicitly extend to future performance as a matter of law, "[w]hether an implied warranty can be 'explicitly' extended forward has not been squarely decided by the Supreme Court of Pennsylvania." *See McPhee v. DePuy Orthopedics, Inc.*, 989 F. Supp. 2d 451, 462 (W.D. Pa. 2012). It has, however, left the door open for implied warranty claims to extend to future performance. *See Cucchi v. Rollins Protective Servs. Co.*, 524 Pa. 514, 574 (1990) (explaining that although "the term 'explicit' might seem to eliminate the possibility of implied prospective warranties, the better view is that warranties explicitly extending to future performance may be both express and implied by content and circumstances sufficiently specific as to unequivocally refer to future performance").

For further context, Wolf ensures that its ovens are "built with superior-quality materials" and "are designed to last *a minimum of 20 years* under far heavier use than any home cook will

---

[52]   Ex. 9, Rinehart Tr. at 74:23-75:2122:7-15; *see also, e.g.*, Garfinkle Cpt. at ¶¶5, 21.

[53]   Ex. 35, Sheldon Tr. at 219:9-22.

ever subject them to."[54]  This message is conveyed uniformly to all its prospective purchasers and is a source of distinction for Wolf.[55]  The minimum 20-year guarantee is used to induce sales and convince consumers of the Ovens' durability.  According to Wolf, the statement and warranty as to the durability of the Ovens extends to functionality and aesthetics alike.[56]  Wolf, clearly, intended for express representations to extend beyond delivery or tender of its Ovens; not to end the moment its purchasers take possession.  *See Antz*, 719 A.2d at 760 (express warranty providing a 30-year limited warranty "explicitly extends to future performance of the shingles up to thirty years"); *cf. Gunsalus v. Celotex Corp*., 674 F. Supp. 1149, 1155 (E.D. Pa. 1987) (discovery rule inapplicable to breach of warranty claim where advertising statements "do not promise anything but smoker satisfaction that could be evaluated by the user immediately").[57]  With the application of future performance exception, the applicable statute of limitation began as recently as February 2016 (the latest date when Dr. Garfinkle's second replacement oven could have manifested imperfections) or, at the earliest, shortly before his first replacement oven was installed in January 2014.  Either way, Dr. Garfinkle's complaint was timely filed.

### 2.   The Statute of Limitations for Dr. Garfinkle's Implied Warranty Claim Began with the Delivery of Dr. Garfinkle's February 2015 Oven

The relevant date this Court must consider for the accrual of Dr. Garfinkle's implied warranty claim is February 2015 – the date that his last replacement oven was delivered.  Wolf

---

[54]   Garfinkle Cpt. at ¶30 (emphasis added); *see also* Ex. 8, Dietsch Tr. at 52:15-21.

[55]   *See id*. ("As part of its 'unflinching quality assurance program,' defendant claims that 'every Wolf will have the performance and longevity our discerning customers expect.'").

[56]   For example, Wolf witness Christopher Dietsch, a reliability engineer, testified that "our customers expect perfection, so anything that they don't agree with is an imperfection."  Ex. 8, Dietsch Tr. at 77:21-23; *see also id*. at 95:4-20.

[57]   The argument Wolf strives to use to evade responsibility here (on statute of limitations grounds) runs contrary to the consumer-friendly and warranted language it promotes to consumers and maintains is part of its high-end company image.

argues that Dr. Garfinkle's February 2015 replacement oven did not create an implied warranty because the replacement oven was not part of a contract for the sale of goods, *see* ECF No. 67-1 at 3-4, and, therefore, any implied warranty claim is barred by a four-year statute of limitations. *Id*. Wolf's argument, however, echoes an argument it has tried and failed, and appears to ignore this Court's August 8, 2017 Memorandum & Order, which rejected this argument in connection with Wolf's motion to summarily dismiss plaintiffs Kails' implied warranty claim. *See* ECF No. 35 at 13-16.[58]

The Court rejected this argument and determined that because there was "a genuine issue of material fact about whether the Kails' warranty had expired" – a warranty that covers "any cosmetic-related damages" – the warranty did not lapse and the 2014 range was more akin to a sale than a gift. *Id*. at 14-16; *cf. Neuhoff v. Marvin Lumber & Cedar Co*., 370 F.3d 197, 200-01, 205 (1st Cir. 2004) (finding replacement windows provided eight years after the original purchase, separate and apart from the original contract and warranty, were a gift with which an implied warranty did not attach). Thus, the Court found that an implied warranty attached to the 2014 replacement range, ***even though*** there was some doubt as to whether the warranty period had lapsed. Here, there is no question about whether Dr. Garfinkle's warranty lapsed (Wolf concedes this point), so the facts support an ***even stronger*** case that an implied warranty attached to Dr. Garfinkle's 2015 replacement oven.

Dr. Garfinkle purchased his oven in May 2012 and it was installed in June 2012. Garfinkle Cpt. at ¶58. Dr. Garfinkle's oven was replaced in January 2014, within the two-year warranty period. *Id*. at ¶61. The January 2014 replacement oven came with Wolf's standard

---

[58] As the Court explained in the context of New York law, the implied warranty of merchantability "arises in a contract of sale, which 'includes both a present sale of goods and a contract to sell goods at a future time.'" ECF No. 35 at 13. Wolf admits that "Pennsylvania law is identical." ECF No. 67-1 at 3.

warranty that accompanies the purchase of any new Wolf oven.  *See* ECF No. 24-12 at ¶7.[59]  The

2014 oven, in turn, was replaced in February 2015, also within the two-year warranty period of

Dr. Garfinkle's first replacement oven.  Garfinkle Cpt. at ¶63.  The February 2015 oven, like the

two ovens before it, came with a two-year warranty covering porcelain defects.  *See* ECF No. 24-

12 at ¶7; ECF No. 66-2 at ¶¶32-33.   These facts are undisputed.   Because Wolf's two-year

warranty period did not lapse when his 2015 oven was delivered (*i.e.*, the warranty renewed with

each replacement), the 2015 replacement oven is "more akin to a sale," *Neuhoff*, 370 F.3d at 205,

with an implied warranty attached to the transaction.   *See* ECF No. 35 at 14-16.   Now, Dr.

Garfinkle filed his complaint in June 2017 – less than three years after the tender of delivery of

the February 2015 oven.  As a result, his breach of implied warranty claim is timely as it was

brought well within the four-year statute of limitations.

### 3.     Wolf Does Not Challenge Dr. Garfinkle's Express Warranty Claim Based on Wolf's Written Warranty

Wolf broadly argues that Dr. Garfinkle's breach of express warranty is barred by the

four-year statute of limitations.  Def. Mem at 3-7.  The focus of the argument relates to the

express warranty formed by Wolf's advertising statements and representation; not, specifically,

in connection with any breach of express warranty based on Wolf's written warranty.   That

written warranty claim is, in effect, uncontested.  The written warranty claim is based on Wolf's

obligation to "repair or replace . . . any part of the product that proves to be defective in materials

or workmanship" for a period of two years after the ovens are installed.  ECF No. 24-14.  Wolf's

customers receives a standard warranty with the purchase of a new Wolf oven (ECF No. 28-16,

Stetson Tr. at 142:3-4), which is renewed or extended with each replacement oven that customers

receive.  ECF No. 24-12 at ¶7.  Wolf acknowledges that its standard warranty includes coverage

---

[59]     *See also* ECF No. 66-2 at ¶¶32-33 (noting that Wolf's two-year warranty covered Dr. Garfinkle's 2012 oven, along with his 2014 and 2015 replacement ovens).

for porcelain issues relating to chipping, cracking or crazing of Wolf's blue porcelain oven cavities.  ECF No. 28-16, Stetson Tr. at 133:15-21, 136:14-21.  Here, Dr. Garfinkle received a written warranty with the purchase of his oven in 2012, and warranty extensions with his 2014 and 2015 replacement ovens.  Garfinkle Cpt. at ¶¶58-64.

### C.    Equitable Tolling Applies to Dr. Garfinkle's Warranty Claims, and Mr. Sharp's GBL §349 and Unjust Enrichment Claims

Equitable tolling serves to extend statutes of limitation "where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action."  *Argabright v. Rheem Mfg. Co*., 201 F. Supp. 3d 578, 612 (D.N.J. 2016) (discussing New York law).[60]  To benefit from equitable tolling, Dr. Garfinkle and Mr. Sharp need only demonstrate that they were "diligent in commencing the action 'within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.'"  *Id*. (citing *Marincovich v. Dunes Hotels & Casinos, Inc.*, 41 A.D.3d 1006, 1010, 839 N.Y.S.2d 553 (2007)).

Here, defendant actively concealed (and still conceals) the fact that the Wolf Ovens are prone to manifest imperfections in the Blue Cavities in the form of chipping, cracking and/or crazing and that the imperfections would appear through regular and ordinary use of the Wolf Ovens.  Through discovery, plaintiffs have learned that Wolf was aware of the manifestation of the imperfections;[61] that the imperfections would predictably and unavoidably occur;[62] that Wolf's senior executives had internal discussions about addressing the pervasiveness of the

---

[60]    *See also Amodeo v. Ryan Homes, Inc*., 407 Pa. Super. 448, 455, 595 A.2d 1232, 1236 (1991) (tolling statute of limitations where repairs were attempted; representations were made that the repairs would cure the defects, and the plaintiff relied upon the representations; *Nelson v. Nissan N. Am., Inc*., 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (declining to make determination of timeliness of implied warranty of merchantability claim, despite four-year "tender or sale" rule in Pennsylvania, because Pennsylvania courts have recognized equitable tolling).

[61]    *E.g*., Ex. 28, CS Excerpts (sampling of customer service records evidencing repeated porcelain cavity chipping, cracking and//or crazing); Ex 13, Rinehart Ex. 54 at WOLF 0115092 ("There is a customer who is on her 4th oven."); *see also* Ex. 14, WOLF 1353924 ("Porcelain damage in upper oven.  Upper cavity already replaced once.").

[62]    *E.g*., Ex. 9, Rinehart Tr. at 73:7-16; Ex. 8, Dietsch Tr. at 110-111.

occurrences;[63] ***but***, that Wolf did not disclose that imperfections in the porcelain would inevitably occur.

Moreover, Mr. Sharp was diligent in bringing suit after he discovered the repeated imperfections in his Wolf oven cavities. Mr. Sharp purchased his Wolf oven in mid-2014, but was unaware of the imperfections in the porcelain oven cavities until after they manifested in late November 2017, in connection with or following the completion of a self-clean cycle in both ovens. *See* Sharp Cpt. at ¶62. His inability to recognize Wolf's warranty breaches until that time was directly correlated to, as discussed above, Wolf's active concealment. But within one month of observing the crazing and then Wolf's stated decision not to repair or replace Mr. Sharp's oven, Mr. Sharp retained counsel,[64] and filed his complaint approximately one week later. *See* Sharp Cpt. Mr. Sharp could not have been more diligent in commencing suit after he discovered the facts giving rise to his claim. Thus, given Wolf's concealment and Mr. Sharp's diligence in commencing suit within a reasonable time after discovering his claim, Mr. Sharp's GBL §349 claim was equitably tolled until after his porcelain oven cavities manifested the imperfections. Mr. Sharp's claim was, therefore, filed well within the 3-year statute of limitations.[65]

Dr. Garfinkle's breach of warranty claims are, comparably, equitably tolled. Wolf's active concealment, coupled with Dr. Garfinkle's diligence in bringing his action within a reasonable time after discovering his claims, are grounds for equitable tolling. *See*, *e.g.*, *In re*

---

[63]   *E.g.*, Ex. 15, Hammond Ex. 66 at WOLF 0105386-87; Ex. 24, Dietsch Ex. 4 at WOLF 0114498; Ex. 25, Rinehart Ex. 50 at WOLF 0105408; Ex. 26 at WOLF 0109458-60.

[64]   *See* Ex. 36 at SHARP0000006 (February 13, 2018 email to Wolf authorized servicer that the porcelain imperfection manifested in second oven cavity); Ex. 37 at SHARP0000016-18 (retention agreement dated March 14, 2018).

[65]   Defendant does not contest, and tacitly concedes, the application of equitable tolling as applied to Mr. Sharp's GBL §349 claim. The extension of the statute of limitations for his GBL §349 claim is, regardless, supported. *See, e.g.*, *Argabright*, 201 F. Supp. 3d at 612-13 (GBL §349 claim equitably tolled); *see also Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 333 (E.D.N.Y. 2012); *Aiken v. Nixon*, 236 F. Supp. 2d 211, 240 (N.D.N.Y. 2002) (denying motion where factual disputes that underlie the question of whether any of these equitable doctrines should apply). Mr. Sharp's unjust enrichment claim seeking monetary damages was likewise equitably tolled and, in effect, timely.

*Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV03-4558(HAA), 2008 WL 4126264, at *18 (D.N.J. Sept. 2, 2008) (applying equitable tolling premised on fraudulent concealment to breach of warranty claims).[66] Dr. Garfinkle could not have discovered his claims until after he determined that the porcelain imperfections were not isolated (though reoccurring) incidents. Indeed, Dr. Garfinkle was specifically told that the porcelain imperfections that manifested in his first oven were a "one-off" issue before accepting a replacement of his entire double oven. *See* Garfinkle Cpt. at ¶¶60-61; Garfinkle Tr. at 180:9-13. Wolf further told Dr. Garfinkle that the porcelain issue would not affect the performance of his oven, and based on conversations with Wolf, he was convinced or made to believe the issue would not repeat. *See* Garfinkle Tr. at 180:9-13; Garfinkle Cpt. at ¶60. Therefore, Dr. Gafinkle did not discover the facts giving rise to his claims until, at the earliest shortly before his first replacement oven was installed in January 2014, Garfinkle Cpt. at ¶61, or at the latest February 2016, *see* Garfinkle Cpt. at ¶63, and his warranty claims were equitably tolled until that time.

To the extent this Court is inclined to reject this application of equitable tolling, there are questions of fact regarding whether his warranty claims were tolled under the repair doctrine, which will toll the statute of limitation where "'evidence reveals that repairs were attempted; representations were made that the repairs would cure the defects; and the plaintiff relied upon such representations.'" *Hrycay v. Monaco Coach Corp.*, C.A. No. 07-2605, 2008 WL 1869277, at *3 (E.D. Pa. Apr. 28, 2008) (internal quotations omitted) (noting that "'whether the statute of limitations is tolled under the repair doctrine is a question of fact.'"). Because Wolf attempted to

---

[66]     Wolf's reliance on *The Knit With v. Knitting Fever, Inc*., 625 F. App'x 27, 34 (3d Cir. 2015) is distinguishable. The Court in *The Knit With* acknowledged that 13 Pa. Stat. and Cons. Stat. Ann. §2725 explicitly provides that "'[t]his section does not alter the law on tolling of the statute of limitations. . . .'" *Id*.; *Cf In re Ford Motor*, 2008 WL 4126264, at *17 ("Plaintiffs' warranty claims are not time-barred if they allege proper grounds for equitable tolling"); *see also Mills v. Forestex Co*., 108 Cal. App. 4th 625, 642 (2003) (enforcing statute of limitations for breach of warranty claim "subject to tolling or estoppel"); *Simpson v. Widger*, 311 N.J. Super. 379, 390-91 (App. Div. 1998) ("[T]he presence of fraud may toll the running of the statute" for breach of warranty claims).

repair or replace Dr. Garfinkle's Wolf oven (on two occasions) and represented to Dr. Garfinkle that the manifestation of porcelain damage was a "one-off," and because Dr. Garfinkle relied on those representations in connection with Wolf's attempt to remedy the breach, the repair doctrine tolls Dr. Garfinkle's claims and they are timely under the four-year statute of limitations. By filing suit in June 2017, Dr. Garfinkle was diligent in bringing suit well within the statutory period.

## IV.   CONCLUSION

All claims have been tolled by the filing of the *Kail* action on June 16, 2015. The decision in *China Agritech* did not change that fact. To the extent the Court considers Wolf's secondary statutes of limitations arguments, those fall as well for the reasons stated herein. Accordingly, defendant's Motion to Strike Dr. Garfinkle and Mr. Sharp's class claims should be denied.[67]

DATED:  November 20, 2018

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
MARK S. REICH
VINCENT M. SERRA

*/s/ Mark S. Reich*

MARK S. REICH

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mreich@rgrdlaw.com
vserra@rgrdlaw.com

---

[67]   Dr. Garfinkle and Mr. Sharp respectfully request oral argument on Defendant's motion.

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such public filing to all counsel registered to receive such notice.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 20, 2018.



*/s/ Mark S. Reich*

MARK S. REICH