# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **IVAN and MELANIE KAIL,** *Individually and on Behalf of All Others Similarly Situated***,**<br><br>Plaintiffs,<br><br>v.<br><br>**WOLF APPLIANCE, INC.**<br><br>Defendant. | )<br>)<br>)<br>) Civil Action No. 2:15-cv-03513-JS-GRB<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **BARRY GARFINKLE,** *Individually and on Behalf of All Others Similarly Situated***,**<br><br>Plaintiff,<br><br>v.<br><br>**WOLF APPLIANCE, INC.**<br><br>Defendant. | )<br>)<br>)<br>) Civil Action No. 1:17-cv-03753 JS-GRB<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **FREDERICK SHARP,** *Individually and on Behalf of All Others Similarly Situated***,**<br><br>Plaintiff,<br><br>v.<br><br>**WOLF APPLIANCE, INC.**<br><br>Defendant. | )<br>)<br>)<br>) Civil Action No. 1:18-cv-01723 JS-GRB<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# WOLF APPLIANCE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

I.      WOLF AND ITS OVENS AND RANGES........................................................... 2

II.     PLAINTIFFS' CLAIMS AND WOLF'S PENDING MOTIONS .................... 3

ARGUMENT .................................................................................................................... 5

I.      TO PROTECT THE RIGHTS OF ABSENT CLASS MEMBERS, THE COURT
        SHOULD DECIDE ALL PENDING MOTIONS BEFORE ADDRESSING CLASS
        CERTIFICATION. ....................................................................................................... 5

II.     CLASS CERTIFICATION IS INAPPROPRIATE BECAUSE OF THE LACK OF
        COMMONALITY AND THE PREDOMINANCE OF INDIVIDUAL ISSUES............. 7

        A.      Rule 23 Standard ............................................................................... 7

        B.      None of Plaintiffs' Claims Include Common Issues Provable By Class-Wide
                Evidence, and Individualized Issues Predominate................................................ 7

                1.      There Is No Evidence Of A "Common Defect." ....................................... 8

                2.      Plaintiffs' Proposed Classes Improperly Include Purchasers Who Have No
                        Injury................................................................................................ 10

                3.      Plaintiffs Have Ignored The Need To Apply Differing State Laws. ........ 11

                4.      Individualized Issues Predominate Plaintiffs' False Advertising And
                        Misrepresentation Claims. ...................................................................... 11

                        a.      Breach of advertising warranties (Garfinkle). ............................ 13

                        b.      Negligent misrepresentation (Kails, Garfinkle)............................ 16

                        c.      Fraudulent concealment (Sharp). .................................................. 19

                        d.      Violations of the consumer protection statutes of New York
                                (Sharp) and Pennsylvania (Garfinkle). ......................................... 21

                5.      Individualized Issues Predominate Plaintiffs' Contract And Quasi-
                        Contract Claims. ...................................................................................... 24

i

a.     Breach of the Written Warranty (alleged by the Kails and Garfinkle, but not Sharp) ............................................................. 24

b.     Breach of the implied warranty of merchantability ..................... 27

c.     Unjust enrichment (Sharp only) ..................................................... 30

C.     The Class Action Is Not A Superior Method Of Addressing Individuals' Problems With Wolf Ovens, And Trial Of The Claims As A Class Action Would Be Unmanageable............................................................................................ 30

D.     The Named Plaintiffs' Claims Are Not Typical Of The Proposed Classes. ......... 32

E.     The Named Plaintiffs Do Not Adequately Represent The Proposed Classes....... 32

III.     DAMAGES ARE NOT PROVABLE ON A CLASS-WIDE BASIS. ............................ 33

IV.     PLAINTIFFS FAIL TO MEET THE 23(b)(2) CLASS REQUIREMENTS.................... 35

CONCLUSION ...................................................................................................................... 35

## **TABLE OF AUTHORITIES**

**Cases**

**Page(s)**

*Abraham v. Ocwen Loan Serv., LLC*,
  321 F.R.D. 125 (E.D. Pa. 2017) ............................................................21

*Ackerman v. Coca-Cola Co.*,
  No. 09 CV 395(DLI)(RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..........................18

*Allen v. Hyland's Inc.*,
  300 F.R.D. 643 (C.D. Cal. 2014) ...........................................................34

*Am. Honda Motor Co. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) ...............................................................8

*Aronson v. GreenMountain.com*,
  809 A.2d 399 (Pa. Super. 2002) ............................................................21

*In re Amla Litig.*,
  328 F.R.D. 127 (S.D.N.Y. 2018) ...........................................................34

*Anderson v. Bungee Int'l Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999) .......................................................13

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ...............................................................16

*Belfiore v. Procter & Gamble Co.*,
  311 F.R.D. 29 ..............................................................................22

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
  288 F.3d 1012 (7th Cir. 2002) .........................................................26, 31

*Broomfield v. Craft Brew All., Inc.*,
  No. 17-CV-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ...............................22

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ..............................................................16

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ......................................................26

*Cates v. Whirlpool Corp.*,
  No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) ...................................8

*Chang v. Fage USA Dairy Indus., Inc.*,
  No. 14-CV-3826 (MKB), 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ...........................17

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998) ...................................................................................28

*China Agritech v. Resh*,
    138 S. Ct. 1800 (2018) ..............................................................................................5

*Cole v. GMC*,
    484 F.3d 717 (5th Cir. 2007) ..................................................................................15

*Coleman v. Commonwealth Land Title Ins. Co.*,
    318 F.R.D. 275 (E.D. Pa. 2016) .............................................................................21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ....................................................................................................5

*Compaq Comp. v. Lapray*,
    135 S.W.3d 657 (Tex. 2004) ...................................................................................15

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984) ..................................................................................................5

*Danganan v. Guardian Prot. Servs.*,
    179 A.3d 9 (Pa. 2018) .............................................................................................21

*Debbs v. Chrysler Corp.*,
    810 A.2d 137 (Pa. Super. 2002) .............................................................................21

*DiLucido v. Terminix Int'l, Inc.*,
    676 A.2d 1237 (Pa. Super. 1996) ...........................................................................24

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. Feb. 24, 2014) .............................................................22

*Egan v. Telomerase Activation Sciences, Inc.*,
    127 A.D. 3d 653 (N.Y. App. Div. 2015) ...............................................................22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................................30

*Espenscheid v. DirectSat USA,LLC*,
    705 F.3d 770 (7th Cir. 2013) ..................................................................................31

*Falco v. Nissan N. Am. Inc.*,
    No. CV 13 00686DDP, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) ....................33

*Feinstein v. Firestone Tire and Rubber Co.*,
    535 F. Supp. 595 (S.D.N.Y. 1982) ........................................................................30

*Ferracane v. United States*,
  No. 02-cv-1037 (SLT), 2007 WL 316570 (E.D.N.Y. Jan. 30, 2007) ......................................29

*In re Ford Motor Co. Vehicle Paint Litig.*,
  182 F.R.D. 214 (E.D. La. 1998)............................................................................................19

*Frank v. DaimlerChrysler Corp.*,
  292 A.D.2d 118, 741 N.Y.S.2d 9 (1st Dep't 2002) ..............................................................11

*Gale v. IBM Corp.*,
  781 N.Y.S.2d 45 (2d Dep't 2004)..........................................................................................18

*Gardner v. Equifax Info. Servs.*, LLC,
  Civ. No. 06-3102 ADM/AJB, 2007 WL 2261688 (D. Minn. Aug. 6, 2007)..........................34

*Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  40 F.3d 63 (3d Cir. 1994)......................................................................................................24

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017) ..........................................................................................33

*Goleman v. York Int'l Corp.*,
  No. 11-1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ....................................................23

*Goodman v. PPG Indus., Inc.*,
  849 A.2d 1239 (Pa. Super. Ct. 2004) ....................................................................................25

*Gordon v. Ford Motor Co.*,
  260 A.D.2d 164, 687 N.Y.S.2d 369 (1999) ...........................................................................29

*Haag v. Hyundai Motor Am.*,
  294 F. Supp. 3d 102 (W.D.N.Y. 2018) ..................................................................................26

*Haley v. Kolbe & Kolbe Millwork Co.*,
  No. 14-CV-99-BBC, 2016 WL 1180203 (W.D. Wis. Mar. 25, 2016) .....................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................................7

*Insolia v. Philip Morris Inc.*,
  186 F.R.D. 535 (W.D. Wis. 1998) .........................................................................................31

*In re IPO Secs. Litig.*,
  471 F.3d 24 (2d Cir. 2006)......................................................................................................7

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
  183 F.R.D. 217 (W.D. Mich. 1998) .......................................................................................11

*Jackson v. Eddy's LI RV Ctr., Inc.*,
    845 F. Supp. 2d 523 (E.D.N.Y. 2012) ................................................................28

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001) ..............................................................................18

*Kaufman v. Sirius XM Radio, Inc.*,
    751 F. Supp. 2d 681 (S.D.N.Y. 2010) ...............................................................21

*Khoday v. Symantec Corp.*,
    No. CIV. 11-180 JRT/TNL, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) ..........34

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017) ...............................................................35

*Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*,
    122 A.D.2d 25, 504 N.Y.S.2d 192 (1986) ..........................................................28

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ............................................................................26

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ..........................................................................9, 26

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016) .......................................................................29, 32

*McCabe v. Lifetime Entm't Servs., LLC*,
    No. 17-CV-908-ERK-SJB, 2018 WL 1521860 (E.D.N.Y. Jan. 4, 2018) ..............23

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ..............................................................................2

*Mednick v. Precor, Inc.*,
    No. 14 C 3624, 2016 WL 3213400 (N.D. Ill. June 10, 2016) ...........................8, 9

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ...........................................................................18

*Murphy v. Kuhn*,
    90 N.Y.2d 266 (1997) .......................................................................................18

*Novinger Grp., Inc. v. Hartford Ins., Inc.*,
    514 F. Supp. 2d 662 (M.D. Pa. 2007) ...............................................................24

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................19

*Oscar v. BMW of N. Am., LLC*,
274 F.R.D. 498 (S.D.N.Y. 2011) ....................................................................8, 26

*Pa. Public Sch. Empl. Retirement Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014)..............................................................................14

*In re Petrobras Secs.*,
862 F.3d 250 (2d Cir. 2017)................................................................................8

*Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)...........................................................................................11

*Porcell v. Lincoln Wood Prods.*,
713 F. Supp. 2d 1305 (D.N.M. 2010) ...............................................................15

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
No. 11 Civ. 6546(JPO), 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ...........................6

*Robinson v. Gen. Elec. Co.*,
No. 09-CV-11912, 2016 WL 1464983 (E.D. Mich. Apr. 14, 2016)...................8, 10

*Sabol v. Ford Motor Co.*,
No. 14-6654, 2015 WL 4378504 (E.D. Pa. July 16, 2015) ...............................13

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ...................................................................22, 34

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
293 F.R.D. 287 (E.D.N.Y. 2013) ...................................................................21-22

*Sikes v. Teleline, Inc.*,
281 F.3d 1350 (11th Cir. 2002), *abrogated on other grounds by Bridge v.
Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131 (2008)......................................31-32

*Solomon v. Bell Atl. Corp.*,
9 A.D.3d 49 (N.Y. App. Div. 2004) ...................................................................22

*Spiro v. Healthport Techs., LLC*,
73 F. Supp. 3d 259 (S.D.N.Y. 2014)..................................................................35

*In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*,
522 F.3d 836 (8th Cir. 2008) .............................................................................18

*Szabo v. Bridgeport Machines, Inc.*,
249 F.3d 672 (7th Cir. 2001) .........................................................................2, 31

*Taylor v. Sturgell*,
553 U.S. 880 (2008)...........................................................................................5

*Thorogood v. Sears, Roebuck and Co.*,
    547 F.3d 742 (7th Cir. 2008) ...................................................................18

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ...............................................................30

*Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*,
    28 F. Supp. 2d 947 (E.D. Pa. 1998) ...................................................18, 19

*Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*,
    574 A.2d 641 (Pa. Super. 1990)................................................................24

*Voelker v. Porsche Cars N. Am., Inc.*,
    353 F.3d 516 (7th Cir. 2003) ...................................................................28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................*passim*

*Walsh v. Ford Motor Co.*,
    130 F.R.D. 260 (D.D.C. 1990)..................................................................29

*Weinberg v. Sun Co., Inc.*,
    777 A.2d 442 (Pa. 2001) ..........................................................................21

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d. Cir. 2002)....................................................................23

*Whalen v. Pfizer, Inc.*,
    9 Misc. 3d 1124(A), 862 N.Y.S.2d 812 (N.Y. Sup. Ct. Sept. 22, 2005) ...............................21

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) ........................................................35

*Woods v. Maytag Co.*,
    807 F. Supp. 2d 112 (E.D.N.Y. 2011) .......................................................14

**Statutes**

Pennsylvania Unfair Trade Practices and Consumer Protection Law .........................4, 21, 23, 24

N.Y. Gen. Bus. L. § 349 .............................................................................3

U.C.C.

§ 2-313 ............................................................................................................13

§ 2-314(2)(c) ...................................................................................................29

§ 2-607 ............................................................................................................15

§ 2-725(4) .......................................................................................................16

§ 2–314 ...........................................................................................................29

§ 2-607(3)(a) ..................................................................................................15

## Other Authorities

1 *McLaughlin on Class Actions* § 5:56 (15th ed. Oct. 2018 update) ...........................11

Restatement (Second) of Judgments § 27 cmt. d.....................................................6

7A Wright, Miller, Kane, Marcus & Steinman, Federal Practice &
Procedure § 1789.1 (3d ed. 2005).............................................................................5

## INTRODUCTION

Earlier in this case, when Plaintiffs' counsel were explaining to the Court why they filed three separate actions against Wolf on behalf of three different sets of named plaintiffs, they acknowledged they had to do so because there are "salient differences—both factual and legal" between each Plaintiff's claims, with the claims of each Plaintiff being "legally and factually distinct." (Sharp Dkt. (No. 1:18-cv-01723-JS-GRB) 103 at 5, 70 at 3.)

But now, when seeking certification of a nationwide class of Wolf oven purchasers, Plaintiffs' counsel are singing a different tune. They now ask the Court to ignore all of the "salient differences—both factual and legal," and certify a class consisting of all purchasers of Wolf ovens in all 50 states over an unspecified period of time.

Plaintiffs' counsel had it right the first time. There are far too many individualized factual and legal issues to permit class certification. If the Court were to certify a class, it would then have to apply the differing laws of all 50 states to a long list of individualized fact issues that would have to be resolved in order to adjudicate each class member's claims and Wolf's defenses to those claims. The best proof of this is found in the named plaintiffs' own claims and the dispositive motion practice concerning those claims. This Court's summary judgment decision as to the Kails' claims (Dkt. 35[1]) and the pending dispositive motions as to Garfinkle's and Sharp's claims, (Dkts. 66-67) show the host of unique and individualized factual and legal issues that have to be decided in order to adjudicate the claims of just those three plaintiffs. The Court should review its Kail summary judgment decision and the pending motions concerning Garfinkle and Sharp, and ask itself how it could possibly adjudicate those issues—and more—on a class-wide basis.

---

[1] All "Dkt. __" citations are to the Kail Docket, No. 2:15-cv-03513-JS-GRB, unless otherwise noted.

The answer is that it could not. Certifying the nationwide classes that Plaintiffs are proposing would create an unmanageable morass, and would deprive Wolf of its constitutional right to adjudication of each of its factual and legal defenses to each class member's claim. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (class cannot be certified unless it can "generate common answers apt to drive the resolution of the litigation," and do so while protecting the defendant's entitlement to litigate any "defenses to individual claims").

The need to resolve individualized factual issues and apply differing state laws is why false advertising and other misrepresentation-based claims "often are unsuitable for class treatment," *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), and "few warranty cases have ever been certified as class actions—let alone as nationwide classes." *Szabo* v. *Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001).

## BACKGROUND

### I.   WOLF AND ITS OVENS AND RANGES

Wolf is a Madison, Wisconsin-based manufacturer of cooking appliances, including multiple models of ranges and wall ovens with a wide range of sizes and features. Like virtually all oven manufacturers, Wolf uses porcelain for its interiors. Porcelain "is the industry standard for residential oven interiors" because of its hardness, which makes it resistant to wear and tear and mechanical damage, and its chemical stability at high temperatures, which makes it less likely to react with other matter. (June 22, 2018 Expert Report of Brian W. Sheldon at 4.) But, like all materials, it is not impervious to damage. For example, it can chip or crack from impact damage, such as dropping cookware on it. (*Id.* at 12, 25-26.) Food residue can cause damage when left for prolonged heating cycles. (*Id.* at 10, 26.) The heat produced by ovens causes neighboring steel to expand at a different rate than porcelain, creating tension that can result in a craze or a crack. (*Id.* at 9-10.) That risk grows if customers, contrary to instructions, place baking sheets or foil on the

2

oven floor or if they rinse a still-hot oven with a wet cloth or sponge. (*See id.* at 14; Sheldon Dep., Dkt. 85-10, at 291:4-292:17.)



Wolf does not promise its porcelain will remain pristine from cosmetic defects; no oven manufacturer can. (*See* Sheldon Report at 3.) But, Wolf provides a written express warranty that promises to repair or replace if issues arise within the first two years due to defective materials or workmanship. (Dkt. 66-2 ¶¶ 32-33.)

## II.   PLAINTIFFS' CLAIMS AND WOLF'S PENDING MOTIONS

The named plaintiffs (the Kails, Garfinkle, and Sharp) are Wolf customers who allege porcelain crazing, cracking, and chipping in their ovens. All three allege the most severe form of imperfection, chipping. (Kail Compl. ¶¶ 46-47, 48-49; Sharp Compl. ¶ 62; Garfinkle Compl. ¶ 59, 63.) Their Complaints seek to certify nationwide classes asserting six types of breach-of-warranty and common law claims, along with a New York class alleging violations of New York's false advertising statute, N.Y. Gen. Bus. L. § 349, and a Pennsylvania class alleging violations of

3

Pennsylvania's Unfair Trade Practices and Consumer Protection Law, § 201. The Complaints contain the following class definitions:

| Kails (Dkt. 1 ¶ 59) | Garfinkle (Dkt. 39, ¶ 71) | Sharp (Dkt. 57 ¶ 70) |
|---|---|---|
| All persons and entities in the United States who purchased a residential Wolf oven containing a blue porcelain oven cavity. | All persons and entities in the United States who purchased a residential Wolf oven containing a porcelain oven cavity. | All persons and entities in the United States who purchased one or more of the Wolf Ovens containing a porcelain cavity. |
| All persons and entities in the State of New York who purchased a residential oven containing a blue porcelain oven cavity. | All persons and entities in the State of Pennsylvania who purchased a residential Wolf oven containing a porcelain oven cavity. | All persons and entities in the State of New York who purchased one or more of the Wolf Ovens containing a porcelain cavity. |

In their class certification brief, Plaintiffs do not provide any proposed class definitions, and do not say which of the classes described in their Complaints they contend should be certified. None of the named plaintiffs own or have standing to sue over a Wolf oven with a black porcelain interior (Dkts. 1, ¶ 45; 39 ¶ 58; 57 ¶ 62), so presumably black porcelain ovens are no longer part of this case, but the proposed class(es) for blue porcelain ovens remain unclear.

Wolf brought dispositive and evidentiary motions concerning many of the named plaintiffs' claims, and several of those motions remain pending. First are the summary judgment motions. Wolf moved for summary judgment on some of the Kails' claims, and the Court granted that motion in part, dismissing the Kails' untimely claims for breach of warranties created by advertising statements and for violation of N.Y. GBL § 349. (Dkt. 35 at 13, 23-25.) The Court allowed the remainder of the challenged Kail claims to proceed based on its finding that those claims present fact disputes, such as, whether the Kails' and Wolf shared a "special relationship." (*Id.* at 22.) Wolf also filed a consolidated motion for summary judgment with respect to all of

4

Garfinkle's claims and some of Sharp's claims, and that motion is fully briefed and ripe for decision. (*See* Dkt. 66.)

Second, Wolf moved to strike untimely class claims alleged by Garfinkle and Sharp (Dkt. 65) because the *American Pipe* doctrine tolls the applicable statutes of limitations only for the <u>individual</u> claims of Garfinkle and Sharp, and provides "no tolling for out-of-time class actions." *China Agritech v. Resh*, 138 S. Ct. 1800, 1811 (2018). That consolidated motion is also fully briefed and ready to be decided.

Finally, Wolf has moved to exclude the testimony of Plaintiffs' damages expert under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and Fed. R. Evid. 702. Dkt. 89.

## <u>ARGUMENT</u>

## I.   TO PROTECT THE RIGHTS OF ABSENT CLASS MEMBERS, THE COURT SHOULD DECIDE ALL PENDING MOTIONS BEFORE ADDRESSING CLASS CERTIFICATION.

The strengths and weaknesses of a named plaintiff's case can profoundly impact the rights of absent class members. Upon certification, "a member of the class in a Rule 23 suit is considered to be a party by representation, and thus will be bound to the same extent as an actual party." 7A WRIGHT, MILLER, KANE, MARCUS & STEINMAN, FEDERAL PRACTICE & PROCEDURE § 1789.1 (3d ed. 2005). Thus, "[b]asic principles of *res judicata* (merger and bar or claim preclusion) and collateral estoppel apply," no different than if each class member litigated the class issues individually. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). This is true even if the class member never receives notice of the class action, or is otherwise unable to intelligently weigh the right to opt out of the class. *See Taylor v. Sturgell*, 553 U.S. 880 (2008). And, for classes seeking relief under Rule 23(b)(2), class members have no right to opt out in any event. *See Dukes*, 564 U.S. at 397-98.

Because of these preclusive effects, the Court should decide Wolf's challenge to Plaintiffs' damages expert and its pending dispositive motions before turning to the question of class certification. If the Court were to first certify a class, and then later conclude the class representatives cannot sustain their burden of proof because of dispositive flaws in their cases or their expert testimony, absent class members would be bound by those adverse rulings and stripped of their claims. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (issue preclusion applies even when the issue is decided "based on a failure of pleading or of proof"); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546(JPO), 2013 WL 93636, at *6 (S.D.N.Y. Jan. 9, 2013) ("where the lead plaintiff's claims fail, so too will those of the class").

These are not abstract concerns. The Court already dismissed two of the Kails' claims on summary judgment (Dkt. 35), and Wolf's pending motions assert fatal defects as to both the individual and class claims alleged by Garfinkle and Sharp. Plaintiffs also dropped the ball on experts, failing to disclose any liability expert to support their claim of a common defect, and choosing a damages expert whose opinions are based on a false premise and whose work is so far from complete that it cannot be reliable. These deficiencies hobble the individual claims of the named plaintiffs, but other members of the proposed class might not have the same problems if they prosecuted their own individual claims, rather than being bound to the named plaintiffs' weaknesses. The Court should decide Wolf's pending dispositive and evidentiary motions *before* deciding class certification, to avoid hitching the wagons of absent class members to the problematic claims of these named plaintiffs.

## II.    CLASS CERTIFICATION IS INAPPROPRIATE BECAUSE OF THE LACK OF COMMONALITY AND THE PREDOMINANCE OF INDIVIDUAL ISSUES.

### A.    Rule 23 Standard

To protect the rights of absent class members, courts must undertake "a rigorous analysis" of the evidence to ensure the named plaintiffs offer "convincing proof" on all of Rule 23(a)'s requirements, and at least one of Rule 23(b)'s requirements. *Dukes*, 564 U.S. at 348, 359; *see also In re IPO Secs. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006) (district court must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met"); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) ("plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23").

This rigorous analysis often requires evaluation of the merits of the plaintiff's underlying claim. *Dukes*, 564 U.S. at 351. The Second Circuit requires a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues," and rejects assertions of Rule 23 compliance without demanding proof. *In re IPO Secs. Litig.*, 471 F.3d at 41.

### B.    None of Plaintiffs' Claims Include Common Issues Provable By Class-Wide Evidence, and Individualized Issues Predominate.

Rule 23(a)(2) requires Plaintiffs to prove the existence of common questions that can be answered for every member on a class-wide basis (the "commonality" requirement), while Rule 23(b)(3) requires proof that any remaining individualized issues (1) will not predominate over the common issues (the "predominance" requirement) and (2) can be adjudicated by this Court without rendering the proceeding unmanageable or violating Wolf's due process rights (the "superiority" and "manageability" requirements). Individualized questions are those for which Plaintiffs "need to present evidence that varies from member to member[,] while a common question is one where

the same evidence will suffice for each member." *In re Petrobras Secs.*, 862 F.3d 250, 272 (2d Cir. 2017) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

### 1.    There Is No Evidence Of A "Common Defect."

The most fundamental problem with Plaintiffs' request for class certification is their failure to provide evidence of a common defect. Having let their expert disclosure deadline pass without naming a defect expert, Plaintiffs cannot prove the crazing, cracking, and chipping they claim to have experienced in their own ovens is caused by a defect, as opposed to the many other possible causes of porcelain problems (impact damage, etc.). Nor do they have any proof of their allegation that crazing, cracking, and chipping occurs in "virtually all of the Wolf Ovens." (Dkt. 1 ¶ 30; Dkt. 39 ¶ 35.) Plaintiffs have represented this as the sole common thread running through their claims, (Sharp Dkt. 18 at 1-2) so their failure of proof on this central issue is fatal to their request for class certification.  *See*, *e.g.*, *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 819 (7th Cir. 2010) (finding expert opinion unreliable and reversing class certification order, because absent expert testimony of a common defect, Rule 23 requirements could not be met); *Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640, *20 (N.D. Ill. May 9, 2017) (without an expert to identify a common defect that caused Whirlpool ovens to fail, plaintiffs' "superficial common question of whether the Ovens are defective" could not be answered "in one stroke"); *Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 3213400, at *7 (N.D. Ill. June 10, 2016) (same); *Haley v. Kolbe & Kolbe Millwork Co.*, No. 14-CV-99-BBC, 2016 WL 1180203, at *6 (W.D. Wis. Mar. 25, 2016) (same); *Robinson v. Gen. Elec. Co.*, No. 09-CV-11912, 2016 WL 1464983, at *5 (E.D. Mich. Apr. 14, 2016) (same); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 510 (S.D.N.Y. 2011) (same).

Not only is there no evidence supporting Plaintiffs' claim of a common defect, but the evidence that <u>is</u> in the record points in the opposite direction. ███████████████████
████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

In footnotes to their brief, Plaintiffs appear to rely on the testimony of a now-deceased Wolf employee, Randy Rinehart, as their proof of a "common defect." █████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ In short, Rinehart's testimony in no way serves as the evidence of a common defect that Plaintiffs need to support their sweeping claims.

Nor can Plaintiffs use their own anecdotal experiences to prove the claims of a class as a whole. *See Mednick*, 2016 WL 3213400, at *7 (plaintiffs' testimony did not "support the broad-reaching conclusions urged by Plaintiffs as to all types of users across all types of Precor machines"). Their individual experiences cannot establish the cause of porcelain damage other class members might have experienced. *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012) ("Even 'defective' tires can go flat for reasons completely unrelated to their defects. Critically, to determine why a particular class member's [tire] has 'gone flat and been replaced' requires an individual examination of that class member's tire."). And they have no basis for inferring that all Wolf oven purchasers will experience the degree of damage they claim to

have experienced. *See*, *e.g.*, *Robinson*, 2016 WL 1464983, at *7 ("the number of incidents alone, from unverified sources, is not enough to show commonality between the models").

In sum, without evidence showing a common defect experienced by all purchasers of Wolf ovens, the Court would be left to examine the individualized stories of tens of thousands of class members.

Recognizing the problem caused by their failure to provide evidence of a common defect, Plaintiffs try to plug the hole with a semantic sleight of hand. On page 34 of their brief, Plaintiffs try to justify their failure of proof by asserting that "this is not a products defect case"—but rather a claim for "false advertising/failure to warn" about "imperfections or blemishes [that] are in fact defects by definition" but not in a "legal sense." (Dkt. 82 at 34.) These linguistic gymnastics do not change the nature of this case, the claims Plaintiffs have pled, or the law that governs whether those claims are suitable for class treatment. Every one of their claims, from breach of warranty to "false advertising/failure to warn," is premised on the allegation that all Wolf ovens and ranges are in fact defective. Without any expert or other means of proving that allegation on a class-wide basis, the named Plaintiffs have failed to meet their burden of proving that their claims are suitable to be litigated on a class-wide basis ████████████████████

████████████████████████████████████████

## 2. Plaintiffs' Proposed Classes Improperly Include Purchasers Who Have No Injury.

Another threshold problem with Plaintiffs' motion is that it seeks to certify classes that include purchasers who have not experienced crazing, cracking, or chipping.  In New York and elsewhere, courts have held "there is no legally cognizable injury in a product defect case, regardless of whether the claim is for fraud, violation of consumer protection statutes, breach of warranty, or any other theory, unless the alleged defect has manifested itself in the product used

by the claimant." 1 *McLaughlin on Class Actions* § 5:56 (15th ed. Oct. 2018 update); *see also*

*Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121, 127, 741 N.Y.S.2d 9 (1st Dep't 2002)

(There is no such thing as a claim for a product's "tendency to fail," as "it would be manifestly

unfair to require a manufacturer to become, in essence, an indemnifier for a loss that may never

occur."). Thus, individualized inquiry oven-by-oven inspections would be required just to

determine whether class members have experienced porcelain damage entitling them to assert any

claims at all. It is no surprise, then, that "breach of warranty and consumer classes of 'all owners

and lessors,'" like the ones Plaintiffs propose here, "are frequently rejected." *McLaughlin* § 5:56.

### 3. Plaintiffs Have Ignored The Need To Apply Differing State Laws.

The Court would be required to apply the law of each class member's home state to that

member's claims. (*See* Dkts. 24-1 at 10, 66-1 at 5.) Plaintiffs have completely failed to address the

issue of differing state laws, but that does not mean the Court can ignore it. *See Petroleum Co. v.

Shutts*, 472 U.S. 797, 821 (1985) (Separate choice-of-law determinations are constitutionally

required); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 223 (W.D. Mich.

1998) ("The choice-of-law analysis is a matter of due process . . . not to be altered in a nationwide

class action simply [to avoid] management difficulties."). Due to space limitations, Wolf cannot

address all of the state law differences here, but has included three appendices with relevant

differences in state law regarding warranty claims. (*See* Appendix A (addressing differences in the

"basis of the bargain" requirement); Appendix B (addressing differences in the notice of breach

requirement); and Appendix C (addressing differences in the statutes of limitations).)

### 4. Individualized Issues Predominate Plaintiffs' False Advertising And Misrepresentation Claims.

On the first page of their brief, Plaintiffs assert a class can be certified in "one stroke" on

the following "uncomplicated questions": "Did [Wolf] . . . falsely advertise the aesthetic features

of its ovens?  Was the marketing of signature aesthetics of the Blue Cavities . . . false and misleading?  Did Wolf fail to warn consumers that its porcelain oven cavities were prone to manifesting imperfections?" Yet nowhere do Plaintiffs identify the common "false advertising" and "false and misleading marketing" statements that *all* class members allegedly saw and relied on. Nor do Plaintiffs identify the law of each jurisdiction that would support their nebulous claim for "failure to warn."

The reality is, given the unlimited time period included in the proposed classes, the varied advertisements and marketing materials distributed and displayed by Wolf over time, and the fact that many of the tens of thousands of potential class members likely purchased their ovens by shopping in third-party dealer showrooms rather than by relying on advertisements or brochures, any claims based on Wolf's marketing materials would require highly individualized inquiries as to what was seen and relied upon by each class member.

The Court need look no further than its decision on Wolf's first motion for summary judgment to see how individualized each class member's claims would be. The Court granted summary judgment on the Kails' claim for breach of express warranties created by statements in advertising because there was no evidence Wolf made new statements with respect to the relevant replacement range. (Dkt. 35 at 4-6, 11.) Similarly, Plaintiffs opposed Wolf's motion for summary judgment as to Garfinkle's and Sharp's "advertising warranty" claims by emphasizing the importance of the blue porcelain interior in their individual purchase decisions, their individual conversations with salespeople at Wolf dealers, and specific written materials to which they were allegedly exposed. (Dkt. 75 at 4, 7, 12, 16-17.)

The need for individualized inquiries as to what each customer saw and relied on makes it impossible to adjudicate Plaintiffs' "false advertising" claims on a class-wide basis.

More specifically, the individualized inquiries required for Plaintiffs' false advertising and misrepresentation claims include the following:

### a.      Breach of advertising warranties (Garfinkle).

The claim for breach of advertising warranties would require each class member to prove:

**(1) Wolf made a statement of fact that can be proven true or false, as opposed to mere opinions or puffing**; Not all pre-sale statements in advertising materials qualify as warranties under U.C.C. § 2-313, and "puffery" and opinion statements like the ones mentioned in Plaintiffs' Complaints (*e.g.*, Wolf products are "built with 'superior-quality materials'") and Plaintiffs' depositions (*e.g.*, that Wolf's warranty is "one of the best") are not actionable. *See, e.g.*, *Sabol v. Ford Motor Co.*, No. 14-6654, 2015 WL 4378504, at *4 (E.D. Pa. July 16, 2015) ("subjective opinions . . . do not give rise to liability for breach of express warranty"); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) ("statements that the Bungee cords are of premium or superior quality are  . . . puffery"). Proving this claim requires an affirmation of fact— like a promise that Wolf ovens will not craze, crack, or chip.

Individualized inquiry would be required to determine whether each class member can point to that type of affirmation of fact. Not only will this vary amongst class members who shopped for and purchased Wolf ovens, but subsequent owners—those who acquired their Wolf ovens when they bought existing homes containing a Wolf oven—would need an exceptionally creative (and plaintiff-specific) path to satisfy this element.

**(2) The statements became part of the basis of each class member's bargain**; The basis of the bargain requirement varies across states, with some, for example, requiring the plaintiff to show the statement was a factor in the purchase, and others reversing the burden of proof and

requiring the *seller* to prove that it *did not* become part of the basis of the bargain. (*See* Appendix A.)

The Court may not dispense with these state law differences, nor can it assume that all class members saw, heard, and cared about the same advertising statements. *See Pa. Public Sch. Empl. Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 121 (2d Cir. 2014) ("Even in the case of the fraud-on-the-market theory, recognized for purposes of federal securities fraud, we 'repeatedly have refused to apply [it] to state common law cases.'") (quoting *Secs. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000)).

Instead, the Court will need to undertake a class member-by-class member inquiry to determine who saw and relied on what (if any) statement of fact by Wolf. Wolf moved for summary judgment on this basis with respect to the Kails' and Garfinkle's claims, as they do not recall seeing or relying on any statements regarding porcelain before making the purchase decision. (Dkts. 24-1 at 17; 31 at 5-6; 66-1 at 8-9, 78-1 at 2.) Even if they did, it would not establish that the same statement formed the basis of the bargain for any other class members.

**(3) The statement was made by Wolf or someone with authority to bind it**; Statements by independent dealers or service personnel regarding the quality of Wolf products do not bind Wolf without proof that the dealer or agent was authorized to make that warranty on Wolf's behalf. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121-22 (E.D.N.Y. 2011). This will be an individualized issue for class members like Garfinkle and Sharp, who rely on statements made by salespeople at dealers. (*See* Dkt. 75 at 10, 16.)

**(4) Wolf breached the specific advertising statement relied on by the specific class member**; This will depend on what statement that particular class member heard, and whether that member's oven or range fell short of it. Both require individualized inquiries.

14

**(5) Each class member provided the required pre-lawsuit notice of breach of that particular advertising statement**; Section 2-607 of the U.C.C. requires that the buyer give notice of the breach to the seller within a "reasonable time," but the specifics of that requirement vary widely by jurisdiction, as shown in Appendix B. As an example, in many states, the content of the notice must be "sufficient to let the seller know that the transaction is still troublesome and must be watched," but it need not expressly declare a breach or demand damages from the seller. (*See* Appendix B.) But in other states, the requirement is more stringent: the buyer must not only inform the seller that the transaction is troublesome, but that the buyer intends to assert legal rights or seek damages from the seller for breaching the warranty. (*Id.*) In a smaller minority of states, the complaint itself may satisfy the notice requirement, so long as it is filed within a reasonable time in light of the facts and circumstances of the case. (*Id.*)

The need for these individualized inquiries, particularly on a 50-state basis, weighs against certification. *See*, *e.g.*, *Cole v. GMC*, 484 F.3d 717, 727 (5th Cir. 2007) ("State law varies on what constitutes reasonable notice and to whom notice should be given, and other courts considering the issue in the class certification context have noted that these variations impact predominance."); *Porcell v. Lincoln Wood Prods.*, 713 F. Supp. 2d 1305, 1316 (D.N.M. 2010) ("the issue of UCC § 2-607(3)(a) notice presents a question in which individual questions of fact will predominate"); *Compaq Comp. v. Lapray*, 135 S.W.3d 657, 674 (Tex. 2004) (denying certification where "cases from different jurisdictions interpret the [express warranty] notice requirement differently").

**(6) Each class member's claim is made within the applicable statute of limitations in a given jurisdiction**; Statutes of limitations are an important issue in this case, particularly because Plaintiffs are apparently proposing classes covering an unlimited time period. Statutes of limitations for warranty claims vary from state to state. (*See* Appendix C (statutes of limitation

range from three to six years).) Thus, individual inquiries into the timeliness of each class member's claim would be required. The timeliness of this type of warranty claim will also involve inquiry into whether any particular advertising warranty explicitly extends to future performance, in which case the statute of limitations would not begin to run until the buyer discovers or should have discovered the breach. (Dkt. 35 at 12 n.9.)

In addition, for each class member whose claim is untimely on its face, the Court will need to examine the equitable tolling doctrines of that person's home jurisdiction. *See* U.C.C. § 2-725(4), Official Cmt. (U.C.C. does not "alter or modify in any respect the law on tolling of the Statute of Limitations as it now prevails in the various jurisdictions"). Individual states' tolling doctrines vary considerably. (*See* Appendix C.) For example, in some states, the statute of limitations for breach of warranty is treated as a statute of repose, with tolling unavailable. (*Id.*) Others make tolling available, but only if the defendant made misrepresentations or concealed facts to induce the plaintiff to delay bringing suit. (*Id.*) All of these individualized inquiries undermine Plaintiffs' assertion that common issues predominate. *See, e.g.*, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) ("[T]olling the statute of limitations on each of plaintiffs' claims depends on individualized showings that are non-typical and unique to each [class member]. . . . This difference in right precluded class certification [in another case], as it should have here.") (internal quotations and citations omitted); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir. 1998).

### b.  Negligent misrepresentation (Kails, Garfinkle).

The elements of this common law claim vary by jurisdiction. Using Pennsylvania as an example, *see Bortz v.* Noon, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999), a plaintiff must prove:

**(1) an affirmative misrepresentation of material fact by Wolf**; A plaintiff must prove a misrepresentation of fact, and not just puffery or opinion, to proceed on this claim. The named

plaintiffs asserting this claim (the Kails and Garfinkle) cannot do so. (*See* Dkts. 66-1 at 12-13; 78-1 at 6; 24-1 at 20-21.) Even if they could, it would do nothing for the claims of absent class members.

To the extent Plaintiffs' claims are based on an omission, the situation is even more complicated. To start, not all states recognize those claims. *See Chang v. Fage USA Dairy Indus., Inc.*, No. 14-CV-3826 (MKB), 2016 WL 5415678, at *12 (E.D.N.Y. Sept. 28, 2016) (Florida, New Jersey, and Pennsylvania allow omission-based negligent misrepresentation claims while California does not). And even in states that recognize omission-based claims, there will be individualized issues as to whether the facts gave rise to a duty to disclose to each particular class member, and whether each class member was harmed by the nondisclosure. Using Garfinkle as an example, Wolf has argued there was no duty to disclose under Pennsylvania law because Garfinkle's purchase was an ordinary, arm's length transaction. (Dkt. 66-1 at 14-15.) Plaintiffs responded by pointing to Garfinkle's "discussions with authorized dealers" and arguing that Wolf had a duty to speak and to correct unspecified statements by these unidentified individuals. (Dkt. 75 at 13.) While Wolf disagrees with Plaintiffs' arguments, they nonetheless show why this claim involves individualized issues that cannot be adjudicated on a class-wide basis.

**(2) that Wolf knew or should have known to be false**; The proof necessary to demonstrate the falsity of a claim will depend on the statement itself, which again will vary depending on what each class member heard or saw. Because there is no uniform "false statement of fact," there is no common evidence demonstrating that any statement is false.

**(3) that the class member justifiably relies on**; This depends on whether the speaker heard or saw the statement, and whether they relied on it in making their purchase. Each plaintiff must individually show a causal connection between alleged misrepresentations and his or her own

17

purchase and injury. *See, e.g.*, *Gale v. IBM Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004) (named plaintiff's claims failed for lack of causation because although he "cite[d] particular misleading statements by [defendant] . . . he nowhere states in his complaint that he saw any of these statements"); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI)(RML), 2013 WL 7044866, at *19 (E.D.N.Y. July 18, 2013). This cuts strongly against certification. *See, e.g., Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 747-48 (7th Cir. 2008) (decertifying class based on individualized issues, including need to determine what each consumer "understands" advertising to mean in order to prove reliance/causation and actual loss); *In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*, 522 F.3d 836, 839-40 (8th Cir. 2008); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 194 (3d Cir. 2001); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (upholding denial of class certification "because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff on those misrepresentations in order to sustain their claims").

(4) **that causes injury to the buyer**; This depends on the individual facts and circumstances concerning each buyer's oven. Obviously, if a particular absent class member relied on a statement that was accurate for their oven or range, then the statement caused no damages.

(5) **whether the class member had a "special" relationship with Wolf, or some other means of avoiding the economic loss doctrine under the law of his or her jurisdiction**; This depends on the rules in each jurisdiction. In New York and Pennsylvania, the economic loss doctrine applies unless the defendant holds a "special position of confidence or trust" akin to a fiduciary. *Murphy v. Kuhn*, 90 N.Y.2d 266, 270 (1997); *see also Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998). Making that determination requires individualized inquiry. For example, the Court declined to grant summary

18

judgment on Wolf's economic loss doctrine defense to the Kails' negligent misrepresentation claim. "Crucial" to that analysis, the Court explained, was that Wolf and the Kails "shared a relationship that spanned nine years with repeated service calls that yielded at least ten replacement parts and units." *Id.* Other consumers like Garfinkle, a sophisticated consumer who holds a Ph.D. and negotiated for specialized terms with Wolf, will not qualify as someone whose free will could be overpowered by a remote manufacturer of a kitchen appliance. (*See* Dkt 66-1 at 10-11.)

**(6) whether the claim is timely**; Determining the timeliness of this claim will involve analyzing not only the date of purchase and the relevant state's statute of limitations, but also the tolling principles and the discovery rule for tort claims in that jurisdiction.

### c.      Fraudulent concealment (Sharp).

Using New York law as an example, the elements of fraudulent concealment are: "(1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018) (further citation omitted). Proof of fraudulent concealment in this case will involve the following issues:

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████Duties of disclosure vary from state to state. *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 223 (E.D. La. 1998) (proposed nationwide class asserting fraudulent concealment claim could not be certified due to variation in state law on issues such as the burden of proof, whether a fiduciary or confidential relationship is required, whether "superior knowledge" gives rise to a duty to disclose, and whether the duty to disclose depends on the facts and circumstances of each case, such as the "the parties' relationship, the importance of the information and the parties' knowledge of the product's condition"). Not only would the Court need to determine the law of

each of the 50 states, it would also need to evaluate the facts relevant to each class member's claim of a duty to speak under those differing state laws.

**(2) whether a given class member relied on the nondisclosure**; Plaintiffs who did not see or rely on Wolf's advertising cannot prove they were harmed by the absence of a disclosure in those materials, at least under New York law. (*See* Dkt. 66-1 at 21-22.) Individualized inquiry will be required to identify class members who saw and relied on Wolf's advertising, as opposed to those like Sharp and the Kails, who did not. (*Id.*) ████████████████

███████████████████████████████████████████████

███████████████

**(3) whether the failure to disclose caused damages to a given class member**; ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ Individualized inquiry would be necessary to determine whether each absent class member experienced porcelain damage, and, if so, when it occurred and whether it was due to a defect that Wolf failed to disclose.

**(4) whether the class member had a "special" relationship with Wolf, or some other means of avoiding the economic loss doctrine under the law of his or her jurisdiction**; As with the negligent misrepresentation claim addressed above, if the law of a buyer's home state applies the economic loss doctrine to claims of fraudulent concealment, the buyer must find a way around the economic loss doctrine under the law of his or her home jurisdiction in order to prevail.

**(5) whether the claim is timely**; Again, this will depend on the statutes of limitation of the class member's home state, taking into account applicable discovery rules and tolling principles.

20

**d.    Violations of the consumer protection statutes of New York (Sharp) and Pennsylvania (Garfinkle).**

Plaintiffs assert claims under the consumer protection statutes of two states, New York and Pennsylvania. The New York statute applies only to transactions in New York. *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 687 (S.D.N.Y. 2010). The Pennsylvania statute is not limited to in-state transactions, but a buyer must still demonstrate that it would be proper to apply Pennsylvania law under choice of law and jurisdictional principles. *See Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 17 (Pa. 2018).

Proving these claims will involve the following individualized issues:

**(1) whether a given class member actually saw and was harmed by any Wolf advertising statements**; As with common law fraud, a plaintiff seeking to prove an advertising-based claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") must prove justifiable reliance and causation. (*See* Dkt. 66-1.) Under New York's statute, a plaintiff must demonstrate that he or she "was exposed to, and influenced by, the advertising." *Whalen v. Pfizer, Inc.*, 9 Misc. 3d 1124(A), 862 N.Y.S.2d 812 (N.Y. Sup. Ct. Sept. 22, 2005).

Numerous courts have found that claims under these statutes are not appropriate for class certification. *See*, *e.g.*, *Abraham v. Ocwen Loan Serv., LLC*, 321 F.R.D. 125 (E.D. Pa. 2017); *Aronson v. GreenMountain.com*, 809 A.2d 399, 405 (Pa. Super. 2002); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001); *Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002) (automobile purchasers who complained of being deprived of information regarding airbags could not proceed with class action under the UTPCPL, because consumers could have reached different conclusions about the materiality of the withheld information); *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275 (E.D. Pa. 2016) (same); *Shady Grove Orthopedic Assocs., P.A. v.*

21

*Allstate Ins. Co.*, 293 F.R.D. 287, 308 (E.D.N.Y. 2013); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 53-54 (N.Y. App. Div. 2004) (certification not appropriate where plaintiffs could not point to any specific advertisement or statement that was undoubtedly seen by all class members); *Egan v. Telomerase Activation Sciences, Inc.*, 127 A.D. 3d 653, 654-55 (N.Y. App. Div. 2015) (same).

**(2) whether the particular advertising statement a class member saw was a "factual claim upon which [the customer] could rely" (which may be actionable) or an opinion or prediction of future performance (which is not)**; Plaintiffs admitted in their depositions that they did not see the advertisements quoted in their Complaints, and those statements are non-actionable puffery in any event. As to the statements Plaintiffs actually saw, those are either puffing (*e.g.*, that Wolf had "one of the best" warranties) or undeniably true (*e.g.*, that Wolf products are American-made). Perhaps other buyers saw or heard other statements of fact attributable to Wolf, but that will vary by class member.

Unlike the cases cited by Plaintiffs, this case does not involve prominent labels or product names—representations that everyone necessarily saw. *See Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 39-41 ("flushable wipes" that are not really flushable); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 403-404 (S.D.N.Y. 2015) (seeds that don't actually grow "50% thicker grass," as promised on the package); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. Feb. 24, 2014) ("100% Pure Olive Oil" (as labeled on front, back, left, right, and top of the tin) that was actually pomace); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *2 (N.D. Cal. Sept. 25, 2018) ("Kona" beer packaged with uniform labels that could lead buyers to think it was brewed in Hawaii). Instead, this case involves vague references to things like "signature aesthetics" and "superior quality materials" found on Wolf's website and promotional materials that may or may not have been seen by any given class member. (*See* Dkt. 82 at 3.)

Plaintiffs identify no uniform representations here. In short, this is not a case where Plaintiffs can show actual loss due to a uniform advertising statement on a class-wide basis.

(3) **whether the given class member's claim is timely**; There is a three-year statute of limitations for claims under New York GBL § 349, which runs from the date of purchase. The Kails' claim was dismissed as untimely on this basis. (Dkt. 35 at 23-25.) One of Wolf's pending motions argues that Sharp may not pursue the § 349 claim on behalf of a class because *American Pipe* tolling does not apply to class claims. (Dkt. 67-1 at 7-8.) If the Court agrees, then there will be no class representative for the § 349 claim, precluding certification. *See McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 WL 1521860, at *10 (E.D.N.Y. Jan. 4, 2018).

Pennsylvania has a six-year statute of limitations for UTPCPL claims, which begins to run when the plaintiff is able, with reasonable diligence, to discovery the injury and its cause. *Goleman v. York Int'l Corp.*, No. 11-1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011). For some absent class members, determining the timeliness of this claim will therefore turn on the application of the discovery rule to the facts and circumstances of their individualized situations.

(4) **whether the class member can overcome the economic loss doctrine**; Federal courts predicting Pennsylvania law have held that the economic loss doctrine applies to UTPCPL claims. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d. Cir. 2002). Therefore, each absent class member would need to find a way around the economic loss doctrine, such as proving damage to "other property" or fraud that is extraneous to the contract (*i.e.*, defendant did more than sell a defective product while concealing the defect). *See id.* at 676.

(5) **whether the person making the claim actually made the purchase (Pennsylvania)**; While New York permits civil suits by any resident who is "injured by reason of any violation" of the statute, N.Y. GBL § 349(h), the Pennsylvania statute limits standing only to "purchasers" and

"lessors" of goods or services. *Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994); 73 Pa. Stat. § 201-9.2. Thus, Pennsylvania class members whose ranges were purchased by someone else (such as a prior homeowner or contractor) would not qualify. This requires individualized inquiries.

**(6) whether the range was purchased for personal, family or household purposes**; The Pennsylvania statute only allows recovery for purchases made for personal, family, or household purposes—not business ones. *Novinger Grp., Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 670 (M.D. Pa. 2007); *Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 647 (Pa. Super. 1990). While most customers presumably buy Wolf products for personal or household purposes, that is not automatic; people who rent their homes to others or conduct business in them (such as catering) do not qualify. *DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237 (Pa. Super. 1996), *overruled on other grounds* (customer of pest control services lacked standing to bring claim related to services performed in home that was rented to others). Here again, individualized inquiries would be required.

     **5.**     **Individualized Issues Predominate Plaintiffs' Contract And Quasi-Contract Claims.**

        **a.**     **Breach of the Written Warranty (alleged by the Kails and Garfinkle, but not Sharp)**

This claim concerns the written warranty Wolf provides for its ovens and ranges, which states Wolf will "repair or replace . . . any part of the product that proves to be defective in materials or workmanship." (Dkt. 66-2 ¶¶ 32-33.) Here again, the Court's summary judgment decision as to the Kails highlights the individualized issues that can arise with this claim. Wolf imposed a limitation on the warranty for the Kails' most recent replacement oven, and the Court found disputed issues of fact as to whether that limitation was enforceable, including whether the customer service representative who spoke with Kail "had the authority to modify Wolf's standard

warranty," and whether the Kails' countersignature was required in order for the limitation to be enforceable. (Dkt. 35 at 9-10.) Resolving these issues is a fact-intensive endeavor unique to the Kails' situation, and will prove nothing about the claims of absent class members.

This is just one example of the many individualized issues with the claim for breach of the written warranty. To prove a breach of this written warranty, each class member would have to prove the following:

**(1) Awareness of the specific terms of the warranty and the party issuing it**; In some jurisdictions, like Pennsylvania, express warranties generally apply only to the original purchaser of products, and do not extend to subsequent purchasers unless they are "aware of the specific terms of the warranty, and the identity of the party issuing the warranty." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245-46 (Pa. Super. Ct. 2004). For class members who are not the original purchasers of a Wolf oven, for example class members who bought an existing home with a Wolf oven, individualized inquiries will be required to determine what they knew about the warranty and its issuer at the time they acquired their oven.

**(2) That the oven "prove[d] to be defective in materials or workmanship"**; This element cannot be proved on a class-wide basis. As discussed above, Plaintiffs have no evidence of a common defect that universally manifests in all Wolf ovens. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Limiting the class only to those who claim their ovens actually experienced crazing, cracking, or chipping would not eliminate individualized issues, because there are many reasons this might occur in a class member's oven. (Sheldon Rep. at 9-10.) For each class member, it

would be necessary to determine whether the damage occurred as a result of misuse by the customer, a defect in design, or a defect in materials and workmanship. If, for example, the defect is attributable to a design flaw, as Plaintiffs allege (*e.g.*, Dkts. 39 ¶ 74; 57 ¶ 4), it would not be covered by the "materials and workmanship" warranty, at least under New York law. *See Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018) ("It is well settled that where, as here, a warranty protects against defects in 'materials or workmanship,' the warranty covers manufacturing defects, but not design defects."); *see also Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016) (same). Plaintiffs fail to address whether such a claim might survive under the law of other jurisdictions.

This is why breach of warranty claims involving multiple potential causes of the alleged problem are not susceptible to class-wide resolution. *See*, *e.g.*, *Marcus*, 687 F.3d at 604; *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002) (reversing certification of multistate breach of warranty class, and noting factual variations in how the alleged defect affected individual class members would preclude certification even if it were a single-state class action); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 148-49 (4th Cir. 2001) (individualized inquiries into whether different contractors followed the defendant-manufacturer's instructions when applying stucco product weighed against certification); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011) ("In each case, the plaintiff will need to demonstrate that the [tire] failed because of a common defect, rather than because of circumstances that would cause any tire to fail. This inquiry into individual causation will predominate over issues of common proof surrounding the existence of a defect.").

**(3) Each class member made a claim under the warranty within the warranty period**;
To trigger Wolf's warranty obligations, owners must present a warranty claim to Wolf within the

warranty period. Some class members may have contacted Wolf within the warranty period to demand repair or replacement. Others, like Garfinkle, will not have made such demands. Wolf moved for summary judgment on Garfinkle's written warranty claim on this basis—because he never made a warranty claim on the relevant oven. (Dkt. 66-1 at 6.) In response, Plaintiffs argued that Garfinkle was not required to make a warranty claim because he had been "deceive[d]" by a Wolf customer service representative who told him the porcelain issues in his original oven were an "isolated abnormality." (Dkt. 75 at 2.) Individualized inquiries will be required to determine whether each class member made a timely warranty claim, and to evaluate unique arguments like the one Garfinkle has made.

**(4) Each class member must prove Wolf failed to honor the warranty**; The written warranty does not guarantee Wolf's products will be free from defects. Rather, it promises that if there is a defect in material or workmanship, Wolf will repair or replace. For customers who had porcelain-related problems and made a warranty claim within the warranty period, individual inquiry would be required to determine whether Wolf honored its warranty obligation to repair or replace. As shown by the Kails' unusual story of numerous allegedly ineffective replacements, the facts of this inquiry may vary significantly by class member.

**(5) Each class member must have a timely claim under applicable statutes of limitation or, if not, show that equitable tolling applies**; Once again, statutes of limitation and tolling principles vary by jurisdiction. (*See* Appendix C.)

**(7) Each class member provided the required notice of breach**; As with the advertising warranty claims, notice of breach requirements vary considerably by jurisdiction in meaningful ways that impact Plaintiffs' claims. (*See* Appendix B.)

### b.      Breach of the implied warranty of merchantability

To prevail on this claim, each class member would have to prove the following:

27

**(1) That they purchased their oven in a sale**; This warranty is created only upon a sale. It is not created by replacement ovens being provided under the written warranty. That is a potentially fatal defect for both the Kails (Dkt. 24-1 at 12) and Garfinkle (Dkt. 67-1 at 3-4), who are pursuing breach of implied warranty claims based on replacement ovens because the statute of limitations for their original purchases had already run. Likewise, class members who acquired their oven by purchasing an existing house would have no implied warranty claim. Thus, individualized inquiries would be required to determine how each class member acquired their oven.

**(2) Each class member had the necessary privity with Wolf**; Wolf sells primarily, but not exclusively, through independent dealers, rather than directly to consumers. This raises issues of whether class members are in contractual privity with Wolf for purposes of breach of warranty.

"[W]hether privity is a prerequisite to a claim for breach of implied warranty . . . hinges entirely on the applicable state law." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). There is "substantive disagreement between the states" regarding the privity requirements for implied warranty claims. *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998), *reversed and remanded on other grounds*. In most jurisdictions, including New York, lack of privity eliminates direct claims against the manufacturer for property-related claims; the buyer's claim lies against the dealer instead. *See Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 534 (E.D.N.Y. 2012); *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 122 A.D.2d 25, 26, 504 N.Y.S.2d 192, 193–94 (1986). On rare occasions (as with the Kails' upgrade), Wolf sells to customers directly. Thus, individualized class-member-by-class-member, jurisdiction-by-jurisdiction inquiries would be required to determine whether the privity requirement is met.

28

The need for this individualized inquiry weighs against predominance. *See Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) ("class-wide resolution of the privity issue was not possible, because, without class-wide evidence that class members were in fact in privity with The Money Store, the fact-finder would have to look at every class member's [transaction] to determine who did and who did not have a valid claim"); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 272 (D.D.C. 1990) ("the numerous vertical privity rules convince this Court that a predominance of common issues are not present in this case").

   **(3) Each class member's goods were "unmerchantable"**; Goods do not have to be perfect to be merchantable. *Ferracane v. United States*, No. 02-cv-1037 (SLT), 2007 WL 316570, a *8-9 (E.D.N.Y. Jan. 30, 2007). They need only be "fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314(2)(c). For ovens, that is cooking.

   Plaintiffs do not have any class-wide evidence that the ovens are unfit for use, with or without cosmetic damage to the porcelain. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

These individualized inquiries weigh against certification. *Gordon v. Ford Motor Co.*, 260 A.D.2d 164, 165, 687 N.Y.S.2d 369, 370 (1999) ("plaintiffs must prove that their vehicles are not fit for their ordinary purpose (UCC § 2–314), a matter indeterminable herein except by inquiries directed to each member of the class. . . . [T]he necessity of conducting such individual inquiries would become the predominant focus of the litigation, rendering the litigation extremely difficult if not

impossible to manage."); *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 603-604 (S.D.N.Y. 1982).

**(4) Each class member provided notice of breach**; As with the written warranty, notice requirements vary by state. (*See* Appendix B.)

**(5) The class member's claim is made within the applicable statute of limitations**; Again, statutes of limitation and tolling doctrines vary by state. (*See* Appendix C.)

### c.      Unjust enrichment (Sharp only)

Wolf moved for summary judgment on this claim, noting that unjust enrichment is unavailable under New York law where the transaction at issue is governed by an express agreement between the parties. (Dkt. 66-1 at 23.) Sharp offered no defense of this claim in his response, and therefore it is abandoned. *See* (Dkt. 78-1 at 10.) That said, if the claim were to survive, it would require even more individual inquiries to both prove a claim and to determine damages. *See*, *e.g.*, *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013).

### C.      The Class Action Is Not A Superior Method Of Addressing Individuals' Problems With Wolf Ovens, And Trial Of The Claims As A Class Action Would Be Unmanageable.

Rule 23(b)(3) requires Plaintiffs to show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," taking into consideration "the class members' interests in individually controlling" the litigation, including "the likely difficulties in managing a class action." The manageability inquiry "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). "A critical need is to determine how the case will be tried. Some courts now require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof." Fed. R. Civ. P. 23 Committee Note Subdiv. (c) (2003 amend.).

Plaintiffs' brief completely ignores these issues, and offers the Court no plan explaining how the Court could actually adjudicate the claims of each and every class member. As shown in the commonality/predominance section above, it would be impossible to do so, as the Court would have to apply the highly varying laws of 50 different jurisdictions to a host of individualized factual issues. Plaintiffs cannot solve these problems by ignoring required elements of the causes of action or depriving Wolf of its right to present defenses. *Dukes,* 564 U.S. at 366. Without exaggeration, it would take years to preside over individual trials of each and every putative class member who submitted a claim for adjudication.

Courts have repeatedly rejected proposed class actions with the same or fewer individualized issues on manageability grounds. *See*, *e.g.*, *Espenscheid v. DirectSat USA,LLC*, 705 F.3d 770, 776 (7th Cir. 2013) (affirming order decertifying a class action because plaintiff was "incapable of proposing a feasible litigation plan" due to variations among class members); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001)  ("A nationwide class in what is fundamentally a breach-of-warranty action, coupled with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification."); *In re Bridgestone/Firestone*, 288 F.3d at 1018 ("Because these [warranty] claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable. Lest we soon see a Rule 23(f) petition to review the certification of 50 state classes, we add that this litigation is not manageable as a class action even on a statewide basis."); *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 546 (W.D. Wis. 1998) (denying certification where plaintiff's proposed trial plan was "sheer fantasy" because the proposed class was "plagued by individual issues"); *see also Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002), *abrogated on*

other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131 (2008) ("[If] the laws of all fifty states apply, that alone would render the class unmanageable.").

### D.      The Named Plaintiffs' Claims Are Not Typical Of The Proposed Classes.

Before allowing any proposed plaintiff to adjudicate the rights of absent class members, the Court must "ensure that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Mazzei*, 829 F.3d at 271 (internal quotation and ellipsis omitted). "Typicality requires that the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of the other members of the proposed class." *Id.* at 272 (internal quotation omitted).

Typicality is lacking here because the named plaintiffs are subject to substantial individualized defenses, as shown by Wolf's dispositive motions and the claim-by-claim analysis of individualized issues above.

### E.      The Named Plaintiffs Do Not Adequately Represent The Proposed Classes.

Plaintiffs did not retain a defect expert and have no other way to prove their allegation of a common defect. This is a serious failing, which calls into question their adequacy to properly represent the interests of absent class members.

Then there is the issue of personal injury. When it suits their purposes, Plaintiffs play up the possibility of loose flakes or porcelain "blow[ing] onto and potentially contaminating food." (Dkt. 82 at 7-8.) However, the named plaintiffs all testified they are not seeking to recover for personal injury, and admit their complaints do "not allege or seek" that relief. (*See* Dkt. 71 Statement 11.) If, as Plaintiffs argue, "Wolf customers are not convinced that the shards exhibited from the imperfections are safe," (Dkt. 82 at 8), the named plaintiffs are not adequate representatives to get to the bottom of that issue because they are not pursuing those claims.

### III.  DAMAGES ARE NOT PROVABLE ON A CLASS-WIDE BASIS.

Plaintiffs' brief offers five potential damage theories, ranging from a full refund of the purchase price of a Wolf oven to a $50 damage award under New York GBL § 349(h), but nowhere tells the Court which theory they plan to pursue or why it would be an appropriate class-wide measure of damages.

With respect to the "price premium" theory, Wolf has moved to exclude the testimony of Plaintiffs' expert, Stefan Boedeker. Despite Plaintiffs' failure to prove a common defect in Wolf ovens and ranges, and despite Plaintiffs' concession that porcelain damage has "not yet appeared" in some proposed class members' ovens (Dkt. 82 at 1), Boedeker proposes to survey consumers about "an oven product that has these imperfections already at the point of purchase." (Boedeker Dep. at 232:9-16.) Moreover, Boedeker has barely begun his work and has yet to form any opinions beyond a general description of how he might conduct his survey.

Plaintiffs' remaining damage theories are similarly invalid:

(1) *Replacement value*. The cases cited by Plaintiffs involve products or product components that <u>could be repaired or replaced</u>. *E.g.*, *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 289 (N.D. Cal. 2017) (primary goal of class members was to obtain replacement flooring); *Falco v. Nissan N. Am. Inc.*, No. CV 13 00686DDP (MANx), 2016 WL 1327474, at *12 (C.D. Cal. Apr. 5, 2016) (plaintiffs sought compensation for cost to repair a timing chain system on vehicle). Here, at least one of the named plaintiffs testified that he does not want and would not accept a replacement cavity manufactured by Wolf (Dkt. 66-6 at 114:21-25), and Plaintiffs do not assert that it would be possible to acquire a cavity from a different manufacturer that would be compatible with their Wolf oven (it would not). There is no logical reason why the value Wolf internally assigns to a replacement cavity would be an appropriate measure of damages.

(2) *Statutory damages*. The $50 damage award under New York GBL§ 349(h) would require Plaintiffs to give up a claim for actual damages under the statute. Plaintiffs' willingness to accept the possibility of such a small award on behalf of class members whom they say suffered thousands of dollars in damages raises concerns about adequacy and superiority. *See Gardner v. Equifax Info. Servs.*, LLC, Civ. No. 06-3102 ADM/AJB, 2007 WL 2261688, at *5 (D. Minn. Aug. 6, 2007) (foregoing actual damages was inadequate protection of proposed class' interests); *In re Amla Litig.*, 328 F.R.D. 127, 133 (S.D.N.Y. 2018) (acknowledging that a class representative who gives up "potentially lucrative individual damages claims of absent class members in order to make the class action more feasible" may present a conflict, but finding none under the facts of the case, which included no opt outs in the year since certification).

(3) "*Value adjustment*." Plaintiffs misrepresent the opinions of Lee Robinette, an appraiser and expert Wolf retained regarding valuation issues. Contrary to Plaintiffs' claim, Robinette opined that there is no uniform loss in value, and that adjustments based on the condition of an oven—including crazing, cracking, and chipping—"can be infinitely variable." (Dkt. 85-11 at 6.) Thus, the value of an oven with crazing depends on a host of individualized factors. (*Id.* at 1.)

(4) *Full refund.* This proposed damages calculation (Pls.' Br. at 30) would be a stunningly inaccurate measure in this case. Plaintiffs' cited cases all involved a single-purpose product completely devoid of value, which is not the case here. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405 (plaintiffs alleged that "EZ Seed does not grow grass at all and thus is worthless"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) (plaintiffs alleged that homeopathic medicines "did not provide any of the advertised benefits and had no ancillary value"); *Khoday v. Symantec Corp.*, No. CIV. 11-180 JRT/TNL, 2014 WL 1281600, at *32 (D. Minn. Mar. 13, 2014) (full refund was appropriate for product with "no intrinsic value other than the advertised use").

34

There is more to a Wolf oven than the blue porcelain interior (like the ability to cook food). Robinette's opinion that Wolf ovens "have a value greater than $0.00"—*even with porcelain damage*—has gone unchallenged and unrebutted by Plaintiffs.  (Robinette Report at 3.)

## IV. PLAINTIFFS FAIL TO MEET THE 23(b)(2) CLASS REQUIREMENTS.

A Rule 23(b)(2) class is permissible only when "final injunctive relief or corresponding declaratory relief is appropriate," Fed. R. Civ. P. 23(b)(2), and the rule "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23 advisory committee's note (1966). The Supreme Court has unequivocally held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes,* 564 U.S. at 361. Among other justifications for its conclusion that "individualized monetary claims belong in Rule 23(b)(3)" rather than (b)(2), the Court noted that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to give them notice of the action." *Id.* at 2558. This is a class action for damages, and thus injunctive relief is inappropriate.

Plaintiffs also lack standing to seek an injunction, because the standing requirements for injunctive relief require the plaintiff to show that, absent an injunction, the plaintiff is likely to be misled again in the future. *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304 (S.D.N.Y. 2017); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014). ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████. *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476 (E.D. Pa. 2016).

## CONCLUSION

For all of the reasons stated above, the Court should deny class certification.

Dated: March 7, 2019

/s/ *Anne B. Sekel*
Anne B. Sekel
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: 212-338-3417
Email: asekel@foley.com

Megan R. Stelljes, Esq.
*(admitted pro hac vice)*
FOLEY & LARDNER LLP
150 East Gilman Street
Madison, Wisconsin 53703
Telephone: (608) 258-4346
Email: mstelljes@foley.com

*Attorneys for Defendant*

# APPENDIX A

# "Basis of the Bargain" Requirement

Pursuant to Section 2-313(1)(a) of the Uniform Commercial Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  As shown below, state law varies as to what a buyer must show in order to satisfy the "basis of the bargain" requirement.

| "Basis of the Bargain" Requirement | |
| --- | --- |
| **Standard** | **State**, Corresponding Authority |
| **Buyer must show that the representation was a factor in the purchase decision** | • **Arkansas,** *Ciba-Geigy Corp. v. Alter*, 834 S.W.2d 136, 147 (Ark. 1992)<br>• **Florida,** *Miles v. Kavanaugh*, 350 So.2d 1090, 1093 (Fla. Dist. Ct. App. 1977)<br>• **Kansas,** *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 524 (8th Cir. 2003) (applying Kansas law)<br>• **Nevada,** *Allied Fid. Ins. Co. v. Pico*, 656 P.2d 849, 850 (Nev. 1983)<br>• **North Carolina,** *Pake v. Byrd*, 286 S.E.2d 588, 589 (N.C. Ct. App. 1982)<br>•  **Oregon,** *Autzen v. John C. Taylor Lumber Sales, Inc.*, 572 P.2d 1322, 1325-26 (Or. 1977)<br>• **Utah,** *State ex rel. Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 314-15 (Utah 1988)<br>• **Wisconsin,** *Ewers v. Eisenzopf*, 88 Wis. 2d 482, 488, 276 N.W.2d 802, 805 (1979) |
| **Buyer must show that:**<br>• The representation was a factor in the purchase decision; <u>and</u><br>• The buyer specifically relied on the representation to make purchase decision | • **Delaware,** *Barba v. Carlson*, No. N11C-08-050 MMJ, 2014 Del. Super. LEXIS 198, at *16 (Del. Super. Ct. Apr. 8, 2014)<br>• **Georgia,** *Moore v. Berry*, 458 S.E.2d 879, 881 (Ga. App. 1995)<br>• **Kentucky,** *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1291 (6th Cir. 1982) (applying Kentucky law)<br>• **Maine,** *Maine Farmers Exchange v. McGillicuddy*, 697 A.2d 1266, 1268 (Me. 1997)<br>• **Michigan,** *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 370 (E.D. Mich. 1977) |

|  | <ul><li>**Mississippi,** *Global Truck & Equip. Co. v. Palmer Mach. Works, Inc.*, 628 F. Supp. 641, 652 (N.D. Miss. 1986)</li><li>**Montana,** *Schlenz v. John Deere Co.*, 511 F. Supp. 224, 228 (D. Mont. 1981)</li><li>**Nebraska,** *Hillcrest Country Club v. N.D. Judds Co.*, 461 N.W.2d 55, 61-62 (Neb. 1990)</li><li>**New York,** *Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 355 (E.D.N.Y. 2010)</li><li>**Pennsylvania,** *Jeter v. Brown & Williamson Tobacco Corp.*, 294 F. Supp. 2d 681, 687 (W.D. Pa. 2003), *aff'd*, 115 F. App'x 465 (3d Cir. 2004) (applying Pennsylvania law)</li><li>**Rhode Island,** *Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I. 1985)</li><li>**South Dakota,** *Schmaltz v. Nissen*, 431 N.W.2d 657, 661 (S.D. 1988)</li><li>**Tennessee,** *Fletcher v. Coffee Cty. Farmers Coop.*, 618 S.W.2d 490, 493 (Tenn. Ct. App. 1981)</li><li>**Texas,** *PPG Indus. v. JMB/Houston Ctrs. Partners Ltd.*, 146 S.W.3d 79, 99 (Tex. 2004)</li><li>**Vermont,** *Taylor v. Alfama*, 481 A.2d 1059, 1060 (Vt. 1984)</li><li>**Wyoming,** *Tribe v. Peterson*, 964 P.2d 1238, 1241 (Wyo. 1998)</li></ul> |
| **Buyer must show knowledge of representation (but need not show reliance)** | <ul><li>**Connecticut,** *Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 246 (D. Conn. 1998)</li><li>**Idaho,** *State v. Mitchell Constr. Co.*, 699 P.2d 1349, 1351 n.1 (Idaho 1984)</li><li>**New Hampshire,** *Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 502 (N.H. 2005)</li><li>**Washington,** *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986)</li></ul> |
| **Seller must prove that representation did not become a basis of the bargain** | <ul><li>**California,** *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (1985)</li><li>**Hawaii,** *Torres v. N.W. Eng'g Co.*, 949 P.2d 1004, 1014-15 (Haw. Ct. App. 1997)</li><li>**Virginia,** *Yates v. Pitman Mfg., Inc.*, 514 S.E.2d 605, 608 (Va. 1999)</li></ul> |

# APPENDIX B

# Notice of Breach of Warranty

Section 2-607 of the Uniform Commercial Code requires that the buyer give notice of breach to the seller within a reasonable time, but the nature of that requirement varies widely by jurisdiction.

As shown below, state law varies as to both the content of the notice and the individual to whom notice must be given.

| Content of Notice | |
|---|---|
| **Standard** | **State**, Corresponding Authority |
| **Buyer must provide notice sufficient to:**<br>• indicate an issue with the transaction; and<br>• transaction Must Be Watched<br><br>**\*Buyer <u>does not</u> need to expressly declare a breach or demand damages.** | • **Colorado,** *Prutch v. Ford Motor Co.*, 618 P.2d 657, 661 (Colo. 1980)<br>• **Connecticut,** *Stelco Indus. v. Cohen*, 438 A.2d 759, 761 (Conn. 1980)<br>• **Georgia,** *Atwood v. S.E. Bedding Co.*, 485 S.E.2d 217, 220 (Ga. Ct. App. 1997)<br>• **Hawaii,** Haw. Rev. Stat. § 490:2-607 cmt. 4<br>• **Indiana,** *Agrarian Grain Co. v. Meeker*, 526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988)<br>• **Maryland,** *Lynx, Inc. v. Ordnance Prods., Inc.*, 327 A.2d 502, 511 (Md. Ct. App. 1974)<br>• **Missouri,** *Kansas City Mun. Corp. v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993)<br>• **New Jersey,** *Duall Bldg. Restoration v. 1143 E. Jersey Ave. Assocs.*, 652 A.2d 1225, 1231 (N.J. Ct. App. 1995)<br>• **New Mexico,** *State ex rel. Concrete Sales & Equip. Rental Co. v. Kent Nowlin Constr., Inc.*, 746 P.2d 645, 648-49 (N.M. 1987)<br>• **New York,** *Int'l Paper Co. v. Margrove, Inc.*, 348 N.Y.S.2d 916, 919 (N.Y. Sup. Ct. 1973)<br>• **North Dakota,** *Indus. Fiberglass v. Jandt*, 361 N.W.2d 595, 597-98 (N.D. 1985)<br>• **Ohio,** *AGF, Inc. v. Great Lakes Heat Treating Co.*, 555 N.E.2d 634, 636-37 (Ohio 1990)<br>• **Oregon,** *Or. Lumber Co. v. Dwyer Overseas Timber Prods. Co.*, 571 P.2d 884, 886-87 (Or. 1977)<br>• **Pennsylvania,** *R.I. Lampus Co. v. Neville Cement Prods. Corp.*, 336 A.2d 397, 404-05 (Pa. Super. 1975) |

| | |
|---|---|
| | • **Rhode Island,** *Lariviere v. Dayton Safety Ladder Co.*, 525 A.2d 892, 898 (R.I. 1987)<br>• **South Carolina,** *United States v. S. Contracting of Charleston, Inc.*, 862 F. Supp. 107, 111 (D.S.C. 1994)<br>• **Vermont,** *Mainline Tractor & Equip. Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1108-09 (D. Vt. 1996)<br>• **Virginia,** *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 265 (4th Cir. 1998) (applying Virginia law)<br>• **Washington,** *Superwood Co. v. Slam Brands, Inc.*, No. C12-1109JLR, 2013 U.S. Dist. LEXIS 116239, at \*9-10 (W.D. Wash. Aug. 15, 2013)<br>• **Wisconsin,** *Paulson v. Olson Implement Co.*, 107 Wis. 2d 510, 523 (Wis. 1982)<br>• **Wyoming,** *Petro-Chem, Inc. v. A.E. Staley Mfg. Co.*, 686 P.2d 589, 592 (Wyo. 1984) |
| **Buyer must**:<br>• inform seller of the issue with the transaction<br>• inform of the intention to assert legal rights <u>or</u> seek damages for breach of warranty | • **Arkansas,** *James A. Rogers Excavating, Inc. v. R.A. Young & Son*, 625 S.W.2d 560, 562 (Ark. Ct. App. 1981)<br>• **California,** *K&M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982) (applying California law)<br>• **Maine,** *M.K. Assocs. v. Sowell Prods., Inc.*, 697 F. Supp. 20, 22 (D. Me. 1988)<br>• **Massachusetts,** *Atl. Pipe Corp. v. R.J. Longo Constr. Co.*, 622 N.E.2d 279, 281 (Mass. Ct. App. 1993)<br>• **Montana,** *Waddell v. Am. Breeders Serv., Inc.*, 505 P.2d 417, 421 (Mont. 1973)<br>• **South Dakota,** *Hepper v. Triple U Enters.*, 388 N.W.2d 525, 527 (S.D. 1986) |
| **A legal complaint filed in reasonable time satisfies requirement** | • **Alaska,** *Shooshanian v. Wagner*, 672 P.2d 455, 462 (Alaska 1983) ("The majority of courts do not allow the filing of a complaint to serve as notice. We disagree, and are of the opinion that a complaint filed by a retail consumer *within a reasonable period after the goods are accepted* satisfies the statutory notice requirement.") (emphasis added)<br>• **Arizona,** *Pace v. Sagebrush Sales Co.*, 560 P.2d 789, 792 (Ariz. 1977) ("[W]e agree . . . that the requirement |

|  | of notice may indeed be fulfilled by the pleadings themselves.  However, . . . that notice, by way of the pleadings, was not, as a matter of law, made within a reasonable time after [the buyer] discovered or should have discovered the breach.") <br> • **North Carolina,** *Maybank v. S.S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981) (permitting pleadings to serve as notice, but requiring buyer to prove at trial that such notice was "seasonably given") <br> • **Tennessee,** *Smith v. Pfizer, Inc.*, 688 F. Supp. 2d 735, 750-51 (M.D. Tenn. 2010) (permitting a plaintiff to satisfy the notice requirement through the filing of a lawsuit, but noting that Tennessee courts had not squarely decided the issue and that evaluating "reasonable time" under UCC § 2-607(3)(a), remains an individualized inquiry) |
|---|---|
| **States Requiring New Notice for Replacement Goods** | • **Florida,** *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004) (applying Florida law) <br> • **Ohio,** *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 825-27 (6th Cir. 1978) (applying Ohio law) <br> • **Virginia,** *Aqualon Co.*, 149 F.3d at 265 (applying Virginia law) |
| **States Contain Conflicting Decisions about Which Standard Applies** | • **Michigan,** *Am. Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 255 (Mich. App. 2002) (noting room for disagreement regarding whether Michigan follows a strict or lenient standard for the content of the notice) <br> • **Kansas,** *compare Graham by Graham v. Wyeth Labs., a Div. of Am. Home Products Corp.*, 666 F. Supp. 1483, 1500 (D. Kan. 1987) (finding complaint itself satisfied notice requirement) *with Agristor Leasing v. Meuli*, 634 F. Supp. 1208, 1220-21 (D. Kan. 1986) (observing that notice of breach is pre-condition for filing lawsuit) |

| **Individual To Be Notified** | |
|---|---|
| **Standard** | **State**, Corresponding Authority |
| **Direct Notice to Manufacturer Required** | • **Alabama,** *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1284-85 (M.D. Ala. 2001)<br>• **Alaska,** *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 285 (Alaska 1976)<br>• **Arkansas,** *Cotner v. Int'l Harvester Co.*, 545 S.W.2d 627, 630 (Ark. 1977)<br>• **Illinois,** *Connick v. Suzuki Motors*, 675 N.E.2d 584, 590-91 (Ill. 1996), *rev'd in part on other grounds*, 675 N.E.2d 584 (Ill. 1996)<br>• **Wyoming,** *Western Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 810-11 (Wyo. 1980) |
| **Notice to Intermediate Seller Sufficient** | • **California,** *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1286 (S.D. Ga. 2010) (applying California law)<br>• **Colorado,** *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 206 (Colo. 1984)<br>• **Connecticut,** *Tomczuk v. Cheshire*, 217 A.2d 71, 73 (Conn. 1965)<br>• **Kansas,** *Carson v. Chevron Chem. Co.*, 635 P.2d 1248, 1256 (Kan. Ct. App. 1981)<br>• **Maryland,** *Firestone Tire & Rubber v. Cannon*, 452 A.2d 192, 198 (Md. Ct. App. 1982), *aff'd*, 456 A.2d 930 (Md. 1983)<br>• **Missouri,** *Kansas City Mun. Corp. v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993)<br>• **New Hampshire,** *ACE Am. Ins. Co. v. Fountain Powerboats, Inc.*, No. 06-cv-66, 2007 U.S. Dist. LEXIS 62818, at *8-11 (D.N.H. Aug. 24, 2007)<br>• **New Jersey,** *Duall Bldg. Restoration v. 1143 E. Jersey Ave. Assocs.*, 652 A.2d 1225, 1230 (N.J. Super. Ct. App. 1995)<br>• **New York,** *Hubbard v. Gen. Motors Corp.*, No. 95-civ-4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *13 (S.D.N.Y. May 22, 1996)<br>• **South Carolina,** *Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655, 663 (S.C. Ct. App. 1992) |

| | |
|---|---|
| **Notice to Intermediate Seller and the Intermediate Seller is an Agent of Manufacturer** | • **Minnesota,** *Church of Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 6 (Minn. 1992), *overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000)<br>• **South Dakota,** *Bennett v. Jansma*, 329 N.W.2d 134, 136 (S.D. 1983) |
| **State(s) with Conflicting Decisions about Which Standard Applies** | • **Texas,** *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 706-07 (5th Cir. 2014) (Texas's highest court has not decided the issue, and its intermediate courts are split, though the "majority" of those intermediate courts require notice to the immediate seller and manufacturer) |

# APPENDIX C

# Statutes of Limitations for Breach of Warranty Claims

Plaintiffs' class definitions include no defined time period.  Statutes of limitations for breach of warranty claims vary by jurisdiction. The following shows the state variance of two issues, limitations periods and tolling doctrines.

| Limitations Periods ||
|---|---|
| **Statute of Limitations Period** | **State**, Corresponding Authority |
| **Six or More Years** | <ul><li>**Mississippi,** Miss. Code Ann. § 75-2-725(1)</li><li>**Rhode Island,** R.I. Gen. Laws § 6A-2-725(5))</li><li>**South Carolina,** S.C. Code Ann. § 36-2-725(1)</li></ul> |
| **Five Years** | <ul><li>**Florida,** Fla. Stat. § 95.11(2)(b)</li><li>**Iowa,** Iowa Code § 614.1(4)</li><li>**Oklahoma,** Okla. Stat. tit. 12A § 2-725(1)</li></ul> |
| **Four Years** | <ul><li>**Alabama,** Ala. Code § 7-2-725(1)</li><li>**Alaska,** Alaska Stat. § 45.02.725(a)</li><li>**Arizona,** Ariz. Rev. Stat. Ann. § 47-2725(A)</li><li>**Arkansas,** Ark. Code Ann. § 4-2-725(1)</li><li>**California,** Cal. Com. Code § 2725(1)</li><li>**Connecticut,** Conn. Gen. Stat. § 42a-2-725(1)</li><li>**Delaware,** 6 Del. Code Ann. tit. § 2-725(1)</li><li>**District of Columbia,** D.C. Code § 28:2-725(1)</li><li>**Georgia,** Ga. Code Ann. § 11-2-725(1)</li><li>**Hawaii,** Haw. Rev. Stat. § 490:2-725(1)</li><li>**Idaho,** Idaho Code § 28-2-725(1)</li><li>**Illinois,** 810 Ill. Comp. Stat. § 5/2-725(1)</li><li>**Indiana,** Ind. Code § 26-1-2-725(1)</li><li>**Kansas,** Kan. Stat. Ann. § 84-2-725(1)</li><li>**Kentucky,** Ky. Rev. Stat. Ann. § 355.2-725(1)</li><li>**Maine,** 11 Me. Rev. Stat. Ann. tit. § 725(1)</li><li>**Maryland,** Md. Code Ann., Com. Law § 2-725(1)</li><li>**Massachusetts,** Mass. Gen. Laws Ann. ch. 106 § 2-725(1)</li><li>**Michigan,** Mich. Comp. Laws § 440.2725(1)</li><li>**Minnesota,** Minn. Stat. § 336.2-725(1)</li><li>**Missouri,** Mo. Rev. Stat. § 400.2-725(1)</li><li>**Montana,** Mont. Code Ann. § 30-2-725(1)</li><li>**Nebraska,** Neb. Rev. Stat. § 2-725(1)</li></ul> |

| | |
|---|---|
| | • **Nevada,** Nev. Rev. Stat. § 104.2725(1)<br>• **New Hampshire,** N.H. Rev. Stat. Ann. § 382-A:2-725(1)<br>• **New Jersey,** N.J. Stat. Ann. § 12A:2-725(1)<br>• **New Mexico,** N.M. Stat. Ann. § 55-2-725(1)<br>• **New York,** N.Y. U.C.C. Law § 2-725(1)<br>• **North Carolina,** N.C. Gen. Stat. § 25-2-725(1)<br>• **North Dakota,** N.D. Cent. Code § 41-02-104(1)<br>• **Ohio,** Ohio Rev. Code Ann. § 1302.98(A)<br>• **Oregon,** Or. Rev. Stat. § 72.7250(1)<br>• **Pennsylvania,** 13 Pa. Cons. Stat. § 2725(a)<br>• **South Dakota,** S.D. Codified Laws § 57A-2-725(1)<br>• **Tennessee,** Tenn. Code Ann. § 47-2-725(1)<br>• **Texas,** Tex. Bus. & Com. Code Ann. § 2.725(a)<br>• **Utah,** Utah Code Ann. § 70A-2-725(1)<br>• **Vermont,** Vt. Stat. Ann. tit. 9A, § 2-725(1)<br>• **Virginia,** Va. Code Ann. § 8.2-725(1)<br>• **Washington,** Wash. Rev. Code § 62A.2-725(1)<br>• **West Virginia,** W. Va. Code § 46-2-725(1)<br>• **Wyoming,** Wyo. Stat. Ann. § 34.1-2-725(a) |
| **Three Years** | • **Colorado,** Colo. Rev. Stat. § 13-80-101(1)(a) |

| **Tolling Doctrines** | |
|---|---|
| **Standard** | **State**, Corresponding Authority |
| **Statute of Repose with Tolling Unavailable** | • **Utah,** *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984) |
| **Tolling Available, Only if**<br>1. Defendant misrepresented or concealed to induce plaintiff to delay the suit<br>2. Plaintiff relied on the misrepresentation and/or concealment and delayed the suit | • **Colorado,** *Smith v. Boyett*, 908 P.2d 508, 512 (Colo. 1995)<br>• **Hawaii,** *Au v. Au*, 626 P.2d 173, 178-79 (Haw. 1981)<br>• **Idaho,** *Winn v. Campbell*, 184 P.3d 852, 856 (Idaho 2008))<br>• **Kansas,** *Levi Strauss & Co. v. Sheaffer*, 650 P.2d 738, 744 (Kan. App. 1982)<br>• **Montana,** *Yellowstone Conference of United Methodist Church v. D.A. Davison, Inc.*, 741 P.2d 794, 798 (Mont. 1987) |

| | |
|---|---|
| | • **South Dakota,** *L.R. Foy Constr. Co., Inc. v. S.D. State Cement Plant Com'n*, 399 N.W.2d 340, 344-45 (S.D. 1987)<br>• **Washington,** *Del Guzzi Const. Co. v. Global N.W. Ltd.*, 719 P.2d 120, 125-26 (Wash. 1986) |
| **Tolling Available, Only if**<br>  1. Defendant misrepresented or concealed a material fact<br>  2. Plaintiff relied on the misrepresentation and/or concealment<br><br>*Plaintiff does not need to prove defendant's intent in misrepresenting and/or concealing was to prevent plaintiff from bringing timely suit. | • **Alaska,** *Williams v. Williams*, 129 P.3d 428, 432 (Alaska 2006)<br>• **California,** *Mills v. Forestex Co.*, 108 Cal. App. 5th 625, 652 (Ct. App. 2003)<br>• **Oregon,** *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239, 1241-42 (Or. 1972)<br>• **Wyoming,** *Olson v. A.H. Robins Co.*, 696 P.2d 1294, 1299 (Wyo. 1985) |
| **Tolling Available if**<br>• Non-disclosure of known defect | • **Arizona,** *Anson v. Am. Motors Corp.*, 747 P2d 581, 589-90 (Ariz. Ct. App. 1987) |
| **Tolling by <u>Silence</u> if Fiduciary Relationship Exists between Parties** | • **New York,** *Rockwell v. Ortho Pharm. Co.*, 510 F. Supp. 266, 270 (N.D.N.Y. 1981)<br>• **New Mexico,** *Con'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 77 (N.M. 1993) |
| **Tolling by <u>Affirmative Act</u> of Defendant** | • **Montana,** *Yellowstone Conference of United Methodist Church*, 741 P.2d 794, 798 (Mont. 1987) |
| **Repair Efforts Toll** | • **California,** *Cardinal Health 301 v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 133-34 (2008)<br>• **Minnesota,** *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789-90 (8th Cir. 2009) (applying Minnesota law) |

| | |
|---|---|
| **Repair Efforts <u>Do Not</u> Toll** | <ul><li>**Idaho,** *J.R. Simplot Co. v. Chemetics Int'l, Inc.*, 887 P.2d 1039, 1042 (Idaho 1994)</li><li>**New York,** *N. Am. Commc'ns, Inc. v. InfoPrint Solutions Co.*, 817 F. Supp. 2d 623, 633 (W.D. Pa. 2011) (applying New York law and noting that "[t]he majority of jurisdictions" decline to toll the statute of limitations on account of repair efforts)</li><li>**Texas,** *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 96 (Tex. 2004)</li><li>**Washington,** *Holbrook, Inc. v. Link-Belt Constr. Equip. Co.*, 12 P.3d 638, 643-44 (Wash. Ct. App. 2000)</li></ul> |