UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— x

IVAN and MELANIE KAIL, Individually and :    Civil Action No. 2:15-cv-03513-JS-GRB
on Behalf of All Others Similarly Situated, :
                         :    <u>CLASS ACTION</u>
           Plaintiffs, :
                         :
      vs. :
                         :
WOLF APPLIANCE, INC., :
                         :
           Defendant. :
——————————————————

BARRY GARFINKLE, Individually and on :    Civil Action No. 2:17-cv-03753-JS-GRB
Behalf of All Others Similarly Situated, :
                         :    <u>CLASS ACTION</u>
           Plaintiff, :
                         :
      vs. :
                         :
WOLF APPLIANCE, INC., :
                         :
           Defendant. :
——————————————————

FREDERICK I. SHARP, Individually and on :    Civil Action No. 2:18-cv-01723-JS-GRB
Behalf of All Others Similarly Situated, :
                         :    <u>CLASS ACTION</u>
           Plaintiff, :
                         :
      vs. :
                         :
WOLF APPLIANCE, INC., :
                         :
           Defendant. :
——————————————————— x

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION AND FOR APPOINTMENT OF CLASS REPRESENTATIVES
AND CLASS COUNSEL

# TABLE OF CONTENTS

**Page**

I.     COMMON QUESTIONS PREDOMINATE INDIVIDUAL QUESTIONS ....................1

II.    INDIVIDUAL INQUIRY QUESTIONS CAN BE FASHIONED OUT OF ANY
SET OF FACTS; THEY DO NOT DEFEAT CERTIFICATION HERE ..........................3

     A.    Blue Porcelain Was a Focus of Wolf's Marketing from the Time the
Attribute Was Introduced to the Present ...................................................4

     B.    Where, How and Why Imperfections Appear is Consistent; Vague
Possibilities as to Other Sources do not Defeat Predominance ..............................5

     C.    Not Every Class Member Needs to Show That Imperfections Have
Manifested for Class Certification ............................................................5

III.    DAMAGES CALCULATIONS DO NOT DEFEAT PREDOMINANCE ......................6

IV.    PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF............................9

V.    PLAINTIFFS' CLAIMS CAN BE CERTIFIED ON A NATIONWIDE BASIS ..............9

     A.    The Law of this Circuit Supports Nationwide Certification .................................10

     B.    Wolf Has Not Shown That Any Purported Material Conflicts Undermine a
Nationwide Class .........................................................................12

VI.    PLAINTIFFS ARE TYPICAL OF THE PUTATIVE CLASSES ....................................13

VII.    PLAINTIFFS ARE ADEQUATE REPRESENTATIVES ...............................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Honda Motor Co. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) ........................................................2

*Anderson v. Bungee Int'l Mfg. Corp.*,
  44 F. Supp. 2d 534 (S.D.N.Y. 1999)...............................................4

*Arnold v. Krause, Inc.*,
  233 F.R.D. 126 (W.D.N.Y. 2005).....................................................5

*Beck-Ellman v. Kaz USA, Inc.*,
  283 F.R.D. 558 (S.D. Cal. 2012) ...................................................15

*Belfiore v. Procter &Gamble Co.*,
  311 F.R.D. 29 (E.D.N.Y. 2015) .......................................................3

*Brown v. Electrolux Home Products, Inc.*,
  817 F.3d 1225 (11th Cir. 2016) .......................................................5

*Cates v. Whirlpool Corp.*
  No. 15-CV-5980, 2017 WL 1862640
  (N.D. Ill. May 9, 2017) ...................................................................2

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)....................................................................6

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) .........................................................14

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................15

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) .....................................................12

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) ....................................3, 11, 12, 13

*Elias v. Ungar's Food Prods., Inc.*,
  252 F.R.D. 233 (D.N.J. 2007)........................................................12

*Elkind v. Revlon Consumer Prod. Corp.*,
  No. 14-CV-2484(JS)(AKT), 2017 WL 9480894
  (E.D.N.Y. Mar. 9, 2017) ...............................................................12

Page

*Fla. Dep't of Agric. & Consumer Servs. v. Lopez-Brignoni*,
    114 So. 3d 1138 (Fla. Dist. Ct. App. 2012) ...................................................7

*Frank v. DaimlerChrysler Corp.*,
    292 A.D.2d 118 (1st Dep't 2002) ...................................................5, 6

*Gardner v. Equifax Info. Servs., LLC*,
    No. 06-3102 ADM/AJB, 2007 WL 2261688
    (D. Minn. Aug. 6, 2007) ...................................................7

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................4, 15

*Haley v. Kolbe & Kolbe Millwork Co.*,
    No. 14-CV-99-BBC, 2016 WL 1180203
    (W.D. Wis. Mar. 25, 2016) ...................................................2

*Harrison v. Great Springwaters of Am., Inc.*,
    No. 96-CV-5110, 1997 WL 469996
    (E.D.N.Y. June 18, 1997) ...................................................15

*Hart v. BHH, LLC*,
    No. 15-CV-4804, 2017 WL 2912519
    (S.D.N.Y. July 7, 2017) ...................................................12

*Hasemann v. Gerber Prods. Co.*,
    No. 15-CV-2995(MKB)(RER), 2019 WL 1434263
    (E.D.N.Y. Mar. 31, 2019) ...................................................14

*IBM Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004) ...................................................11

*In re AMLA Litig.*,
    328 F.R.D. 127 (S.D.N.Y. 2018) ...................................................7

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.*,
    288 F.3d 1012 (7th Cir. 2002) ...................................................11

*In re Crazy Eddie Sec. Litig.*,
    135 F.R.D. 39 (E.D.N.Y. 1991) ...................................................11, 12

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ...................................................4

**Page**

*In re Energy Sys. Equip. Leasing Sec. Litig.*,
    642 F.Supp. 718 (E.D.N.Y. 1986) ........................................................................13

*In re Jackson Nat'l Life Ins. Co. Premium Litig.*,
    183 F.R.D. 217 (W.D. Mich. 1998) .....................................................................11

*In re LILCO Sec. Litig.*,
    111 F.R.D. 663 (E.D.N.Y. 1986) .........................................................................11

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .........................................................................11

*In re Nissan Radiator/Transmission Cooler Litig.*,
    No. 10-CV-7493(VB), 2013 WL 4080946
    (S.D.N.Y. May 30, 2013)......................................................................................12

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .......................................................................3, 6

*In re U.S. Foodservice Inc. Pricing Litig.*,
    No. 3:06-CV-1657 (CFD), 2011 WL 6013551
    (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013)...........................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. N.Y. 2001) .......................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .............................................................................3, 6

*Koppel v. 4987 Corp.*,
    191 F.R.D. 360 (S.D.N.Y. 2000) .........................................................................11

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ..................................................................7, 9, 10

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) ...........................................................................11

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir. 2016)................................................................................14

*McBean v. City of N.Y.*,
    228 F.R.D. 487 (S.D.N.Y. 2005) .........................................................................15

Page

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)................................................................15

*Mednick v. Precor, Inc.*,
   No. 14-C-3624, 2016 WL 3213400
   (N.D. Ill. June 10, 2016) ...............................................................2, 3

*Mednick v. Precor, Inc.*,
   No. 14-C-3624, 2017 WL 2619139
   (N.D. Ill. June 16, 2017) ...............................................................3, 8

*Norton v. Auto Club Grp. Ins. Co.*,
   No. 02:04-CV-40376, 2009 WL 884129
   (E.D. Mich. Mar. 30, 2009) ............................................................15

*Padilla v. Maersk Line, Ltd.*,
   271 F.R.D. 444 (S.D.N.Y. 2010) .......................................................4

*Petrosino v. Stearn's Prods., Inc.*,
   No. 16-CV-7735 (NSR), 2018 WL 1614349
   (S.D.N.Y. Mar. 30, 2018) ..................................................................9

*Pettit v. Procter & Gamble Co.*,
   No. 15-cv-02150-RS, 2017 WL 3310692
   (N.D. Cal. Aug. 3, 2017)....................................................................9

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).........................................................................10

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)............................................................14

*Rodriguez v. It's Just Lunch, Int'l*,
   300 F.R.D. 125 (S.D.N.Y. 2014) .....................................................12

*Sabol v. Ford Motor Co.*,
   No. C.A. No. 14-6654, 2015 WL 4378504
   (E.D. Pa. July 16, 2015).....................................................................4

*Schwab v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 992 (E.D.N.Y. 2006) .............................................15

*Simon v. Philip Morris Inc.*,
   124 F. Supp. 2d 46 (E.D.N.Y. 2000) ...............................................10

**Page**

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ..............................................................10, 11, 13

*Sundberg v. Keller Ladder*,
189 F. Supp. 2d 671 (E.D. Mich. 2002) ...............................................................15

*Szabo v. Bridgeport Machines, Inc.*,
249 F.3d 672 (7th Cir. 2001) ...............................................................................11

*Zhang v. Wang*,
No. 05-CV-3888 (FB)(LB), 2006 WL 2927173
(E.D.N.Y. Oct. 12, 2006) ......................................................................................11

Federal Rule of Civil Procedure
Rule 23(b)(2) ..........................................................................................................9
Rule 23(b)(3) ..........................................................................................................9

## I.       COMMON QUESTIONS PREDOMINATE INDIVIDUAL QUESTIONS

Defendant acknowledges the imperfections in Wolf's blue oven interiors,[1] and provided

Plaintiffs with evidence and testimony substantiating: the Company's awareness of the problem

for approximately a decade; that the Company's resident porcelain expert repeatedly flagged the

problem and known cause; that Wolf internally deemed the problem to be massive and,

according to certain Wolf representatives, Wolf's single-largest service issue; that Wolf rejected

the initiative of performing a root cause analysis to find a solution to the problem so that future

purchasers would not experience the same visual blemishes in their oven cavities; that the

imperfections consistently appear at the front corners of the sump at the bottom of the cavities;

that the imperfections will start as a craze, then graduate to a crack and then further graduate to

chipping; and that the imperfections impact all of Wolf's ovens, regardless of size or model.[2]

Plaintiffs have demonstrated – through Defendant's own words and evidence – that the

process and materials used to coat the oven cavities of the Wolf Ovens' will inherently cause

cracking, crazing, etc.  Class Cert. Ex. 4 at 73:7-16; ECF No. 87-7 ("Sheldon Report") at 9-10.

Defendants' representatives' testimony fully supports the fact that porcelain, as a ceramic, will

characteristically manifest imperfections.   *Id.*[3]   And because Wolf's ovens' interiors have a

---

[1] Plaintiffs' Class Certification Motion, ECF No. 82 at 4-7 ("Class Cert. Mem.") ("Class Cert. Ex. __" refers to the Exhibits submitted with Plaintiffs' Class Cert. Mem., ECF Nos. 83-85; "Def. Mem." refers to Wolf's Opposition to Plaintiffs' Class Cert. Mem.; references to "Ex.__" are to the Declaration of Vincent M. Serra in Support of Plaintiffs' Reply Memorandum In Further Support of Plaintiffs' Class Cert. Mem.), Class Cert. Ex. 7 at KAIL0000389 (detailing the importance and aesthetic value stressed and marketed by Wolf as "signature" attribute); Class Cert Ex. 4 at 29:24-25 (referred to by Wolf representatives as a "trademark" feature unique to Wolf's ovens).

[2] Prior briefing submitted in this action details each point, as well as the evidence in support, and for the sake of brevity coupled with the page limitations for this Reply, Plaintiffs respectfully incorporate those arguments and corresponding evidence in support by reference. *See*, *e.g*., Class Cert. Mem. at 3-4 (highlighting the uniqueness, and distinctive marketing, of pristine blue porcelain to Wolf); *id.* at 10 (porcelain expert Rinehart's repeated requests to recognize the problem and try to fix it); *id.* at 4-10 (the magnitude of the imperfections problem); Class Cert. Ex. 12 and ECF No. 59-2, 59-3, 59-5, 59-6 (the consistent location and visual nature of the imperfections); and Class Cert. Mem. at 4, 6 (no Wolf oven containing blue porcelain will escape the manifestation of the cracking and crazing).

[3] Wolf's porcelain enameled oven cavities will inevitably crack or craze due to heating of the oven which causes the steel and glass to grow or thermally expand.  *See* Class Cert. Ex. 4 at 73:7-16.  Because glass and steel do not expand at the same rate, glass "cracks when heat upon it moves the metal below it faster than the glass itself can hold it down."  *Id.*  This process, as applied to Wolf's ovens, is unavoidable. *See id.* (Wolf's porcelain expert

distinctive pristine blue color, which is unflecked,[4] the imperfections which occur in all oven interiors are more visible in Wolf's "signature" blue cavities.[5]

Based on these set of facts, and supporting evidence, common questions (*see* Class Cert. Ex. 1) can be answered in one stroke.  The case law relied on by Defendant does not apply to the common questions (or answers) at issue before this Court. Def. Mem. at 8; *see Haley v. Kolbe & Kolbe Millwork Co.*, No. 14-CV-99-BBC, 2016 WL 1180203 (W.D. Wis. Mar. 25, 2016) (failure to account for installation variability); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 819 (7th Cir. 2010) (no evidence that the defective ball bearings were actually installed in vehicles at issue).  Here, questions as to installation or the existence of a defective component are simply not at issue.  As for uniformity across Wolf's ovens, and contrary to the holding in *Cates v. Whirlpool Corp.* (Def. Mem. at 8), the imperfections occur across all Wolf oven models.  *See* No. 15-CV-5980, 2017 WL 1862640, at *19 (N.D. Ill. May 9, 2017) (Court observed that Plaintiffs offered "no credible evidence showing that a uniform defect exists across all ovens.").

To defeat commonality, Defendant relies on an early decision in the *Mednick v. Precor, Inc.*, No. 14-C-3624, 2016 WL 3213400 (N.D. Ill. June 10, 2016) (Def. Mem. at 8-9) matter, but ignores the subsequent history, including reconsideration by the Court in Plaintiffs' favor. *Precor* involved heart rate sensors attached to treadmills manufactured by defendant.  There was no evidence that the inaccuracy of the touch sensors was widespread, impacted more than one model treadmill or affected *all* machines.  Despite these ostensible deficiencies (and what

---

confirmed that there is no way to avoid thermal expansion that causes crazing and cracking); *see also id*. at 108:16-110:19 (describing the progression of crazing, chipping and cracking through "continuous movement of the [oven cavity] during heating cycle" and verifying that damage to the outside edges of the oven cavities (*i.e*., the location at issue here) is "mainly caused by movement of the oven floor."). *Id*.

[4] Class Cert. Ex. 4 at 198:17-24 (explaining that "flecked blue porcelain has white mixed in with the blue in order to break up the coloring to hide defects" such as "crazing and cracking").

[5] Wolf's materials expert, Dr. Sheldon, reinforced this position in his report and findings.  Sheldon Report at 5.  And Defendant's own briefing acknowledges that all porcelain ovens will crack and craze.  Def. Mem. at 2 (conceding that imperfections will manifest through tension as "heat produced by ovens causes neighboring steel to expand at a different rate than porcelain").

- 2 -

Defendant's memorandum omitted), *the Precor Court ultimately certified the class*. *Mednick v. Precor, Inc.*, No. 14-C-3624, 2017 WL 2619139 (N.D. Ill. June 16, 2017) (*Mednick II*).[6]

## II.   INDIVIDUAL INQUIRY QUESTIONS CAN BE FASHIONED OUT OF ANY SET OF FACTS; THEY DO NOT DEFEAT CERTIFICATION HERE

All class members purchased an oven that was sold by Wolf through advertising that focused on the uniqueness of Wolf's blue porcelain.  As soon as they purchased the oven – regardless of when the manifestation appeared, or if it appeared at all yet – they paid too much. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) ("Because all Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class.").  Usage or habits are not individual inquiries for the purposes of class certification.  *Belfiore v. Procter &Gamble Co.*, 311 F.R.D. 29, 69 (E.D.N.Y. 2015) (rejecting usage- or experience-based individual inquiries at the class certification stage); *In re Whirlpool*, 722 F.3d at 854 (rejecting consumer usage argument).

The question as to the deceptiveness of Wolf's marketing of its ovens' "signature" cobalt blue porcelain interiors is common to all class members.  Individual inquiries have no bearing on the common answer.  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) (certifying the false advertising question); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (same).

Distinctions among purchase decisions, advertising exposure, specific reliance on precise advertising brochures, consumers' relationships with Wolf, etc., do not defeat commonality.[7]

---

[6] The *Precor* Court upheld and adopted a "full refund damages model" (discussed *infra*, §III at 8) and rejected the notion that plaintiffs got at least some form of benefit.  *Mednick II* at *9-*10.  The Court also noted that Plaintiffs can later fall back on a "partial refund damages model."  *Id*.  The full versus partial refund analysis does not preclude certification, the Court said, as it can be handled during the merits stage of the case.

[7]  Wolf ignores the fact that the majority of Plaintiffs' claims, including the GBL §349, breach of warranty and unjust enrichment claims, do not require Plaintiffs to show the element of reliance.

*See Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 399-400 (S.D.N.Y. 2016).  In other words, "commonality does not mean that all issues must be identical as to each member." *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010).

### A.    Blue Porcelain Was a Focus of Wolf's Marketing from the Time the Attribute Was Introduced to the Present

Wolf suggests that the advertising for the marketing for its pristine and premium blue porcelain oven interiors *may* have changed over the years and, therefore, Plaintiffs and absent class members *may* not have seen the same misrepresentations. Def. Mem. at 12.  Wolf does not, however, say what changes were made and whether (if there were changes) they applied to the blue porcelain or the advertising claims at issue in this litigation.  And, to the extent minor changes were made (which has not been shown), it is not fatal to Plaintiffs' claims.  *See In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 60, n.12 (D.N.H. 2015) ("that the exact language Dial used to promote Dial Complete was modified over the years does not alter the fact that the message Dial conveyed about Dial Complete was uniform and consistent").

Defendant's reliance on *Sabol v. Ford Motor Co.*, No. C.A. No. 14-6654, 2015 WL 4378504 (E.D. Pa. July 16, 2015) and *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534 (S.D.N.Y. 1999), both decided at the summary judgment phase, are unavailing.  In *Sabol*, for example, the Court noted that words such as "safe" and "reliable" – without anything more – do not equate to expressly warranting a defect-free engine.  2015 WL 4378504 at *3-*4.  Here, as alleged and shown in Plaintiffs' opening memorandum, Wolf promotes its pristine and "signature" blue porcelain oven interiors as part of its emphasis on aesthetics and its premium brand and superior quality materials.  *See* Class Cert. Mem. at 2-3; Garfinkle Cpt. at ¶¶8-12.  There is no question it was a focal point of Wolf's marketing and was consistent at all relevant times.

**B.     Where, How and Why Imperfections Appear is Consistent; Vague Possibilities as to Other Sources do not Defeat Predominance**

Wolf suggests that there are individualized questions about whether the imperfections are rooted in a common cause and intimates that Plaintiffs' misuse – "(impact damage)" (Def. Mem. at 8) – is one possible explanation.  Nothing in the record, however, supports misuse on the part of any of the Plaintiffs.  To the contrary, Plaintiffs allegations and testimony[8] confirm that there was no misuse or alternate causes for the imperfections.  Defendant's attempt to deflect is equally unsupported by law, as usage habits are not germane to class certification, as misuse is an issue of fact that does not defeat predominance or, more generally, class certification.[9] Indeed, Plaintiffs' causes of action do not require them to explain – particularly to Wolf – why Defendant's products manifest aesthetic deficiencies.  *Arnold v. Krause, Inc*., 233 F.R.D. 126, 132 (W.D.N.Y. 2005) (plaintiffs' testimony about the use of a defective product can be sufficient to establish breach of express and implied warranty claims).  Defendant has not cited to any decision requiring Plaintiffs to carry the burden for that proof.

**C.     Not Every Class Member Needs to Show That Imperfections Have Manifested for Class Certification**

Defendant claims that each Wolf oven owner must own an oven that manifested crazing in order to be a member of the class.  As its sole support, Wolf relies solely on the New York State Court decision in *Frank v. DaimlerChrysler Corp*., 292 A.D.2d 118 (1st Dep't 2002) (decided at the motion dismiss stage).  In *Frank*, however, the Court's decision did not hinge on whether the alleged flaw manifested for every purchaser.  Rather, the Court in *Frank* focused on the uniqueness of the case in that "Plaintiffs do not allege that *any* seat has failed."  292 A.D.2d

---

[8]  Counsel for Wolf delved into possible causes for the appearance of imperfections in Plaintiffs' oven and did not garner any testimony to support anything other Wolf's own fault.  *See* Ex. 1, submitted herewith (chart containing testimony confirming that Plaintiffs' misuse did not cause the aesthetic imperfections in their respective ovens).
[9]  *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233, 1240-41 (11th Cir. 2016) (consumer misuse does not defeat class certification, because "misuse has 'classwide application'").

at 128.  Because of the lack of damage to ***anyone***, most notably to plaintiffs themselves, "failure to plead the essential element of damages requires dismissal of the class actions claims."  *Id*. Here, however, there is no question that Plaintiffs experienced manifested harm and damages. *E.g*., Class Cert. Mem. at 10-11; ECF No. 57, Class Action Complaint ("Sharp Cpt.") at ¶¶20-21.

What is more, there is no requirement that an oven manifest the imperfections at issue in order for a consumer to be a member of the classes.  *See supra* §II at 3 (citing *In re Whirlpool*, 722 F.3d at 857).  If a purchaser of a Wolf Oven has not complained, it is not indicative of the fact that the manifestation does not exist.  And, if the imperfections have not appeared in a particular consumer's oven (yet), it is not indicative of the fact that that cracking and crazing will not ultimately appear.  Because the imperfections will always appear.

## III.   DAMAGES CALCULATIONS DO NOT DEFEAT PREDOMINANCE

Plaintiffs submitted five well-recognized forms of damages that can be calculated on a classwide basis.  *See* Class Cert. Mem. at 22-30.

*First*, Mr. Boedeker's proposes to measure class damages attributable to Plaintiffs' theory of liability: the diminution in value of the Wolf Ovens directly linked to the aesthetic shortcomings at issue in this litigation.  As briefed extensively in connection with Plaintiffs' Memorandum In Opposition to Wolf Appliance, Inc.'s Motion to Exclude the Opinions of Stefan Boedeker (which, for the sake of brevity, will not be restated here) the scope and reliability of Mr. Boedeker's proposed methodology for a conjoint analysis meets and exceeds what is required at the class certification stage.[10]  *See generally* ECF No. 102-1.  Plaintiffs have, in effect, substantiated calculable metrics that are suitable for classwide treatment of damages.

---

[10]   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *see, e.g., In re Scotts*, 304 F.R.D. at 413 (finding methodologies which ***will be able to*** isolate the price premium to be enough to satisfy *Comcast*); *In re Whirlpool*, 722 F.3d at 860 (*Comcast* reaffirms a settled rule that injury must be susceptible to common proof).  Wolf does not object to the suitability of a conjoint analysis to calculate classwide damages.  Instead, it merely quibbles with the variable selections and data point selections or surveyed attributes which underpin his analyses.  These do not form a

*Second*, Wolf relies on logic, and not the law, to oppose Plaintiffs' replacement value as a metric for uniformly measuring damages. *See* Def. Mem. at 33 ("There is no logical reason why the value Wolf internally assigns to a replacement cavity would be an appropriate measure of damages."). For the purposes of determining whether classwide damages is calculable, however, the focus is on the replacement value; not the actual replacement.[11]

*Third*, Statutory damages are an available and streamlined approach to classwide relief regardless of alternative damages models or relief presented in support of class certification. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 500-502 (E.D.N.Y. 2017). Wolf does not challenge the appropriateness of this measure and, instead, claims that statutory relief should not be considered solely because other forms of relief can afford Plaintiffs a larger payout. Def. Mem. at 34, *relying on Gardner v. Equifax Info. Servs., LLC*, No. 06-3102 ADM/AJB, 2007 WL 2261688 (D. Minn. Aug. 6, 2007). In *Gardner*, however, the representatives elected to ***forego*** actual damages and other claims to focus on statutory damages. *cf. In re AMLA Litig.*, 328 F.R.D. 127, 133 (S.D.N.Y. 2018) (personal injury claims can be separately filed). Plaintiffs have not given up on, or waived, any of the absent class members claims and statutory damages is one of several forms that was (and remains) available to Plaintiffs.[12]

*Fourth*, Mr. Robinette unmistakably concluded that a percentage-based diminution in value can be attributed to oven cavities with manifested imperfections. *See* Class Cert. Ex. 20 at

---

basis to defeat predominance. *See e.g.*, ECF No. 102-1 at 14-21.

[11] *See e.g.*, *Fla. Dep't of Agric. & Consumer Servs. v. Lopez-Brignoni*, 114 So. 3d 1138, 1143 (Fla. Dist. Ct. App. 2012). Wolf is correct that plaintiff Sharp testified that he "would not accept a replacement cavity ***manufactured by Wolf***." (Def. Mem. at 33, emphasis added). Mr. Sharp did not testify that his refusal would apply should Wolf do what is expected of any reputable manufacturer of a faulty product; namely, ascertain and correct what is causing the imperfections and provide customers with an oven cavity that won't repeatedly fail. Mr. Sharp has understandable distrust for Wolf and its deficient products, but this does not preclude him and absent class members from receiving the dollar value of the replacement cavity as a classwide damages metric.

[12] Wolf posits that Plaintiffs have not told "the Court which theory they plan to pursue" (Def. Mem. at 33), but do not provide any legal support for why Plaintiffs need to do that at the class certification stage. Plaintiffs' causes of action, however, do not require them to choose a damages theory at this point. That said, to the extent this Court – now, or later at trial – requires Plaintiffs to select their preferred method of damages, they can easily do so given the various methodologies they have already presented, any one of which can show classwide damages.

13 (the ("Robinette Report").  Wolf now has buyer's remorse.  It retained an appraisal expert to try reducing (or place a cap on) damages,[13] but, at the same time, Mr. Robinette's analysis outlined a method for establishing predominance in the form of a percentage premium that may be ascribed to each purchaser class member.[14]

In an apparent effort to correct Mr. Robinette's support for classwide damages, Defendant wrote: "Robinette opined that there is no uniform loss in value, and that adjustments based on the condition of an oven—including crazing, cracking, and chipping— 'can be infinitely variable.'" Def. Mem. at 34 (quoting Robinette Report at 6).  The complete quote from Mr. Robinette's report reads:  "Differences in condition when comparing *one used item to another* can be infinitely variable based on the complexity of the item."  Robinette Report at 6. Mr. Robinette's generally stated proposition regarding *used items* in an unrelated portion of his report (*id.* at 6) has no bearing on, and does not undo, his otherwise clear-cut findings that classwide damages can be calculated on a classwide basis (*id.* at 13).

Plaintiffs suggested a *fifth* theory: full refund.  *See* Class Cert. Mem. at 29-30.  There is no question that the full refund theory is calculable.  Defendant does not challenge that certainty. Defendant argues, however, that a full refund can be considered an unfair metric to the extent it presupposes a zero value on all Wolf ovens even though the Ovens have, or will have, manifested imperfections.  Def. Mem. at 34.  At bottom, full refund models are an acceptable form of classwide damages.  *See Mednick II*, 2017 WL 2619139, at *10 (acknowledging a full refund option).

---

[13]  Mr. Robinette placed a ceiling on the damages amount at 10%.  *Id*. at 13.
[14]  Mr. Robinette confirmed his percentage-basis position at his deposition (Class Cert. Ex. 32 at 73:6-11; 75:2-9) and added that he could use a dollar-basis as well.  *Id*. at 77:16-19 ("I've expressed my opinion of what the value adjustment might be as a percentage, but I think, in practical, it's probably more of a dollar amount or a dollar range.").

## IV.   PLAINTIFFS HAVE STANDING TO SEEK INJUNCTIVE RELIEF

In the alternative to certification under Fed. R. Civ. P. 23(b)(3), Plaintiff seeks certification of the Classes under Fed. R. Civ. P. 23(b)(2) for purposes of declarative and injunctive relief only.  Contrary to Wolf's contention, Def. Mem. at 35, Plaintiffs have standing to seek injunctive relief because they have "a cognizable interest in a market where prices are not distorted by any misrepresentations."  *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150-RS, 2017 WL 3310692, at *5 (N.D. Cal. Aug. 3, 2017); *see also Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) ("a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in questions in the future").  In *Kurtz*, 321 F.R.D. at 499, Senior Judge Jack Weinstein reasoned that if the argument akin to the one Wolf proffers here "were to be accepted, it would effectively bar injunctive classes in consumer deception cases, since purchasers who become aware of a harm and stop buying the offensive product would not be able to seek relief for the class.  That result is undesirable as a matter of public and federal policy."  *Id.* at 499.

## V.   PLAINTIFFS' CLAIMS CAN BE CERTIFIED ON A NATIONWIDE BASIS

Plaintiffs defined the proposed classes in their respective Complaints in the form of nationwide purchasers or, in the alternative, a subclass of State-specific purchasers[15] of the Wolf Ovens containing porcelain cavities.[16]  Plaintiffs focused classwide damages analysis (and definition) on purchasers of Wolf Ovens with blue porcelain interiors.  *See* Class Cert. Mem. at

---

[15]  Defendant made a passing reference in its opposition that Plaintiffs failed to exclude individuals who own a Wolf oven as a result of buying a home with the oven already installed.  Def. Mem. at 13, 25.  It is not clear what point Defendant seeks to make by that statement, as those individuals are naturally not purchasers of the Ovens and, effectively, not absent class members.  In any event, should the Court need to modify any class definition (*e.g.*, limiting the Pennsylvania subclass to purchasers of Wolf ovens with blue porcelain cavities only) it may do so at any time.  *Kurtz*, 321 F.R.D. at 498, 555 (certifying modified classes based on post-hearing letter request).

[16]  *See* Sharp Cpt. at ¶70; ECF No. 39, Garfinkle Cpt. at ¶71; ECF No. 1, Kail Cpt. at ¶59.

10-11.   Defendant, in recognition of these clearly defined proposed classes, charted the definitions in its opposition. (Def. Mem. at 4.)   Despite all this, Defendant claims it does not know which classes Plaintiffs' "contend should be certified."   *Id.*   Ignoring the Court's option to certify State-only classes,[17] Wolf says that Plaintiffs cannot support nationwide certification of their claims as it may generate individual issues that could predominate over classwide issues.

Wolf maintains that Plaintiffs "ignored the need to apply differing state laws" (Def. Mem. at 11) relying on nuanced legal differences and factually distinct case law.   Wolf disregards, however, that Courts will certify nationwide classes for the same causes of action alleged by Plaintiffs here; that this Court need not consider variations in state laws for Plaintiff's common law claims at the class certification stage; and that even should this Court decide to apply the laws of the various states, common issues remain predominant and manageable.

A.      The Law of this Circuit Supports Nationwide Certification

Variations in the elements or burdens associated with certain States' claims do not automatically defeat class certification.   *See, e.g.*, Appendices to Def. Mem. (citing immaterial state law differences essentially focused on one of Plaintiffs' causes of action: breach of warranty).   Only a truly material conflict may serve to undermine Plaintiffs' nationwide claims.   *See Simon v. Philip Morris Inc*., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000) (noting that a "court is free to bypass the choice of law analysis and apply New York law in the absence of a material conflict").   Defendant's reliance on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (Def. Mem. at 11) does not support Wolf's anti-nationwide class position and the decision has been distinguished by this Court.   *See Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 79 (E.D.N.Y. 2004) (noting that *Phillips Petroleum* does not require "this Court to apply the law of

---

[17]   Courts presented with alternative State-only classes can opt to defer decision as to certification of a nationwide class and certify State-specific classes.   *See Kurtz,* 321 F.R.D. at 554 (certifying New York classes).   Defendant does not contest this alternative.   At a minimum, this Court should certify the State classes.

each state in which the plaintiffs resides nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence"). Tellingly, Wolf does not cite to Second Circuit authority to support its position against the certification of a nationwide class.[18]

In *Steinberg*, the Court reasoned that "a motion for class certification is not the appropriate vehicle by which to resolve choice of law issues." 224 F.R.D. at 78-79 (stating class certification is appropriate where "a class action raises common issues of conduct that would establish liability under a number of states' laws"). District Courts in this Circuit "have declined to consider potential variation in state law among the plaintiffs' claims." *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 305 (E.D.N.Y. 2006) ("*Charter Flights*") (citing cases); *see also id.* at 306, n.10 ("comparison of the potentially relevant laws is not required in determining predominance"); *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991) (declining "to decide choice of law issues on a class certification motion" as "the application of the laws of different states, if necessary, does not preclude class action litigation of this case."); *In re LILCO Sec. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("*LILCO*") ("having to apply different substantive law does not warrant refusing to certify a class on the common-law claims"); *see also Koppel v. 4987 Corp.*, 191 F.R.D. 360, 366 (S.D.N.Y. 2000); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993).[19]

---

[18] Instead, Wolf relies on three out-of-circuit decisions suggesting that a nationwide class might be unmanageable. Those cases (*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001), *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002) and *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 223 (W.D. Mich. 1998)), however, are at odds with case law in the Second Circuit which hold that the application of all States' laws does not render a case unmanageable. *See, e.g., LILCO*, 111 F.R.D. at 670 ("finding that a requirement "to apply the law of all fifty states" does "not render the trial per se unmanageable"). This is because a district court has the power "to sub-classify members of a certified class" *Steinberg*, 224 F.R.D. at 78 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. N.Y. 2001)).

[19] At class certification, when only minor differences in certain State laws (as is the case here) New York law could be applied. *See Ebin*, 297 F.R.D. at 570 ("the Court agrees that New York law governs the common law claims" for fraud and negligent misrepresentation in states where product was sold); *see also IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004); *Zhang v. Wang*, No. 05-CV-3888 (FB)(LB), 2006 WL 2927173, at *2 (E.D.N.Y. Oct. 12, 2006) (applying New York law).

Where, as here, Plaintiff's claims rest on Defendants' conduct – namely, whether Defendants' marketing of the Wolf Ovens was materially misleading to consumers – that can be analyzed based on common, classwide evidence. *See Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 136 (S.D.N.Y. 2014) (issues relating to whether uniform representations were materially misleading and whether defendant unjustly profited as a result "can be determined on a classwide basis, and without regard to possible variations in state laws"; thus "resolution of these common questions will therefore drive the resolution of the litigation") (internal citations and quotations omitted); *see also In re Crazy Eddie*, 135 F.R.D. at 41 (refusing to decide choice of law issues on class certification where "[i]ssues relating to defendants' conduct will be common to the class regardless of the law to be applied.").[20]

As to Plaintiffs' specific claims, courts have certified claims for negligent misrepresentation and breach of warranty on a nationwide basis. *See Ebin*, 297 F.R.D. at 569-70 (finding common issues predominate for nationwide class under negligent misrepresentation claim); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 240 (D.N.J. 2007) (certifying a nationwide class asserting claims under breach of warranty); *see also Hart v. BHH, LLC*, No. 15-CV-4804, 2017 WL 2912519, at *8 (S.D.N.Y. July 7, 2017).

### B. Wolf Has Not Shown That Any Purported Material Conflicts Undermine a Nationwide Class

An overarching theme runs through Wolf's arguments that Plaintiffs' nationwide claims are precluded because of the differences in state laws: the identification of minor differences in *certain* state laws for *certain* causes of action, without explanation as to how those differences

---

[20] Courts have also certified nationwide classes under Plaintiffs' claims in settlement contexts. *See generally, e.g.*, *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484(JS)(AKT), 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017) (§349, negligent misrepresentation, breach of express warranty, breach of implied warranty, unjust enrichment), *report and recommendation adopted*, No. 14-CV-2484(JS)(AKT), 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-CV-7493(VB), 2013 WL 4080946, at *5 (S.D.N.Y. May 30, 2013) (breach of warranty, unjust enrichment and violation of state consumer protection statutes); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 39 (E.D.N.Y. 2008) (§349).

amount to conflicts, let alone substantive or material "conflicts," that it argues would overwhelm the litigation.

For example, Wolf recurrently argues that individual inquiries into the timeliness of each class member's claim is required, but cites no Second Circuit authority to support its position. *See* Def. Mem. at 15-16, 19, 27, 30.  Plaintiffs have already briefed the issue of timeliness and statutes of limitation as applied to Wolf's motion to strike class claims.  *See* ECF No. 72.  Now, for class certification purposes, "[t]he point of accrual of the claim is not an individualized question."  *In re U.S. Foodservice Inc. Pricing Litig*., No. 3:06-CV-1657 (CFD), 2011 WL 6013551, at *18 (D. Conn. Nov. 29, 2011) (variations in the elements of fraudulent concealment and tolling "can be addressed in a class-wide manner."), *aff'd*, 729 F.3d 108, 127 (2d Cir. 2013) (variations in statutes of limitations did "not pose an insuperable obstacle to class certification" and that "even assuming the laws of multiple jurisdictions apply, common issues predominate"); *see also Ebin*, 297 F.R.D. at 569-70 (certifying multi-state classes based on negligent misrepresentation despite the special relationship requirement). [21]

Defendant has not shown a material conflict between the laws of New York and any other State.  Plaintiffs are not, in effect, precluded from bringing claims on behalf of nationwide classes.  Therefore, this Court can and should certify the nationwide classes.[22]

## VI.   PLAINTIFFS ARE TYPICAL OF THE PUTATIVE CLASSES

Plaintiffs are typical of the absent class members.  Typicality is present if the claims of the representatives and the classes stem from Defendant's course of conduct or are premised on

---

[21]   *See Steinberg*, 224 F.R.D. at 78 ("Variances in the states' contract laws, such as differences in statutes of limitation, do not preclude class certification."); *In re Energy Sys. Equip. Leasing Sec. Litig*., 642 F.Supp. 718, 752-53, (E.D.N.Y. 1986) ("Courts have been ***nearly unanimous*** . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[f], does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.").

[22]   Or, at a minimum, certify a multi-State class of New York and Pennsylvania.

- 13 -

the same legal or remedial theory.[23]   Here, the proposed class representative claims (and the claims of the classes) stem from Wolf's false and misleading representations.[24]   The representative Plaintiffs believed they were purchasing an oven with premium aesthetics and, more importantly as applied to this top-down false advertising claim, Wolf purposively marked its "signature" blue as a distinctive attribute over its competitors' products, when they were susceptible to and would inevitably manifest aesthetics imperfections.   Plaintiffs' claims are, therefore, typical of the classes.[25]

## VII.   PLAINTIFFS ARE ADEQUATE REPRESENTATIVES

The proposed representatives responded to discovery, sat for depositions and made their homes available to host oven inspections.   Plaintiffs have demonstrated the willingness to fairly and adequately protect their aligned interests with the class.   Minor variations would not render them as inadequate, as Defendant suggests (*see* Def. Mem. at 32).   *See*, *e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (noting that "minor variations in the fact patters underlying individual claims" do not defeat class certification).   Wolf has not shown that Plaintiffs' incentive to be vigorous advocates for the interests of the class has been removed.

Wolf argues, without any legal support, that Plaintiffs are inadequate due to legal strategies or decisions, because Plaintiffs did not retain a defect expert and/or are not pursuing personal injury damages.   Def. Mem. at 32.   There is no requirement to retain an expert to

---

[23]   *See Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995(MKB)(RER), 2019 WL 1434263, at *24 (E.D.N.Y. Mar. 31, 2019) ("The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552-553 (6th Cir. 2006) (finding Plaintiff and the class' claims arise from the same practice and based on the same legal theory).
[24]   *See* Class Cert. Mem. at 3-4 (*e.g.,* "signature aesthetics"; "rigorously tested to ensure dependability"; "Built with superior-quality materials, Wolf products are designed to last a minimum of 20 years . . .").
[25]   This case is distinguishable from *Mazzei v. Money Store*, 829 F.3d 260, 264 (2d Cir. 2016), Def. Mem. at 32, in which the District Court issued a ***post-trial*** determination, after all factual differences were presented and decided, and found there to be questions about who serviced the loans versus owned the loans.

substantiate the cause of Defendant's wrongdoing,[26] particularly where (as here) the products'
deficiencies are admitted.[27]   And, the decision not to pursue personal injury claims is not a
failing on part of Plaintiffs; it is a testament to their careful advocacy. *Schwab v. Philip Morris
USA, Inc.*, 449 F. Supp. 2d 992, 1129 (E.D.N.Y. 2006) (discarding defendants' efforts to enmesh
the separate personal injury claims that may be available) (reversed on other grounds
*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 219 (2d Cir. 2008).[28]

As a whole, questions regarding legal strategies do not form a basis to challenge
adequacy. *See McBean v. City of N.Y.*, 228 F.R.D. 487, 504 (S.D.N.Y. 2005) (refusing to find
representatives inadequate "solely on the basis of a litigation strategy").   What is important is
that Plaintiffs interests are not antagonistic to those of the class and that the same strategies that
will vindicate plaintiffs' claims will vindicate those of the class.   *Goldemberg*, 317 F.R.D. at
402; *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008); *Harrison v.
Great Springwaters of Am., Inc.*, No. 96-CV-5110, 1997 WL 469996, at *5-*6 (E.D.N.Y. June
18, 1997).   The adequacy requirement is, therefore, met.

DATED:  May 9, 2019                               ROBBINS GELLER RUDMAN
                                                  & DOWD LLP


                                                  */s/ Mark S. Reich*
                                                  MARK S. REICH

---

[26]   *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 676 (E.D. Mich. 2002) (a plaintiff need not offer expert testimony regarding, or otherwise prove, the existence of a defect when suing under theories other than products liability); *Norton v. Auto Club Grp. Ins. Co*., No. 02:04-CV-40376, 2009 WL 884129, at *20 (E.D. Mich. Mar. 30, 2009) (adopting *Sundberg* analysis).
[27]   *See* Class Cert. Mem. at 4-10; *see also* Class Cert. Exs. 4 at 164:5-8 and 73:7-16, Class Cert. Ex. 24, Class Cert. Ex. 10; Class Cert. Ex. 37.  Any fact-finder can look no further than admissions by Defendant's own representatives.
[28]   Class members who were injured by shards associated with the manifested imperfections may appropriately bring individual claims. *Beck-Ellman v. Kaz USA, Inc*., 283 F.R.D. 558, 566 (S.D. Cal. 2012) (reasoning that class members seeking recovery for personal injury or property damage can bring a separate action).

SAMUEL H. RUDMAN
MARK S. REICH
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mreich@rgrdlaw.com
vserra@rgrdlaw.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such public filing to all counsel registered to receive such notice.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 9, 2019.



*/s/ Mark S. Reich*

MARK S. REICH